## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **ANNETTE NAVARRO** | : | **Case No.** |
| 1972 Central Avenue | : | |
| Cincinnati, OH 45214 | : | **Judge** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PROCTER & GAMBLE COMPANY** | : | **COMPLAINT FOR DAMAGES** |
| 1 Procter & Gamble Plaza | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | **JURY DEMAND IS** |
| *and* | : | **ENCLOSED HEREIN** |
| | : | |
| **LPK GLOBAL BRAND** | : | |
| **DESIGN AGENCY**, | : | |
| 19 Garfield Place | : | |
| Cincinnati, OH 45202, | : | |
| | : | |
| *and* | : | |
| | : | |
| **SAATCHI & SAATCHI X** | : | |
| 10260 Alliance Road #300 | : | |
| Cincinnati, OH 45242, | : | |
| | : | |
| **Defendants.** | : | |

---

## COMPLAINT

Plaintiff Annette Navarro hereby brings this Complaint against Defendants Procter &

Gamble Company, LPK Global Brand Design Agency, and Saatchi & Saatchi X, and in

support thereof states:

## NATURE OF THE ACTION

1.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*., and the common law for Defendants' willful infringement of Plaintiff's copyright-protected photographs.

## PARTIES

2.      Plaintiff Annette Navarro is an internationally known photographer whose photographs appear on products sold in domestic and international markets. Examples of products and product brands on which Ms. Navarro's photographs appear include Olay Pro X, Olay Regenerist, Olay Daily Facials, Olay Touch of Sun, Jergens, John Frieda, Biore, Cover Girl, Pantene, Scope, Herbal Essence, Pringles, and Crest White Strips. For the past 14 years, Defendant Procter & Gamble Company has almost exclusively used Ms. Navarro's photographs on Olay product packaging all over the world.

3.      Upon information and belief, Procter & Gamble Company ("P&G") is the largest consumer products company in the world with its principal place of business located at 1 Procter and Gamble Plaza, Cincinnati, Ohio 45202-3393. P&G manufactures Olay-brand products, which are the subject matter of this action.

4.      Upon information and belief, LPK Global Brand Design Agency ("LPK Global") is a global brand design agency with its principal place of business at Presidential Plaza, 19 Garfield Place, Cincinnati, OH 45202. During the period relevant to this Complaint, Defendant LPK Global acted as an agent of Defendant P&G in negotiating with Ms. Navarro with respect to Olay products.

2

5.     Upon information and belief, Saatchi & Saatchi X ("S&SX") is a global advertising company with 140 offices in seventy-six countries including one in Cincinnati, Ohio located at 10260 Alliance Road, #300, Cincinnati, OH 45242. During the period relevant to this Complaint, Defendant S&SX acted as an agent for Defendant P&G in negotiating with Ms. Navarro with respect to Olay products.

## JURISDICTION

6.     This Court has exclusive original jurisdiction pursuant to 28 U.S.C. § 1338(a), because it arises under an Act of Congress relating to copyrights.

7.     This Court has supplemental jurisdiction over the non-federal claims asserted herein pursuant to 28 U.S.C. § 1367.

8.     This Court has jurisdiction over the non-federal claims asserted herein based upon the doctrines of ancillary, pendent, and/or supplemental jurisdiction.

9.     Venue is properly laid in the Southern District of Ohio, Western Division, because Plaintiff resides in the Southern District of Ohio, and because several of the Defendants have their principal places of business in the Southern District of Ohio and are subject to personal jurisdiction in this Court.

## STATEMENT OF RELEVANT FACTS

**A.     OLAY PRO X SPINNING BRUSH**

10.     On April 4, 2009, Defendant LPK Global, acting as an agent for Defendant P&G, approached Ms. Navarro seeking an estimate for photographing a model to be put on the package of a new product.

3

11.    Ms. Navarro provided the requested estimate to cast the model, build the set, direct, and produce the photograph.

12.    Ms. Navarro did not hear back from Defendant LPK Global until in or about January 2010 when it sought another estimate for a photograph to appear on a package for the North America market only.

13.    Shortly thereafter, Defendant LPK Global informed Ms. Navarro that its client, Defendant P&G, had approved the job for putting her photograph on the back of the packaging for Olay Pro X Spinning Brush ("Olay Supersonic") in North America for 3 years.

14.    After confirming the job order, Defendant LPK Global sent an email to Ms. Navarro asking for an estimate for, in addition to displaying the image on packaging, placing the image on the Internet, in print advertising, and on free standing in-store displays.

15.    Ms. Navarro provided Defendant LPK Global with the cost of additional usage for her copyrighted photograph.

16.    Defendant LPK Global, in an email, informed Ms. Navarro that Defendant P&G was only interested licensing her image for three years only in North America and only for printing on the Olay Supersonic packaging.

