# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ANNETTE NAVARRO MCCALL, *et al.*, | Case No. 1:17-cv-406 |
| Plaintiffs, | Judge Timothy S. Black |
| vs. | |
| THE PROCTER & GAMBLE COMPANY, *et al.*, | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL (Doc. 53) FOLLOWING *IN CAMERA* REVIEW

This civil action is before the Court on Plaintiffs' motion to compel (Doc. 53), as well as the parties' responsive memoranda (Docs. 64, 68, 124, 126).

## I. BACKGROUND

Plaintiffs Annette Navarro McCall and Navarro Photography LLC (collectively "Navarro") and Defendant The Procter & Gamble Company ("P&G") are currently locked in a copyright dispute. (Doc. 88). Navarro is a world-renowned photographer, residing Cincinnati, Ohio. (*Id.* at ¶ 2). P&G is a multi-national consumer goods corporation, headquartered in Cincinnati, Ohio.[1] (*Id.* at ¶ 4).

On August 20, 2018, P&G produced a privilege log to Navarro (the "Privilege Log"). (Doc. 116 at ¶ 15; Doc. 116-1 at 119). On September 13, 2018, Navarro filed a

---

[1] Also involved in the copyright dispute—though not in this Order—are Defendant Walmart Inc. and Third-Party Defendant Libby Perszyk Kathman Holdings, Inc. (Docs. 53, 88, 94, 113).

motion to compel against P&G (the "Motion to Compel"). (Doc. 53). In the Motion to Compel, Navarro sought the production of all the documents listed on the Privilege Log. (*Id.* at 22; Doc. 116 at ¶ 15; Doc. 116-1 at 119).

On July 5, 2019, the Court issued an order on the Motion to Compel (the "Motion to Compel Order"). (Doc. 118). In the Motion to Compel Order, the Court held that P&G had failed to support its claims of privilege with competent evidence. (*Id.* at 8–17). And the Court held that P&G had failed to produce the Privilege Log in a timely fashion. (*Id.* at 5–6). However, the Court refused to order the production of all the documents listed on the Privilege Log. (*Id.* at 6, 18–19).

The Court noted that while document production was a possible remedy for P&G's failure to support its claims of privilege with competent evidence, and while privilege waiver was a possible remedy for P&G's failure to produce the Privilege Log in a timely fashion, the disclosure of (potentially) privileged information was a serious matter. (*Id.* at 6, 18). As a result, the Court decided to take a different approach. (*See id.* at 6, 18–19).

The Court ordered P&G to submit five categories of documents for *in camera* review: the N3, N6, N10, N11, and N13 entries (collectively the "*In Camera* Documents"). (*Id.* at 18–19). The Court ordered P&G to file any affidavits needed to "evaluate the privilege(s) asserted." (*Id.* at 19). And the Court deferred any decision on document production/privilege waiver until after the Court had reviewed the documents submitted. (*Id.* at 6, 19, 21).

On July 12, 2019, P&G submitted the *In Camera* Documents to the Court.[2] (*See id.* at 19, 21). Also on July 12, 2019, P&G filed two declarations on CM/ECF: the Declaration of Robert Zimmerman and the Declaration of Debbie Woelfel (collectively the "Declarations").[3] (Docs. 120–21).

The Declarations assert that:

- P&G anticipated litigation with Navarro on August 28, 2015. (Doc. 120 at ¶ 5 ("August 28, 2015 [i]s the latest date on which P&G reasonably contemplated a specific threat of litigation from [Navarro]. . . . In an email sent to [a] P&G employee[] on August 28, 2015, [Navarro] referenced 'the serious nature of Copyright infringement' and said 'I could pursue a more aggressive approach.' . . . After receiving that email, the P&G . . . employee requested legal assistance from in-house counsel.")).