17.    In 2010, Ms. Navarro negotiated with modeling agencies and provided Defendant LPK Global with a list of twenty models.

18.    Later, Defendant LPK Global informed Ms. Navarro which model Defendant P&G had chosen.

4

19.     In 2010, Ms. Navarro cast the model Defendant P&G had selected, built the set, directed, and produced the photograph ("Image 1A").  A true and accurate copy of Image 1A is attached hereto as <u>Exhibit A</u>.

20.     Ms. Navarro submitted the Image 1 to Defendant LPK Global.

21.     Upon information and belief, the copyrighted photograph was given to Defendants LPK Global and S&SX for final approval.

22.     Defendant LPK Global requested a minor retouching of the photograph.

23.     Ms. Navarro performed the retouching at Defendant LPK Global's request ("Image 1B").  A true and accurate copy of Image 1B is attached hereto as <u>Exhibit B</u>.

24.     Image 1B was subsequently registered with the United States Copyright Office with Registration No. VA 1-982-133 on October 14, 2015.  A true and accurate copy of the Certificate of Registration for Image 1B is attached as <u>Exhibit C</u>.

25.     The image on the Olay Supersonic packaging is Ms. Navarro's copyrighted photograph, Image 1B; it was not modified in any way by Defendants before it appeared on the box of Olay Supersonic.

26.     Defendant P&G began using the photograph on Olay Supersonic packaging on December 1, 2010.

27.     Defendant P&G's license to use Ms. Navarro's copyrighted photograph on Olay Supersonic packaging expired on November 31, 2013.

28.     In 2011, Defendant P&G obtained a license, for one year only, to use the image on in-store displays.

29.     Defendants LPK Global and P&G did not renew the license for Image 1A or Image 1B, and Ms. Navarro assumed that Olay Supersonic had been removed from the market on or before November 31, 2013.

30.     On June 22, 2015, the modeling agency representing the model on the Olay Supersonic box contacted Ms. Navarro and told her that various Olay products were still on the market and that the agency's models' appearance on these product boxes were preventing her models from obtaining other assignments, because no other company would use their likeness while Olay Supersonic was still on the market.

31.     After the June 22, 2015 contact from the modeling agent, Ms. Navarro, now aware that Defendant P&G was infringing her copyrighted photograph, personally investigated the matter by visiting retailers.

32.     In the course of her investigation, Ms. Navarro learned that nearly two years after the expiration of the license, Defendant P&G was selling Olay Supersonic with Ms. Navarro's copyrighted photograph, Image 1B, on the box.

33.     Because Ms. Navarro had received an email on February 26, 2014 from Defendant P&G that Defendant LPK Global was no longer involved with Olay, she decided to contact Defendant P&G directly regarding the continuing use of Image 1B.

34.     On June 23, 2015, Ms. Navarro first contacted Bridget Quinn, an agent for Defendant P&G, who had sent Ms. Navarro an email on February 26, 2014 that Ms. Navarro should contact P&G directly.

35.     Ms. Quinn put Ms. Navarro in contact with Nicole Hein, an agent of Defendant P&G.

36.     On July 1, 2015, Ms. Hein, acting as an agent for Defendant P&G, admitted liability for infringement and asked Ms. Navarro to send her an invoice to be paid for unauthorized usage of the copyrighted photograph.

37.     Ms. Navarro submitted to Ms. Hein an invoice for the infringing use of Image 1B for the modeling agency and for herself (the "Supplemental Payment Invoice").

38.     The Supplemental Payment Invoice has never been paid.

39.     Ms. Navarro later learned that Defendant P&G had obtained a separate license from the modeling agency, which did not own the copyrighted photograph, and paid the model for use of her likeness on Olay Supersonic until 2019.

## B.     OLAY/OLAZ REGENERIST ADVANCED CLEANSING

40.     Ms. Navarro, on or about January 26, 2016, discovered that Image 1B had been used by Defendant P&G on another product, Olay/Olaz Regenerist Advanced Cleansing, without a license.

41.     Ms. Navarro immediately contacted the agent for the model in the copyrighted photograph to inform her about Defendant P&G's infringement.

42.     The agent for the model informed Ms. Navarro that she had been negotiating with Defendant P&G on behalf of her model for past and future use of the image.

43.     The modeling agency also informed Ms. Navarro that Defendant P&G had conceded that it had used the image on Olay/Olaz Regenerist Advanced Cleansing system globally since 2015, without a license.

44.     Ms. Navarro shared with the model's agent documents showing that Image 1B was put on the package and the Olay/Olaz Regenerist Advanced Cleansing was launched in the United Kingdom in 2012 and not in 2015.

45.     Upon information and belief, Defendant P&G has now paid the modeling agency, which does not own the copyrighted photograph, for unauthorized global use of the model's image on the package of Olay/Olaz Regenerist Advanced Cleansing and on the Internet from 2012 to 2019.