- The *In Camera* Documents fall under either the attorney-client privilege, the work-product doctrine, or both. (*Id.* at ¶¶ 6–8 (setting out, on a document-by-document basis, which entries were prepared "to facilitate the delivery of legal advice," which entries were prepared in response to/"in anticipation of litigation by [Navarro]," and which entries were prepared in response to/"in anticipation of litigation by [Navarro] . . . and involve legal advice sought from or given by" P&G's attorneys/legal team)).

- The documents prepared by P&G's legal team were created at the direction of P&G's attorneys. (*See* Doc. 121 at ¶¶ 7–8 (stating the entries authored by Debbie Woelfel were created at the direction of P&G's attorneys to relay legal advice or prepare for litigation); *id* at ¶¶ 9–10 (stating that, pursuant to P&G's "protocols," the entries prepared by P&G's legal team were created at the direction of P&G's attorneys)).

- And that P&G would turn 14 documents over to Navarro by July 15, 2019, instead of submitting them to the Court for *in camera* review. (Doc. 120 at ¶ 11).

---

[2] The *In Camera* Documents have not been electronically filed on CM/ECF, but they are part of the record and remain in the Court's custody.

[3] P&G actually filed Mr. Zimmerman's declaration on July 12, 2019 and Ms. Woelfel's declaration on July 15, 2019. (Docs. 120–21). However, the Court understands that CM/ECF experienced outages on July 12, 2019, and, as a result, the Court deems Ms. Woelfel's declaration submitted on July 12, 2019.

3

The Court has reviewed the *In Camera* Documents and the Declarations. The Court issues this Order to resolve the two main issues deferred in the Motion to Compel Order: (1) whether P&G has properly designated the *In Camera* Documents as privileged, and (2) whether P&G has waived its claims of privilege in their entirety.

## II. STANDARD OF REVIEW

Rule 26 provides that a party may:

> [O]btain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 37(a)(3)(B) authorizes a party to move for an order compelling the production of information wrongfully withheld from discovery.

The burden of establishing a claim of privilege rests with the party asserting it. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *Glazer v. Chase Home Fin. LLC*, No. 1:09-CV-1262, 2015 WL 12733393, at *2 (N.D. Ohio June 15, 2015). If a claim of privilege is challenged, the party asserting it must establish each element by competent evidence.[4] *See Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010);

---

[4] Competent evidence can include sworn statements in affidavits, depositions, and interrogatory answers. *Meadows v. Uniglobe Courier Serv. Inc.*, No. 5:08-CV-2530, 2009 WL 10719820, at *3 (N.D. Ohio July 29, 2009); *Amway Corp. v. Procter & Gamble Co.*, No. 1:98-CV-726, 2001 WL 1818698, at *4 (W.D. Mich. Apr. 3, 2001). It cannot include conclusory assertions in legal briefs, privilege logs, or emails. *See Cooey*, 269 F.R.D. at 649; *Comtide*, 2010 WL 4117552, at *5 ("[A] privilege log is not itself evidence of the existence of a privilege;" thus, a claim of privilege "cannot be sustained purely on the basis of unsworn information in a privilege log.").

4

*Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-CV-1190, 2010 WL 4117552, at *5 (S.D. Ohio Oct. 19, 2010) (stating that a party must establish the factual predicate for a claim of privilege by "competent evidence").

A district court enjoys broad discretion in managing discovery, and, as a result, a district court's decision to grant or deny a motion to compel is reviewed for an abuse of discretion. *See Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993).

### III. ANALYSIS

**A. Navarro must assert her spoliation claim in a new motion**

Before addressing the primary issues at-stake in this Order—privilege and waiver—the Court must tackle a threshold matter.

On July 26, 2019, Navarro filed a "response" to Mr. Zimmerman's declaration (the "Response"). (Doc. 124). In the Response, Navarro argues that, if P&G anticipated litigation on August 28, 2015 (as asserted in Mr. Zimmerman's declaration), then P&G has a "spoliation of evidence problem" on its hands. (*Id.* at 2, 4). Navarro notes that P&G did not implement a formal litigation hold until June 22, 2017—a little over a year and a half after August 28, 2015.[5,6] (*Id.* at 4; Doc. 124-1 at 6–7, 10).