46.     Prior to January 2016, Ms. Navarro did not know that Defendant P&G was using her copyrighted photograph, without a license, globally in several languages outside the United States.

47.     Ms. Navarro has not been compensated by Defendant P&G for its infringing use of her copyrighted photograph globally, both on the packages of Olay/Olaz Regenerist Advanced Cleansing and on the Internet.

48.     Upon information and belief, Defendant P&G is also infringing Ms. Navarro's copyrighted photograph on in-store displays and magazine advertising related to Olay/Olaz Regenerist Advanced Cleansing.

### C.     OLAY FACIAL HAIR REMOVAL (TEAL BOX)

49.     On June 10, 2010, Defendant LPK Global contacted Ms. Navarro to provide an estimate for photographing a model to be displayed on a package, packaging insert brochure, and the Internet for a new product called Olay Facial Hair Removal.

50.    Ms. Navarro provided the requested estimate to cast a model, build the set, direct and produce the photograph, and license it to Defendant P&G for three years, in North America only.

51.    On June 15, 2010, Defendant LPK Global requested a revised estimate because Defendant P&G was contemplating launching the Olay Facial Hair Removal in the Western Europe market as well as North America.

52.    On June 15, 2010, Defendant P&G approved the shoot as presented by Ms. Navarro for North America only, with the option for the Western Europe market to be negotiated at a later date.

53.    On June 16, 2010, Ms. Navarro secured a guarantee from seven modeling agencies.

54.    On June 30, 2010, Defendant Saatchi and Saatchi approved the model from among those submitted by Ms. Navarro.

55.    Defendant LPK Global scheduled the shoot for July 1, 2010.

56.    On July 1, 2010, Ms. Navarro produced, directed, and photographed the model chosen by the Defendants and delivered a library of images to the Defendant LPK Global.

57.    Defendant LPK Global informed Ms. Navarro that Defendant P&G and Defendant S&SX were very happy with the photographs.

58.    On September 9, 2010, Defendants LPK Global and S&SX selected the images it wanted to be retouched and delivered them to Ms. Navarro for retouching.

59.    Ms. Navarro performed the retouching, which resulted in five retouched images (individually "Image 2" through "Image 6," or collectively "Images 2-6").  True and accurate

copies of these five images are attached as <u>Exhibit D</u>. True and accurate copies of the two Certificates of Registration that cover these five images are attached as <u>Exhibit E</u>.

60.     The five images on Olay Facial Hair Removal (Teal Box) are Images 2-6; they were not modified in any way by the Defendants or their agents.

61.     On October 20, 2010, Ms. Navarro submitted Images 2-6 to the Defendant LPK Global.

62.     Defendant LPK Global informed Ms. Navarro that Defendants P&G and S&SX loved Images 2-6.

63.     On November 7, 2010, Defendant LPK Global confirmed that the license Defendant P&G obtained was for use of Images 2-6 in North America only.

64.     On November 24, 2010, Defendant P&G obtained an additional license for the use of Images 2-6 for three years in Western Europe.

65.     Defendants P&G obtained an additional license for Images 2-6 to appear on Olay Facial Hair Removal (Teal Box) Package, insert brochure, and Internet advertising for global public relations over one year.

66.     On May 19, 2011, Defendant LPK Global contacted Ms. Navarro to provide an estimate for using Images 2-6 for in-store advertising.

67.     As of May 19, 2011, neither Defendant P&G nor any of its agents had obtained a license for in-store advertising with Images 2-6.

68.     On October 12, 2011, Defendant LPK Global purchased a license for one month to display Ms. Navarro's copyrighted photograph in an advertisement in Elle Canada for Olay Facial Removal (Teal Box).

69.     Defendant P&G introduced Olay Facial Hair Removal (Teal Box), including Images 2-6 on the packaging and brochure material, in North America on August 1, 2011 and in Western Europe on February 1, 2012.

70.     Defendant P&G's licenses to use Images 2-6 on Olay Facial Hair Removal (Teal Box) in North America expired on July 31, 2014 and in Western Europe expired on January 31, 2015.

71.     Defendant P&G did not renew the licenses for North America or Western Europe.

72.     Ms. Navarro again assumed that by the respective expiration dates, Defendant P&G had removed Olay Facial Hair Removal (Teal Box) from both markets, because it was a new product.

73.     To date, Defendant P&G is still selling Olay Facial Hair Removal (Teal Box) with Images 2-6 on the box and on the brochures inside it. In addition, Images 2-6 are on the Internet, on Defendant P&G's website and on several retailers' websites.