---

[5] On August 5, 2019, P&G filed a "reply" to the Response (the "Reply"). (Doc. 126). In the Reply, P&G argues, *inter alia*, that the work-product doctrine applied as of August 28, 2015, that the triggering events for work-product protections and litigation hold obligations differ, and that (almost) all of the pre-complaint documents withheld under the work-product doctrine are also withheld under the attorney-client privilege. (*See* Doc. 126).

[6] Navarro also argues that, if P&G did not anticipate litigation until June 2017, then 249 of P&G's work-product claims fail "as a matter of law." (Doc. 124 at 2–3). However, this argument asks the Court to disregard both the assertions in Mr. Zimmerman's declaration and the representations in P&G's Reply. (Doc. 120 at ¶ 5 ("In my review of the Entries, I identified August 28, 2015 as the latest date on which P&G reasonably contemplated a specific threat of

5

The Court has carefully considered Navarro's argument. (*See* Doc. 124). However, the Court will not reach its merits at this time. It is well-established that a party cannot raise a new issue in a reply brief. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004). The rationale is that a court should only decide an issue after adequate briefing—*i.e.*, after a motion, a response, and a reply. *3LI Consultant Grp. v. Catholic Health Partners*, No. 1:15-CV-455, 2016 WL 3866596, at *1 (S.D. Ohio July 13, 2016).

By this same token, Navarro's attempt to raise a new issue (spoliation), in the context of a "response" to a declaration, is not well-taken. (Doc. 124). Spoliation is a very serious allegation. *See, e.g.*, *The Olinde Rodrigues*, 174 U.S. 510, 528 (1899) (characterizing spoliation as a "serious offense"); *Williams v. CVS Caremark Corp.*, No. 2:15-CV-5773, 2016 WL 4409190, at *7 (E.D. Pa. Aug. 18, 2016) (stating that spoliation is a "very serious offense," and "the accusation of spoliation is also serious"). The Court will not analyze so serious an allegation absent the benefit of adequate briefing.

If Navarro truly contends that P&G has failed to preserve documents for discovery, then Navarro must set forth her concerns in a new motion. As with other discovery-related disputes, Navarro can only file such a motion <u>after</u> she has exhausted the extrajudicial means at her disposal. S.D. Ohio Civ. R. 37.1 (requiring parties to meet and confer before filing "motions, applications, and requests relating to discovery");

---

litigation from Plaintiffs."); Doc. 126 at 2 (arguing that "[w]ork[-]product protection properly applies as of August 28, 2015")). The Court will not disregard the assertions in Mr. Zimmerman's declaration and the representations in P&G's Reply at this time.

6

(*accord* Notation Order dated July 30, 2019). These procedural steps are important. The Court will not issue a half-cocked decision on so weighty a matter. And given the significance of allegations of spoliation, the Court will not address them at an informal discovery dispute conference and instead grants Navarro leave to file a motion without an antecedent informal discovery dispute conference.

### B. All but one of the *In Camera* Documents are privileged

With the threshold matter of spoliation addressed, the Court considers whether P&G has properly designated the *In Camera* Documents as privileged.

#### 1. *The N3 Entries*

The N3 entries contain communications neither authored by nor addressed to an attorney.[7] (Doc. 116 at ¶ 18; Doc. 116-1 at 147). P&G claims that the N3 entries are protected by the attorney-client privilege.[8] Upon careful review, the Court agrees that the entries are privileged.

The attorney-client privilege attaches to communications, between an attorney and his/her client, regarding the provision of legal advice. *See Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998). In the corporate context, the attorney-client privilege extends to communications, between non-attorney employees, made to obtain or relay legal advice.