74.     Upon information and belief, on March 28, 2016, Defendant P&G, obtained a license from the modeling agency, which did not own Images 2-6, for continued use of these Images on Olay Facial Hair Removal (Teal Box). This license was for the usage of the model's likeness in Images 2-6 for an additional two years for Global Packaging, insert brochures, and Internet, from March 1, 2015 to February 20, 2017.

75.     Defendant P&G never obtained or discussed obtaining a similar license from Ms. Navarro for her copyrighted photographs.

76.     Upon information and belief, Defendant P&G paid the modeling agency for use of Images 2-6 for the North American market from August 1, 2014 to July 2017.

77.     Defendant P&G did not pay, nor did it offer to pay, Ms. Navarro for Defendant P&G's present use of her copyrighted photographs, Images 2-6, in any market.

78.     Upon information and belief, Defendant P&G is using Images 2-6 to advertise Olay Facial Hair Removal (Teal Box) and on its packaging in non-North America markets.

**D.      OLAY FACIAL HAIR REMOVAL (PURPLE BOX)**

79.     On March 16, 2011, Defendant LPK Global contacted Ms. Navarro to provide an estimate for two new Olay hair removal products.

80.     On March 28, 2011, Ms. Navarro submitted a proposal to Defendant LPK Global, which they approved.

81.     Defendant P&G, through its agent, informed Ms. Navarro that it would need only one model for one package called Olay Facial Hair Removal (Purple Box).

82.     On April 16, 2011, Defendant P&G chose the model from among several models that Ms. Navarro submitted to Defendant LPK Global.

83.     On April 20, 2011, Ms. Navarro produced, directed, and photographed the model chosen by Defendant P&G.

84.     Executives of Defendant P&G and Defendant LPK Global attended the shoot.

85.     On May 12, 2011, Defendants P&G and LPK Global asked Ms. Navarro to retouch four of the pictures from the April 20, 2011 shoot under the guidelines provided by Defendant P&G.

86.     Ms. Navarro performed the retouching according to Defendant P&G's instruction and submitted four retouched images (individually "Image 7" through "Image 10," or collectively "Images 7-10").

87.     On May 30, 2011, Ms. Navarro delivered to Defendant LPK Global the final versions of Images 7-10 to be used on the box and inserts of the Olay Facial Hair Removal (Purple Box).

88.     The four images on Olay Facial Hair Removal (Purple Box) and its inserts are Images 7-10; they were not modified in any way by the Defendants and/or their agents.

89.     Defendant P&G purchased a license for three-year, global use of Images 7-10 on Olay Facial Hair Removal (Purple Box).

90.     On November 13, 2011, defendant P&G launched Olay Facial Hair Removal (Purple Box) globally.

91.     Defendant P&G's license to use Images 7-10 on Olay Facial Hair Removal (Purple Box) expired on November 12, 2014.

92.     Defendant P&G did not seek to renew nor has it renewed the license to use Images 7-10 on Olay Facial Hair Removal (Purple Box) past November 12, 2014.

93.     Olay Facial Hair Removal (Purple Box), adorned with Images 7-10, are still being sold by Defendant P&G.

94.     Upon information and belief, on March 28, 2016, Defendant P&G obtained a separate license from the modeling agency, which does not own the copyrighted photographs, to use the model's likeness on the packaging and insert for Olay Facial Hair Removal (Purple Box), as well as on the Internet until July 31, 2017.

95.     Defendant P&G did not obtain nor has it discussed with Ms. Navarro obtaining a similar license from her for Defendant P&G's continuing use of Images 7-10 globally on Olay Facial Hair Removal (Purple Box).

**E.      OLAY DAILY FACIALS**

96.     On December 16, 2011, Defendant LPK Global, as an agent for Defendant P&G, approached Ms. Navarro to request an estimate for photographing a model to be put on the package of Olay Daily Facials, an existing product.

97.     As of December 16, 2011, the existing image on Olay Daily Facials packaging was a photograph by Ms. Navarro in which she held a copyright; it was produced in 2004.

98.     Olay Daily Facials consists of three different boxes; each box could carry a photograph of three different models, or different photographs of the same model could be used on all three boxes.

99.     In its effort to replace the 2004 images, Defendant LPK Global requested an estimate for licensure of images for North America for either one or three models.

100.    Ms. Navarro, after consulting with modeling agencies, submitted an estimate between $45,000 and $89,000 depending on the number of models photographed.

101.    Defendant LPK Global responded on February 21, 2012, stating that Defendant P&G had only budgeted $20,000 for the project.

102.    In order to proceed on Defendant P&G's budget, Defendant LPK altered the job specifications, reducing its request to one local model on all three boxes and one shot of a hand on all three boxes for three years in North America only.

14

103.    On February 25, 2012, Ms. Navarro provided Defendant LPK Global with an estimate of $24,750 for its altered job specifications.