---

[7] That is, communications in which an attorney does not appear in the "to," "from," or "cc" fields. (Doc. 116 at ¶ 18; Doc. 116-1 at 147).

[8] This statement is over-encompassing. P&G seeks to protect 17 of the N3 entries submitted for *in camera* review under only the work-product doctrine. (Doc. 120 at ¶ 7 (containing 16 N3 entries); *id.* at ¶ 8 (containing F05478-E0009-00186427)). The Court has reviewed these entries and has concluded that they were prepared in anticipation of/response to litigation. (*See id.* at ¶¶ 7–8). As a result, P&G has properly withheld them from production. *Arugu v. City of Plantation*, No. 0:09-CV-61618, 2010 WL 11515702, at *7 (S.D. Fla. Oct. 26, 2010).

*See Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *7 (S.D. Ohio Nov. 13, 2012); *see also Reinsdorf v. Skechers U.S.A., Inc.*, No. 2:10-CV-7181, 2013 WL 12116416, at *4 (C.D. Cal. Sept. 9, 2013) (same); *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638 (D. Kan. 2006) (same).

As a result,

> A document need not be authored [by] or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. First, . . . documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys. Second, documents subject to the privilege may be transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately.

*Graff*, 2012 WL 5495514, at *8 (quoting *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)); *see King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-CV-1797, 2013 WL 4836752, at *8 (E.D. Pa. Sept. 11, 2013) ("Communications shared by non-attorney employees may be privileged if they were made in order to relay information requested by attorneys, or to disseminate legal advice given by those attorneys so that the corporation's employees act appropriately.").[9]

---

[9] *See also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *Tovey v. Nike, Inc.*, No. 1:12-CV-0448, 2013 WL 12131314, at *2 (N.D. Ohio Oct. 10, 2013) (holding that emails, disseminating advice from a company's legal department, were privileged); *accord McAirlaids, Inc. v. Kimberly-Clark Corp.*, No. 7:13-CV-193, 2014 WL 12782814, at *4 (W.D. Va. Sept. 26, 2014) (holding that documents "conveying or summarizing legal advice from counsel" were "properly withheld as" privileged); *Weeks v. Samsung Heavy Indus. Co.*, No. 1:93-CV-4899, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996) (stating that agents of a corporation "should be able to discuss the legal advice rendered to them").

8

In the Motion to Compel Order, the Court held that P&G had failed to submit competent evidence that the N3 entries contain communications, between an attorney and his/her client, regarding the provision of legal advice. (Doc. 118 at 10). Following the issuance of the Motion to Compel Order, P&G submitted sworn evidence that the N3 entries "involve legal advice sought from or given by" P&G's attorneys/legal team.[10] (*See* Doc. 120 at ¶¶ 6, 8). P&G also submitted sworn evidence that the documents prepared by P&G's legal team were created at the direction of P&G's attorneys. (*See* Doc. 121 at ¶¶ 7–10).

On the Court's review, P&G's representations are accurate. In the plurality of the N3 entries, P&G's employees gather information, about Navarro's copyright infringement claims, at the request of P&G's attorneys. In the remainder of the N3 entries, P&G's employees, *inter alia*, convey legal updates from P&G's attorneys, implement legal advice from P&G's attorneys, and/or set up meetings with P&G's attorneys/agents about the case. The purpose of all the communications is to obtain or relay legal advice. Thus, all are covered by the attorney-client privilege, notwithstanding the fact that none lists an attorney as a sender, recipient, or copied party.[11]

---

[10] F05478-E0001-00008985 does not appear on either of the Declarations. (*See* Doc. 116-1 at 147; *see also* Docs. 120–21). However, the Court has reviewed this entry and has concluded that it is privileged for the same reasons discussed *infra*.