104.    On February 27, 2012, the job was approved.

105.    On March 19, 2012, Ms. Navarro produced, directed, and photographed the model chosen by Defendant P&G and delivered the images to Defendant LPK Global.

106.    Defendant P&G agreed to use two of these images ("Image 11" and "Image 12," or collectively "Images 11 and 12") for three years of North American packaging, insert brochures, and Internet advertising for Olay Daily Facials.

107.    On October 17, 2013 Defendant LPK Global, requested an estimate to expand Olay Daily Facials license in Images 11 and 12 for use with a new product.

108.    On October 28, 2013, Defendant LPK Global requested an estimate for a license for three years of global use of Image 11, including Europe, North America, and China.

109.    Ms. Navarro provided an estimate of $60,000 for global use of Image 11, which included use of the model's likeness and Ms. Navarro's original works.

110.    On October 29, 2013, Defendant LPK Global confirmed receipt of Ms. Navarro's $60,000 estimate, but there was no further follow up.

111.    February 24, 2014, Bridget Quinn, an executive for Defendant P&G, contacted Ms. Navarro to understand the usage rights that had been negotiated for Olay Daily Facials. Ms. Quinn had attended the production of the photographs.

112.    On February 26, 2014, Ms. Navarro provided Ms. Quinn with a detailed history of the negotiations concerning Olay Daily Facial with Defendant LPK Global.

113. On February 26, 2014, Ms. Navarro was also informed by Defendant P&G that Defendant LPK Global was no longer the agency of record for Olay and requested an estimate for Olay Daily Facials usage of copyrighted photographs for up to three years in the United Kingdom and Spain.

114. On March 10, 2014, Ms. Navarro provided Ms. Quinn with price estimates for use of Image 11 for three years in the United Kingdom and Spain. Ms. Navarro did not receive a response to those estimates.

115. On August 28, 2014, Defendant Landor, serving as agent for Defendant P&G, requested the high-resolution images for Olay Daily Facial photographs from Ms. Navarro because Defendant P&G was not able to secure them from Defendant LPK Global.

116. On September 3, 2014, Defendant Landor followed up with another email requesting the images; Nicole Hein, an agent of Defendant P&G was copied on the email.

117. Ms. Navarro delivered the requested images on September 3, 2014 to Defendant Landor.

118. September 3, 2014 was the final contact Ms. Navarro had with Defendant P&G or any of its agents concerning Olay Daily Facials.

119. On June 23, 2015, Ms. Navarro contacted Ms. Quinn regarding Defendant P&G's infringements of, *inter alia*, Images 11 and 12 that were discovered by a modeling agent. Ms. Navarro also informed Ms. Quinn that Olay Daily Facials license was about to expire.

120. The license for using Ms. Navarro's copyrighted photographs on Olay Daily Facials expired on August 31, 2015.

16

121.    On January 2, 2016, Ms. Navarro visited Target and discovered that her copyrighted photograph for Olay Daily Facials were now on three new boxes repackaged and renamed; there were now six boxes on store shelves with Ms. Navarro's copyrighted photographs.

122.    Upon information and belief, Olay Daily Facials packages, which use Image 11, are currently on the market in 43 countries.

123.    On April 9 2016, Defendant P&G secured a separate license agreement with the modeling agency, which does not own the photographs, for using the model's likeness on Olay Daily Facials.

124.    Upon information and belief, Defendant P&G agreed to pay the modeling agency $348,000 for the use of the model's likeness in Ms. Navarro's Image on six boxes for global use, on free-standing in-store-displays, and on all digital media from September 1, 2012 through August 31, 2020.

125.    Defendant P&G has not obtained a license from Ms. Navarro for use of Images 11 and 12 in any market after August 31, 2015.

## COUNT I - STATUTORY COPYRIGHT INFRINGEMENT
### (Olay Supersonic)

126.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-125 as if fully set forth herein.

127.    Beginning on November 31, 2013, when Defendants P&G and LPK Global's license to use Image 1B expired, Defendant P&G has willfully infringed Ms. Navarro's copyright by using, copying, and displaying her images on Olay Supersonic packaging, packaging inserts, and the Internet without authorization.

128.    When Ms. Navarro became aware of the infringement, she promptly contacted Defendant P&G, ultimately speaking with Nicole Hein.

129.    Ms. Hein admitted Defendant P&G's liability for the infringement of Image 1B.

130.    Defendants P&G and LPK Global have benefitted from their infringement of Image 1B, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendants P&G and LPK Global's infringing activities, the extent of which are not able to be determined at this time.

131.    Defendants P&G and LPK Global's actions constitute a violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful violation of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT II - STATUTORY COPYRIGHT INFRINGEMENT
### (Olay/Olaz Regenerist Advanced Cleansing)

132.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-131 as if fully set forth herein.