[11] Notably, in most of the N3 entries, P&G's employees forward attorney-client emails to other P&G employees. Thus, while an attorney does not appear—as a sender, recipient, or copied party—on any of the N3 entries themselves, an attorney does appear—as a sender, recipient, or copied party—in most of the N3 entries' chains. (*See* Doc. 117 at ¶ 2 (stating that the Privilege Log only identifies the senders, recipients, and/or copied parties in the last email of a chain)).

### 2. *The N6 Entries*

The N6 entries contain communications in which an attorney is copied.[12] (Doc. 116 at ¶ 21; Doc. 116-1 at 165). P&G claims that the N6 entries are protected by the attorney-client privilege.[13] The Court agrees that the N6 entries are privileged.

A communication does not obtain privileged status simply because an attorney is copied. *U.S. ex. rel. Fry v. The Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5033940, at *2 (S.D. Ohio Dec. 11, 2009) (confirming that a non-privileged communication, between corporate employees, does not attain privileged status simply because an attorney is copied on it). The communication must, nonetheless, constitute a communication, between an attorney and his/her client, regarding the provision of legal advice. *See Waters v. Drake*, No. 2:14-CV-1704, 2015 WL 8281858, at *4 (S.D. Ohio Dec. 8, 2015).

As stated in Section III.B.1, *supra*, in the corporate context, the attorney-client privilege extends to communications, between non-attorney employees, made to obtain or relay legal advice. *See Graff*, 2012 WL 5495514, at *7; *accord Reinsdorf*, 2013 WL 12116416, at *4 (same); *King*, 2013 WL 4836752, at *8 (same); *ePlus Inc. v. Lawson Software, Inc.*, 3:09-CV-620, 2012 WL 6562735, at *7–8 (E.D. Va. Dec. 14, 2012)

---

[12] That is, communications in which an attorney appears in the "cc," rather than the "to" or "from" fields. (Doc. 116 at ¶ 21; Doc. 116-1 at 165).

[13] This statement is over-encompassing. P&G seeks to protect one of the N6 entries submitted for *in camera* review under only the work-product doctrine. (Doc. 116-1 at 165 (containing F05478-E0007-00021354)). The Court has reviewed this entry *in camera* and has determined that it was prepared in response to litigation. (*See* Doc. 120 at ¶ 8). As a result, P&G has properly withheld it from production. *Arugu*, 2010 WL 11515702, at *7.

(holding, after an *in camera* review, that certain "communications between non-attorneys reflecting legal advice" were privileged, where attorneys were carbon copied on the communications).

In the Motion to Compel Order, the Court held that P&G had failed to submit competent evidence that the N6 entries contain communications, between an attorney and his/her client, regarding the provision of legal advice. (Doc. 118 at 12). Following the issuance of the Motion to Compel Order, P&G submitted sworn evidence that the N6 entries "involve legal advice sought from or given by" P&G's attorneys/legal team. (*See* Doc. 120 at ¶¶ 6, 8). P&G also submitted sworn evidence that the documents prepared by P&G's legal team were created at the direction of P&G's attorneys. (*See* Doc. 121 at ¶¶ 7–10).

On the Court's review, P&G's representations are accurate. Most of the N6 entries fall into the same categories as the N3 entries: P&G's employees, *inter alia*, gather information for P&G's attorneys, convey/implement updates/advice from P&G's attorneys, and/or set up meetings with P&G's attorneys/agents. Additionally, many of the N6 entries involve direct questions, from P&G's employees to P&G's attorneys, regarding the provision of legal advice. The purpose of all the communications is to obtain or relay legal advice. Thus, all are covered by the attorney-client privilege, notwithstanding the fact that none lists an attorney as a sender or recipient.

### 3. *The N10 Entries*

The N10 entries contain communications between attorneys and numerous non-attorneys.[14] (Doc. 116 at ¶ 25; Doc. 116-1 at 177). P&G claims that the N10 entries are protected by the attorney-client privilege. The Court agrees, with one exception.