133.    Defendant P&G willfully infringed Ms. Navarro's copyright in Image 1B by using, copying, and displaying Image 1B on Olay/Olaz Regenerist Advanced Cleansing packaging without authorization.

134.    Defendant P&G has admitted that Image 1B are being used globally without a license.

135.    Defendant P&G has benefitted from its infringement of Image 1B, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

136.    Defendant P&G's actions constitute a violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringement of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT III - STATUTORY COPYRIGHT INFRINGEMENT
### (Olay Facial Hair Removal (Teal Box) – North America)

137.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-136 as if fully set forth herein.

138.    Beginning on July 31, 2014, when the license expired, Defendants P&G, LPK Global, and S&SX willfully infringed Ms. Navarro's copyright in Images 2-6 by using, copying, and displaying Images 2-6 on Olay Facial Hair Removal (Teal Box) packaging, packaging inserts, and the Internet in the North American market without authorization.

139.    Defendants P&G, LPK Global, and S&SX have benefitted from their infringement of Images 2-6, and Ms. Navarro has suffered damages to her good will and

reputation, as well as monetary damages, as a result of Defendants P&G, LPK Global, and S&SX's infringing activities, the extent of which are not able to be determined at this time.

140. Defendants P&G, LPK Global, and S&SX's actions constitute a violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringement of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## <u>COUNT IV - STATUTORY COPYRIGHT INFRINGMENT</u>
### (Olay Facial Hair Removal (Teal Box) – Western Europe)

141. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-140 as if fully set forth herein.

142. Beginning on January 31, 2015, when the license expired, Defendants P&G, LPK Global, and S&SX willfully infringed Ms. Navarro's copyright in Images 2-6 by using, copying, and displaying Images 7-10 on Olay Facial Hair Removal (Teal Box) packaging, packaging inserts, and internet in the Western European market without authorization.

143. Defendants P&G, LPK Global, and S&SX have benefitted from their infringement of Images 2-6, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendants P&G, LPK Global, and S&SX's infringing activities, the extent of which are not able to be determined at this time.

144. Defendants P&G, LPK Global, and S&SX's actions constitute a violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringement of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT V - STATUTORY COPYRIGHT INFRINGEMENT
### (Olay Facial Hair Removal (Purple Box) – Global)

145.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-144 as if fully set forth herein.

146.    Beginning on November 12, 2014, when the license expired, Defendants P&G and LPK Global willfully infringed Ms. Navarro's copyright in Images 7-10 by using, copying, and displaying her images on Olay Facial Hair Removal (Purple Box) packaging and packaging inserts in global markets without authorization.

147.    Defendants P&G and LPK Global have benefitted from their infringement of Images 7-10, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendants P&G and LPK Global's infringing activities, the extent of which are not able to be determined at this time.

148.    Defendants P&G and LPK Global's actions constitute a violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringement of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT VI - STATUTORY COPYRIGHT INFRINGEMENT
### (Olay Daily Facials)

149.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-148 as if fully set forth herein.

150.    Beginning on August 31, 2015, when the license expired, Defendants P&G and LPK Global willfully infringed Ms. Navarro's copyright in Images 11 and 12 by using, copying, and displaying her images on Olay Daily Facials packaging without authorization.

151.    Defendants P&G and LPK Global have benefitted from their infringement of Images 11 and 12, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendants P&G and LPK Global's infringing activities, the extent of which are not able to be determined at this time.

152.    Defendants P&G and LPK Global's actions constitute a violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringement of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## <u>COUNT VII - VICARIOUS COPYRIGHT INFRINGEMENT</u>
### (Olay Supersonic)

153.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-152 as if fully set forth herein.

154.    Image 1B has been used and continues to be used, displayed, and distributed without permission by distributors of Olay Supersonic.

155.    Defendant P&G has the right and ability to supervise the infringing activity third-party distributors as the manufacturer of Olay Supersonic and the originator of the packaging and other materials containing Image 1B.

156.    Defendant P&G benefits directly from the third-party direct infringement of Image 1B, because it profits from the continuing sale of Olay Supersonic.

157.    Defendant P&G has declined to exercise its right to stop or limit its distributors' infringement of Image 1B.

158.    Defendant P&G has benefitted from its distributors' infringement of Image 1B, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary

damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

159.    Defendant P&G's actions make it vicariously liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT VIII - VICARIOUS COPYRIGHT INFRINGEMENT
### (Olay/Olaz Regenerist Advanced Cleansing)

160.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-159 as if fully set forth herein.

161.    Image 1B has been used and continues to be used, displayed, and distributed without permission by distributors of Olay/Olaz Regenerist Advanced Cleansing.