Where "in-house counsel appears as one of many recipients of an otherwise business-related memo, the federal courts place a heavy burden on the proponent to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice." *Graff*, 2012 WL 5495514, at *21 (quoting *Amway*, 2001 WL 1818698, at *4). Where a communication contains both legal and business advice a court must consider "whether the predominant purpose of the communication is to render or solicit legal advice." *Cooey*, 269 F.R.D. at 650 (quoting *Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 420 (2d. Cir. 2007)).

In the Motion to Compel Order, the Court held that P&G had failed to submit competent evidence that the N10 entries involve primarily legal advice. (Doc. 118 at 14). Following the issuance of the Motion to Compel Order, P&G submitted sworn evidence that the N10 entries "involve legal advice." (Doc. 120 at ¶¶ 6, 8). Frustratingly, P&G's representation—that the N10 entries "involve legal advice"—does fully not address the Court's concern. (*See id.*; Doc. 118 at 14). The fact that an entry <u>involves</u> legal advice does not necessarily mean that it involves <u>primarily</u> legal advice. (*See* Doc. 124 at 10–11 (noting the same concern)).

---

[14] That is, communications in which an attorney is a sender/recipient in a message involving numerous non-attorneys. (Doc. 116 at ¶ 25; Doc. 116-1 at 177).

Nonetheless, the Court's review establishes that all but one of the N10 entries involve primarily legal advice—on their face.[15] F05478-E0006-00158936 is the exception. The entry contains a communication, between P&G and PoToo Marking (a third-party), regarding Amazon listings. On the information provided, the Court cannot conclude that the entry reflects primarily legal advice.[16] Moreover, on the information provided, the Court cannot conclude that P&G and PoToo Marketing share a common legal interest.[17] Indeed, neither the entry nor PoToo Marking appears on either of the Declarations. (Docs. 120–21). Under such circumstances, production is required.

### 4. *The N11 Entries*

The N11 entries contain communications between P&G and (alleged) third-parties. (Doc 116 at ¶ 26; Doc. 116-1 at 186). P&G claims that the N11 entries are protected by the attorney-client privilege. The Court agrees, on the information provided.

As a general rule, a party waives the attorney-client privilege by communicating information to a third-party. *Glazer*, 2015 WL 12733393, at *2. However, as an exception to the general rule, the "common-interest doctrine" protects certain

---

[15]Indeed, the N10 entries fall into many of the same categories as the N3 and N6 entries. *Accord Silverman v. Motorola, Inc.*, No. 1:07-CV-4507, 2010 WL 2697599, at *3 (N.D. Ill. July 7, 2010) (concluding, based on an *in camera* review of certain documents, that all but one of the documents involved legal, as opposed to business, advice).

[16] The entry does appear to implicate some legal matters. However, it is P&G's burden to demonstrate that the attorney-client privilege applies. *Glazer*, 2015 WL 12733393, at *2. Where, as here, the face of the document reviewed does not establish the basis of the privilege claimed, the Court concludes that production is proper.

[17] As set forth *infra*, such an interest is generally required to convey privileged information to a third-party, sans waiver. *Glazer*, 2015 WL 12733393, at *2.

communications, disclosed to certain third-parties, in pursuit of "common legal interests." *Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 607969, at *20 (S.D. Ohio Feb. 19, 2013), *aff'd sub nom. Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2014 WL 5857994 (S.D. Ohio Nov. 12, 2014).

In the Motion to Compel Order, the Court held that P&G had failed to submit competent evidence that the N11 entries contain communications, between P&G and third-parties, that share a common interest. (Doc. 118 at 15). Following the issuance of the Motion to Compel Order, P&G turned two of the N11 entries over to Navarro.[18] (*See* Doc. 120 at ¶ 11 ("During my review I found fourteen documents that have now been removed from P&G's privilege log. Those documents will be produced to Plaintiffs by July 15, 2019.")). P&G submitted the remaining N11 entries to the Court for *in camera* review: F05478-E0008-00070329 and F05478-E0008-00213263.