162.    Defendant P&G has the right and ability to supervise the infringing activity third-party distributors as the manufacturer of Olay/Olaz Regenerist Advanced Cleansing and the originator of the packaging and other materials containing Image 1B.

163.    Defendant P&G benefits directly from the third-party direct infringement of Image 1B, because it profits from the continuing sale of Olay/Olaz Regenerist Advanced Cleansing.

164.    Defendant P&G has declined to exercise its right to stop or limit its distributors' infringement of Image 1B.

165.    Defendant P&G has benefitted from its distributors' infringement of Image 1B, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

166. Defendant P&G's actions make it vicariously liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT IX - VICARIOUS COPYRIGHT INFRINGEMENT
### (Olay Facial Hair Removal (Teal Box))

167. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-166 as if fully set forth herein.

168. Images 2-6 have been used and continue to be used, displayed, and distributed without permission by distributors of Olay Facial Hair Removal (Teal Box).

169. Defendant P&G has the right and ability to supervise the infringing activity third-party distributors as the manufacturer of Olay Facial Hair Removal (Teal Box) and the originator of the packaging and other materials containing Images 2-6.

170. Defendant P&G benefits directly from the third-party direct infringement of Images 2-6, because it profits from the continuing sale of Olay Facial Hair Removal (Teal Box).

171. Defendant P&G has declined to exercise its right to stop or limit its distributors' infringement of Images 2-6.

172. Defendant P&G has benefitted from its distributors' infringement of Images 2-6, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

173. Defendant P&G's actions make it vicariously liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT X - VICARIOUS COPYRIGHT INFRINGEMENT
**Olay Facial Hair Removal (Purple Box)**

174.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-173 as if fully set forth herein.

175.    Images 7-10 have been used and continue to be used, displayed, and distributed without permission by distributors of Olay Facial Hair Removal (Purple Box).

176.    Defendant P&G has the right and ability to supervise the infringing activity third-party distributors as the manufacturer of Olay Facial Hair Removal (Purple Box) and the originator of the packaging and other materials containing Images 7-10.

177.    Defendant P&G benefits directly from the third-party direct infringement of Images 7-10, because it profits from the continuing sale of Olay Facial Hair Removal (Purple Box).

178.    Defendant P&G has declined to exercise its right to stop or limit its distributors' infringement of Images 7-10.

179.    Defendant P&G has benefitted from its distributors' infringement of Images 7-10, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

180.    Defendant P&G's actions make it vicariously liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT XI - VICARIOUS COPYRIGHT INFRINGEMENT
### (Olay Daily Facials)

181.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-180 as if fully set forth herein.

182.    Images 11 and 12 have been used and continue to be used, displayed, and distributed without permission by distributors of Olay Daily Facials.

183.    Defendant P&G has the right and ability to supervise the infringing activity third-party distributors as the manufacturer of Olay Daily Facials and the originator of the packaging and other materials containing Images 11 and 12.

184.    Defendant P&G benefits directly from the third-party direct infringement of Images 11 and 12, because it profits from the continuing sale of Olay Daily Facials.

185.    Defendant P&G has declined to exercise its right to stop or limit its distributors' infringement of Images 11 and 12.

186.    Defendant P&G has benefitted from its distributors' infringement of Images 11 and 12, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

187.    Defendant P&G's actions make it vicariously liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT XII - CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Olay Supersonic)

188.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-187 as if fully set forth herein.

189.    Image 1B has been used and continues to be used, displayed, and distributed without permission by distributors of Olay Supersonic.

190.    Distributors' use of Image 1B constitutes direct infringement of Image 1B.

191.    Defendant P&G had and continues to have knowledge of distributors' infringing conduct, because Ms. Navarro has notified Defendant P&G of these infringements, which continue to-date.

192.    Defendant P&G knowingly provided the products and materials containing Image 1B to its distributors.  Thus, Defendant P&G has materially contributed to its distributors' infringement of Image 1B.

193.    Defendant P&G has benefitted from its distributors' infringement of Image 1B, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

194.    Defendant P&G's actions and inaction make it contributorily liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT XIII - CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Olay/Olaz Regenerist Advanced Cleansing)

195.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-194 as if fully set forth herein.

196.     Image 1B has been used and continues to be used, displayed, and distributed without permission by distributors of Olay/Olaz Regenerist Advanced Cleansing.

197.     Distributors' use of Image 1B constitutes direct infringement of Image 1B.

198.     Defendant P&G had and continues to have knowledge of distributors' infringing conduct, because Ms. Navarro has notified Defendant P&G of these infringements, which continue to-date.

199.     Defendant P&G knowingly provided the products and materials containing Image 1B to its distributors.  Thus, Defendant P&G has materially contributed to its distributors' infringement of Image 1B.

200.     Defendant P&G has benefitted from its distributors' infringement of Image 1B, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

201.     Defendant P&G's actions and inaction make it contributorily liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT XIV - CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Olay Facial Hair Removal (Teal Box))

202.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-201 as if fully set forth herein.