On the Court's review, the remaining N11 entries do not appear to involve communications between P&G and third-parties. They appear to involve communications between P&G's employees and P&G's attorneys. All of the parties involved—Jennifer Hill, Susan VanellCharpentier, and Meghan Walters—maintain P&G email addresses. And none of the parties involved is highlighted in RED—as would be required (by the Court's Motion to Compel Order) if any were third-parties. (Doc. 118 at

---

[18] At least, the Court assumes that P&G turned two of the N11 entries over to Navarro. The *In Camera* Documents only contain two N11 entries.

14

19). Per such evidence/representations, as well as an *in camera* review, the Court concludes that the attorney-client privilege covers the remaining N11 entries.[19]

### 5. *The N13 Entries*

Finally, the N13 entries contain documents created before April 1, 2016. (Doc. 116 at ¶ 28; 116-1 at 192). P&G claims that the N13 entries are protected by the work-product doctrine. The Court agrees.

The work-product doctrine protects documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). The work-product doctrine applies when: (1) a document is created because of a subjective anticipation of litigation, and (2) the subjective anticipation of litigation is objectively reasonable. *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 304 (S.D. Ohio 2010); *see, e.g.*, *Roxworthy*, 457 F.3d at 600 (indicating that the work-product doctrine can apply when an attorney takes action to protect a client from future litigation about a particular transaction).

In the Motion to Compel Order, the Court held that P&G had failed to submit competent evidence that the N13 entries were created in anticipation of litigation. (Doc. 118 at 17). Following the Motion to Compel Order, P&G submitted sworn evidence that P&G anticipated litigation with Navarro on August 28, 2015. (Doc. 120 ¶ 5). P&G

---

[19] There is some disagreement about whether Ms. Hill is a P&G employee. (Doc. 53 at 20 (claiming that Ms. Hill is a Landor employee)). As stated, the evidence/representations before the Court indicate that Ms. Hill is a P&G employee. (*See also* Doc. 120 at ¶¶ 7–8 (asserting that F05478-E0008-00070329 and "F05478-E0008-00213623"—which is, presumably, a typo for F05478-E0008-00213263—are privileged)). The Court will trust the veracity of such evidence/ representations for the purposes of this Order. If Navarro maintains that Ms. Hill is not a P&G employee, the parties must meet and confer.

15

based this date on an August 28, 2015 email exchange between Navarro and a P&G employee. (*Id.*) In the email exchange, Navarro threatened an "aggressive" response to P&G's alleged "Copyright infringement." (*Id.*) After receiving the email exchange, the P&G employee reached out to P&G's attorneys for legal assistance. (*Id.*)

On the Court's review, the August 28, 2015 email exchange provides a sufficient basis for the application of the work-product doctrine. It triggered a subjective anticipation of litigation that was objectively reasonable. Moreover, on the Court's review, all of the N13 entries created after August 28, 2015 were prepared in anticipation of litigation.[20] All such entries contain emails, spreadsheets, and/or other documents, created in response to Navarro's legal contentions. (*See also* Doc. 120 at ¶¶ 7–8 (asserting that the N13 entries were prepared "in anticipation of litigation")).[21] As a result, the work-product doctrine attaches to the N13 entries.[22]

---

[20] Nine of the N13 entries were created before August 28, 2015. (Doc. 116-1 at 192). This does not change the Court's analysis. On the Privilege Log, P&G asserted attorney-client protection for all such entries. (*Id.*) On the Court's review, these assertions of attorney-client protection are valid. (*See also* Doc. 120 at ¶¶ 6, 8 (asserting that such entries involve legal advice sought from or given by P&G's attorneys or P&G's legal team)). Thus, the Court need not decide, at this time, whether the work-product doctrine applied before August 28, 2015.