203.    Images 2-6 has been used and continues to be used, displayed, and distributed without permission by distributors of Olay Facial Hair Removal (Teal Box).

204.    Distributors' use of Images 2-6 constitutes direct infringement of Images 2-6.

205.    Defendant P&G had and continues to have knowledge of distributors' infringing conduct, because Ms. Navarro has notified Defendant P&G of these infringements, which continue to-date.

206.    Defendant P&G knowingly provided the products and materials containing Images 2-6 to its distributors.  Thus, Defendant P&G has materially contributed to its distributors' infringement of Images 2-6.

207.    Defendant P&G has benefitted from its distributors' infringement of Images 2-6, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

208.    Defendant P&G's actions and inaction make it contributorily liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT XV - CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Olay Facial Hair Removal (Purple Box))

209.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-208 as if fully set forth herein.

210.    Images 7-10 has been used and continues to be used, displayed, and distributed without permission by distributors of Olay Facial Hair Removal (Purple Box).

211.    Distributors' use of Images 7-10 constitutes direct infringement of Images 7-10.

212.    Defendant P&G had and continues to have knowledge of distributors' infringing conduct, because Ms. Navarro has notified Defendant P&G of these infringements, which continue to-date.

213.    Defendant P&G knowingly provided the products and materials containing Images 7-10 to its distributors.   Thus, Defendant P&G has materially contributed to its distributors' infringement of Images 7-10.

214.    Defendant P&G has benefitted from its distributors' infringement of Images 7-10, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

215.    Defendant P&G's actions and inaction make it contributorily liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

## COUNT XVI - CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Olay Daily Facials)

216.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-215 as if fully set forth herein.

217.    Images 11 and 12 has been used and continues to be used, displayed, and distributed without permission by distributors of Olay Facial Hair Removal (Purple Box).

218.    Distributors' use of Images 11 and 12 constitutes direct infringement of Images 11 and 12.

219.    Defendant P&G had and continues to have knowledge of distributors' infringing conduct, because Ms. Navarro has notified Defendant P&G of these infringements, which continue to-date.

220.    Defendant P&G knowingly provided the products and materials containing Images 11 and 12 to its distributors.  Thus, Defendant P&G has materially contributed to its distributors' infringement of Images 11 and 12.

221.    Defendant P&G has benefitted from its distributors' infringement of Images 7-10, and Ms. Navarro has suffered damages to her good will and reputation, as well as monetary damages, as a result of Defendant P&G's infringing activities, the extent of which are not able to be determined at this time.

222.    Defendant P&G's actions and inaction make it contributorily liable for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, for innocent and willful infringements of Ms. Navarro's copyright, resulting in harm to Ms. Navarro.

WHEREFORE, Ms. Navarro prays for judgment as follows:

A.     That Defendants P&G, LPK Global, S&SX, and Landor, their agents, servants, employees, assigns, attorneys, representatives, and successors, and all persons in active concert or participations with them, be permanently enjoined from the infringing copyright of Ms. Navarro in Images 1B and 2-12;

B.     That Defendants be required to pay to Ms. Navarro such damages as Ms. Navarro has sustained as a consequence of Defendants' willful infringement of Ms. Navarro's copyright and to account for all gains, profits, and advantages, derived by Defendants, or for statutory damages;

C.     According to experts who have reviewed the facts of this case and have participated in the preparation of the Complaint, the damages incurred by Plaintiff exceed seventy-five million dollars ($75,000,000.00);

D.     That Defendants be required pay to Ms. Navarro the costs of this action and reasonable attorney's fees pursuant to 17 U.S.C. § 505; and

E.     For such other and further relief as the Court deems just and proper.


Respectfully submitted,

/s/ Firooz T. Namei
Firooz T. Namei (018615)
Trial Attorney for Plaintiff
McKinney & Namei, LPA
*Ratio et Fides*
15 East 8th Street
Cincinnati, Ohio 45202
(513) 721-0200
(513) 632-5898 (fax)
firooz.namei@nameilaw.com

*Of Counsel:*
Jan I. Berlage
Gohn Hankey Stichel & Berlage, LLP
201 N. Charles St., Suite 2101
Baltimore, Maryland 21201
(410) 752-1261
(410) 752-2519 (fax)
jberlage@ghsllp.com

## JURY DEMAND

Ms. Navarro hereby demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

/s/ Firooz T. Namei
Firooz T. Namei (018615)
Trial Attorney for Plaintiff
McKinney & Namei, LPA
***Ratio et Fides***
15 East 8th Street
Cincinnati, Ohio 45202
(513) 721-0200
(513) 632-5898 (fax)
firooz.namei@nameilaw.com