[21] Four of the N13 entries do not appear on Mr. Zimmerman's declaration: F05478-E0017-00019924, F05478-E0007-00115311, F05478-E0007-00136133, and F05478-E0007-00207991. (Doc. 120). On the Court's review, these entries contain spreadsheets, summarizing P&G's use/licensure, for certain of Navarro's images. These entries were, on their face, prepared in anticipation of litigation. (Doc. 120 at ¶¶ 9–10 (noting that many of the entries are privileged on their face)). Thus, they are exempt from disclosure under the work-product doctrine.

[22] At this time, the Court does not express any opinion on when P&G's obligation to preserve documents arose. (*See* Section III.A, *supra*).

### C. Privilege waiver is not proper under the facts of this case

Finally, the Court considers whether P&G has waived its claims of privilege in their entirety.

Rule 26 provides that:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). A privilege log is the near-universal method of asserting privilege under Rule 26. *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013).

A party's failure to timely produce a privilege log can result in privilege waiver. *Casale v. Nationwide Children's Hosp.*, No. 2:11-CV-1124, 2014 WL 1308748, at *8 (S.D. Ohio Mar. 28, 2014). However, whether privilege waiver is proper depends on a case-by-case inquiry. *See id.* Given the "seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct[,] and bad faith." *Barger v. First Data Corp.*, No. 1:17-CV-4869, 2018 WL 6591883, at *7 (N.D. Ala. Dec. 14, 2018) (quoting *Smith v. James C. Hormel Sch. of Va. Inst. of Autism*, No. 3:08-CV-30, 2010 WL 3702528, at *5 (W.D. Va. Sept. 14, 2010)).

In the Motion to Compel Order, the Court refused to decide whether P&G had acted in bad faith—and thus whether privilege waiver was proper—until after it reviewed the *In Camera* Documents:

> The Court concludes that whether P&G has acted in bad faith will turn on whether P&G's belated claims of privilege have merit. The Court will determine whether P&G's belated claims of privilege have merit after it completes the *in camera* review, discussed . . . *infra*. Until such time, whether privilege waiver is proper is deferred.

(Doc. 118 at 6).

As set forth *supra*, the vast majority of P&G's claims of privilege (*i.e.*, all but one), while belated, have merit. Under such circumstances, and in accordance with the Motion to Compel Order, the Court will not find that P&G has acted with bad faith, such that privilege waiver is proper. The attorney-client privilege and the work-product doctrine offer sacred protections. *See, e.g.*, *Johnson v. City of Cincinnati*, 119 F. Supp. 2d 735, 742 (S.D. Ohio 2000) ("The law protects confidentiality and sanctity of the attorney-client relationship."), *aff'd*, 310 F.3d 484 (6th Cir. 2002). The Court will not lightly cast them aside.

### IV.  CONCLUSION

Based upon the foregoing, the Motion to Compel (Doc. 53) is **GRANTED in part** and **DENIED in part**. The Court **ORDERS** P&G to produce F05478-E0006-00158936 to Navarro forthwith. In all other respects, the Motion to Compel is **DENIED**. If Navarro wants to file a motion on spoliation, she must meet and confer with P&G under Local Rule 37.1. S.D. Ohio Civ. R. 37.1. Within seven days of the date of this Order,

P&G shall produce a revised privilege log to Navarro, curing the deficiencies identified in the Motion to Compel Order. (Doc. 118 at 21).

The Court is not pleased that it was required to dive into a discovery dispute that could easily have been avoided if P&G had (1) designated its claims of privilege with greater care, and (2) supported its claims of privilege with competent evidence (for example, a sufficient declaration)—from the get-go. The Court trusts that, moving forward, none of the parties will tie-up the Court's scarce judicial resources with similarly avoidable disputes. (*Accord* Notation Order dated July 30, 2019).

**IT IS SO ORDERED.**

Date: 8/22/2019

Timothy S. Black
United States District Judge