# EXHIBIT 2



Nevium LLC

## Limited Expert Rebuttal Report of Doug Bania



**Annette Navarro McCall and Navarro Photography, LLC v. the Procter & Gamble Company, et. al.**

**June 10, 2020**

**Nevium LLC**
415 Laurel Street, Suite 341, San Diego, CA 92101
www.nevium.com



## Expert Report Information

I, Doug Bania, of Nevium LLC ("Nevium") have been engaged by Dinsmore & Shohl LLP ("Counsel") to consult on behalf of the Procter & Gamble Company and Walmart Inc.; Case Number: 1:17-cv-00406-TSB (the "Case"). The date of this report (the "Report") is June 10, 2020 (the "Report Date"). My analysis and opinions are based on the information and documents I have received as of the Report Date. A listing of the documents relied upon in developing the analysis and opinions in this report is provided at Exhibit A.

My qualifications, including a list of publications and expert testimony experience pursuant to information required by Federal Rule of Civil Procedure 26(a)(2)(B), is provided at Exhibit B. Specific to this assignment, I have over 15 years of experience analyzing and valuing intellectual properties (IP), intangible assets and right of publicity assets. My professional experience includes damages calculations for intellectual properties, licensing and transaction advisory and litigation support consulting. I work with clients to build brand value through IP licensing, celebrity endorsements and buying and selling IP. I am a Certified Licensing Professional (CLP), a Google Analytics Certified Individual (GAIQ) and a past committee member (2016 - 2019) for the International Trademark Association (INTA) Internet Committee and the ICANN Compliance and Domain Name Industry Subcommittee, a current member of the INTA Right of Publicity committee and the American Bar Association (ABA), Copyright & Social Media Committee. I hold a MA from San Diego State University in Television, Film and New Media Production, and a bachelor's degree in Cinema from San Francisco State University.

**The Assignment**

For this Report I was asked to provide expert testimony regarding the economic damages claimed by the plaintiffs in the Case. Specifically, I was asked to provide expert testimony replacing the conclusions found by Ellen Boughn in her Limited Rebuttal Report to the Preliminary Expert Report of Professor Jeffrey Sedlik, submitted on February 18, 2020 (the "Boughn Report"). My understanding of the Boughn Report is that Ellen Boughn submitted the following opinions:

1. Mr. Sedlik's claims of alleged "unauthorized use" and thus, his opinion on any damages, is exaggerated, unsupported, speculative, and not reliable as it is based on usages that would have been included within an agreement negotiated for product packaging.

2. Mr. Sedlik's claims of alleged "unauthorized use", and thus, his opinion on any damages, is further exaggerated, unsupported, speculative, and not reliable as he asserts a non-industry standard requirement that P&G should have recalled all product packaging at the end of a license period and policed any third-party usage.

3. Mr. Sedlik conveniently fails to identify the fact that Navarro's invoices do not meet licensing industry standards, and Mr. Sedlik then exploits this failure to greatly inflate—against industry standards—any alleged damages in this case.

4. Mr. Sedlik's hypothetical licensing fee(s)4 and thus, his opinion on any damages, is grossly exaggerated, unsupported, speculative and not a reliable measure of actual damages, as it appears that Mr. Sedlik (a) first came up with the conclusion that he wanted to reach (the highest possible damages amount he can) and then (b) used stock photo prices in a

very unorthodox and unheard of fashion to create a series of burdensome, incorrect, confusing, needlessly complex, and nearly incomprehensible exhibits to support hundreds of "hypothetical licenses" to get to his conclusion in whatever way he could.

Like Ms. Boughn, I was also asked to review and evaluate the economic damages theories presented in expert reports submitted by Jeffrey Sedlik and provide expert testimony regarding the contents and structure of the invoicing that allegedly functions as licenses in this Case.

I have not been asked to provide any opinions regarding liability of the Defendants. Also, I have not been asked to confirm the accuracy of any information provided to me. The damages calculations and opinions in this Report assume the Plaintiff's establish liability in this Case.

My colleagues and I at Nevium are being compensated for this report at a rate of $450 per hour. Time spent at a deposition or trial is billed at $500 per hour. My compensation is not dependent on the outcome of this Case. Deposition payment must be paid in person, immediately after the deposition.

The analysis and opinions in this report are based upon the documents and information reviewed as of the Report Date, as well as my background in intellectual property analysis, damages calculations, licensing for intellectual property and profit apportionment. I reserve the right to amend and supplement this report upon the receipt of additional information, data, or deposition testimony as that information is provided to me. I also reserve the right to provide rebuttal opinions with respect to any expert report or opinion that is submitted.

## Background

According to the Fifth Amended Complaint dated February 2020 (the "Complaint"), Annette Navarro McCall ("Navarro") is an individual residing in Cincinnati, Ohio. Navarro is a photographer whose photographs appear on products sold in domestic and international markets. Navarro's photographs may be found on or in connection with various products for brands such as Olay, Jergens, John Frieda, Biore, Scope, and Crest White Strips.[1]

The Complaint also states Navarro Photography LLC ("NPLLC") is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio. NPLLC is owned by Navarro Acquisition, LLC. Navarro and the Navarro entities are together referred to in this Report as the "Plaintiff."

Procter & Gamble Company ("P&G") was founded in 1837 and is headquartered in Cincinnati, Ohio. P&G provides branded consumer packaged goods to consumers around the world. It operates in five segments: Beauty; Grooming; Health Care; Fabric & Home Care; and Baby, Feminine & Family Care.[2]

The Complaint also mentions that LPK Global Brand Design Agency ("LPK") was the agent for P&G and was acting as P&G's representative. P&G hired LPK to create the package designs at issue in this litigation. LPK, in turn, hired Navarro to take photographs for said package designs for P&G's benefit.

---

[1] Fifth Amended Complaint
[2] S&P Capital IQ Business Description for The Procter & Gamble Company (PG): capitaliq.com



**P&G and Navarro Working History**

Navarro has been providing photography services to P&G since approximately 2001 through agencies such as LPK. The Preliminary Expert Report of Jeffrey Sedlik, submitted January 14, 2020 and corrected February 5, 2020 report states "between 2001 and 2014, Navarro provided photographs for over 40 P&G products and marketing initiatives."[3] P&G used Navarro's photographs on Olay product packaging and in the marketing, publicity, and branding of those products all over the world.

According to the Complaint, P&G and its design agencies such as LPK, Arc Worldwide, and Saatchi & Saatchi, have negotiated terms through numerous oral and written communications. The terms were negotiated between Navarro and LPK on a project-by-project basis and each purported license was subject to written usage restrictions. LPK, or another agency, would then hire Navarro to assist with the requested project for P&G's benefit.

**The Plaintiffs' Claims and the Subject Assets**

According to the Complaint, Navarro is the sole author of Image 1, Images 2-6, Images 7-10, and Images 11-12 (collectively referred to as the "Subject Images").[4] I understand Navarro is the owner of United States copyrights for each of the Subject Images. The Subject Images were taken as part of four separate photo shoots involving four different models for four different Olay beauty products in 2010, 2011, and 2012. Each photo shoot for a specific product is referred to in this Report as a "Project."

The Complaint claims copyright infringement and fraud against the Defendants in connection with the Subject Images. Details of the claims for each Project and Subject Image are presented at Schedule 2. In summary, the allegations are:

- P&G used the Subject Images outside the range of permitted dates (the "Term") as indicated on the invoices submitted by Navarro to LPK as P&G's agent for each of the Projects (the "Invoices");

- P&G used the Subject Images in geographic territories beyond the permitted territories ("Territory") as indicated on the Invoices;

- P&G used some of the Subject Images in packaging of a product, Regenerist, not indicated in the Invoices; and

- P&G used the Subject Images in marketing and promotional activities beyond the established scope of permitted uses (the "Scope") as indicated on the Invoices.

The claimed use of the Subject Images beyond the permitted transaction parameters, as indicted by the Invoices, is the "Alleged Misuse" for the purposes of my analysis and this Report. I understand the exact definition of the Alleged Misuse is a point of contention between the parties in this Case.

---

[3] Sedlik Report, Section VI-F, page 25
[4] Exhibit A1 through A4 of the Exhibits to Fifth Amended Complaint



**Key Events**

The operative Complaint was filed on February 14, 2020 and states that the Plaintiffs and P&G have worked together since 2001. Starting January 2010, the Plaintiff and P&G, through LPK, began negotiations for use of some of the Subject Images, and the earliest Invoice related to the Subject Images is dated April 21, 2010 (Invoice for use of Image 1 for the Olay Pro X product). Both parties agreed to additional transactions involving the Subject Images with the last invoice dated May 25, 2012.[5]

**The Sedlik Reports**

I understand Jeffrey Sedlik has submitted the following reports in the case:

- Preliminary Expert Report of Professor Jeffrey Sedlik, submitted January 14, 2020 and corrected February 5, 2020 (the "Sedlik Report"); and

- Rebuttal Expert Report of Professor Jeffrey Sedlik submitted March 31, 2020 (the "Sedlik Rebuttal").

Summarizing the Alleged Misuse as described starting at page 38 and at Exhibits D and F of the Sedlik Report:

1. On multiple package versions not permitted under the rights granted;

2. On products not covered under the rights granted;

3. In media not permitted under the rights granted;

4. In territories not permitted under the rights granted; and

5. On dates exceeding the time period defined under the rights granted.

Items 1, 2 and 3 are equivalent to misuse of the Scope parameter. Item 4 is equivalent to misuse of the Territory parameter and item 5 is equivalent to a misuse of the Term parameter. Based on my review of the Sedlik Report, the analyses and opinions regarding damages can be summarized as follows:

- Actual Damages – Market Rates in the amount of $3,091,434.58 (the "Market Opinion");[6]

- Actual Damages – Determined by Navarro's Fees Schedule in the amount of $4,769,350 (the "Navarro Fee Opinion");[7]

- Damages based on the Model Fee Differential – determined by comparing the actual model fees paid to the $883,800 settlement payment in an amount between $789,372 and $4,040,670 (the "Fee Differential Opinion");[8]

---

[5] Invoice dates presented at Schedule 5.
[6] Sedlik Report, pages 46 - 47
[7] Sedlik Report, pages 47-48
[8] Sedlik Report, pages 48-49



- Damages based on Fraud by P&G determined by multiplying Navarro's stated fee for sale of the copyrights in the amount of $7,388,000 (the "Fraud Opinion");[9]

- Damages in the form of unpaid compensation for additional unauthorized usages in the amount of $10,759,320 (the "Additional Uses Opinion");[10] and

Together these opinions are the "Sedlik Damages Opinions." For this Report, my assignment includes opinions in rebuttal to the Sedlik Damages Opinions.

## Approaches to Calculating Damages

Economic damage calculations typically measure either the decline in financial performance of a plaintiff, and/or the additional financial performance unfairly achieved by a defendant. The fundamental purpose of an economic damages remedy is to make the plaintiff, or claimant, whole for its legally recognized injuries or losses. In situations of breach of contract or intellectual property infringement, either the plaintiff has not achieved an amount of financial performance it would have achieved but-for the actions of the defendant, or the defendant has achieved additional performance due to its actions. Typically, a damages analyst will investigate both the amount by which financial performance of the plaintiff has declined, as well as the amount by which the defendant was unjustly enriched.

For copyright infringement damages, the Copyright Act provides the following guidance:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement. . . . In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue. The infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.[11]

The Copyright Act provides for two types of monetary remedies: actual damages suffered by the copyright holder as a result of the infringement; and any additional profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. The Sedlik Report proposes a hypothetical license transaction in which Navarro receives additional compensation from P&G for the Alleged Misuse. In using a hypothetical license as the framework for a damages opinion, the fees paid by the hypothetical licensee to the hypothetical licensor represent both the additional performance allegedly achieved by the defendant and the lost financial performance of the plaintiff.

For this report, I have been asked to assume a hypothetical license or transaction between Navarro and P&G, and based on this framework, investigate the amount of compensation Navarro would be willing to accept for the Alleged Misuses. This reasonable compensation is the amount P&G did not pay in compensation to Navarro for the Alleged Misuse of the Subject Images. Thus, the calculation of reasonable compensation serves as the measure of actual

---

[9] Sedlik Report, page 53
[10] Sedlik Report, pages 57-58
[11] Title 17 of the U.S. Code, Section 504.



damages. For this Report I have not been asked to analyze the financial performance of P&G and not have not conducted such an analysis.

Additionally, economic damage calculations must be measured based on reliable factors, without undue speculations. Economic damages must not be remote, speculative, or hypothetical and must be based on proven usage. The damages calculation must be within the realm of reasonable certainty.[12] In other words, economic damages do not have to be calculated with exactness but must use facts, sound methodologies, and yield reasonable results. The damages calculation should not provide the claimant with an economic windfall, an amount greater than an amount of compensation they would have achieved in their normal course of business.

In this Case, the parties have transacted together for approximately 20 years. As stated, the Complaint indicates Navarro and P&G's transactional relationship through design agencies started in 2001. The photo shoots for the transactions related to the Alleged Misuse occurred during 2011, 2012 and 2013. I have received and reviewed documents indicating Navarro has provided photographs for the four Projects related to the Alleged Misuse and 16 other projects (the "Other Projects").[13]

The Other Projects involve P&G product brands such as Always, Biore, Crest, Definity, John Frieda, Jergens and more, as well as photo shoots of models, and for promotions for the Olympics. The Other Projects include transactions between August 2005 and September 2016. Together, the multiple transactions between Navarro and P&G's agents indicate Navarro has been a willing seller of her claimed photographs and copyrights. The multiple transactions over many years in which P&G compensated Navarro indicate P&G has been a willing buyer of the photographs and copyrights. The parties, Navarro and P&G, have willingly negotiated and executed transactions, including transactions that extended the original transaction parameters.

As an IP damages expert, I am often tasked with applying the framework of a hypothetical transaction that portrays the alleged infringement and established fair and reasonable compensation from the alleged infringer to the claimant. I typically utilize publicly available license agreement databases such as ktMine, Royalty Range and Royalty Source. While scouring through the licensing transaction databases, I look for transactions between two parties that best match the parties and the hypothetical transaction in the case. It can be difficult to find exact matches, but license agreements involving similar parties and industries can typically be found. The goal of this process is to identify several comparable license agreements that represent a willing seller (licensor) and a willing buyer (licensee) and use the terms in the agreements to build a hypothetical transaction that can be used to calculate damages for alleged infringement in a case.

In this Case I did not have to rely on the licensing databases for comparable agreements because P&G and Navarro have been working together for years. Both parties have agreed to reasonable compensation as a willing buyer and willing seller for use, and extension of the agreed use, of Navarro's photographs and copyrights many times. The parties' past transactions facilitated by

---

[12] National Association of Certified Valuators and Analysts (NACVA, Business and Intellectual Property Damages, Webinar Slides, 2020

[13] The Other Projects and case documents evidencing the Other Projects are summarized at Schedule 3.

design agencies provide useful benchmarks for the amount of compensation P&G would willingly pay, and Navarro would willingly accept, for use of the Subject Images in a manner equivalent to the Alleged Misuse.

**Damages Calculation Approaches**

For this Report, I investigated and analyzed the nature of the transactions to opine on an amount of reasonable compensation related to the Alleged Misuse. My analysis consists of:

- Review the transactions between Navarro, P&G's agencies and P&G to ascertain the range of transaction parameters in which the parties have interacted in the past;

- Based on the parties past interactions, develop a range for the amount of reasonable compensation Navarro would reasonably expect to receive as a willing seller for the Alleged Misuse; and

- Review the damages opinions presented in the Sedlik Report.

These analysis and calculations are discussed in the following sections of this Report.

## Review of the Seven Transactions

As previously stated, Navarro, P&G and P&G's agencies have worked together on many projects over many years. For this Case, I understand the Alleged Misuse is related to seven transactions involving four projects (The "Seven Transactions"). The four Projects and the related Seven Transactions are:[14]

| Transaction Descriptions | | | |
|---|---|---|---|
| **Project** | **Transaction Exhibit** | **Transaction Description** | **Image Exhibit** |
| **Pro X** | C1, C2 | Photos for Pro X product to be used on packaging only for 3 years in North America with separate transaction adding 1 year in-store display in North America | Image 1 Exhibit A1 |
| **Facial Hair Removal (Teal)** | C4, C5, C6 | Photos for FHR Teal product to be used on packaging, in-box brochures, and internet in North America for 3 years. Additional 2 transactions allowed the photos to be used in Western Europe for 3 years for packaging, internet, and brochures and also for a Elle Canada magazine publication for 1 month | Images 2-6 Exhibit A2 |
| **Facial Hair Removal (Purple)** | C7 | Photos for FHR Purple product to be used globally on packaging, in brochures, in press release materials, and to display on Internet for 3 years | Images 7-10 Exhibit A3 |
| **Daily Facials** | C8 | Photos for Daily Facials products to be used on packaging, brochure insert and packing on the Internet in North America for 3 years | Images 11-12 Exhibit A4 |

The invoice documents for the Seven Transactions establish Navarro's work and compensation for the four Projects. The invoice documents vary from transaction to transaction but typically indicate Navarro sought compensation for multiple components including the following "Transaction Parameters:"

1. Term: the duration or amount of time when the image can be used.

2. Territory: the geographic region or countries where the image can be used.

---

[14] Schedule 2: Description of the 7 Case Invoices



3. Scope: the type of use such as packaging, internet, in-store displays, brochures, and other forms (in some transactions the scope is undefined or unlimited).

As an example, the invoice for the Daily Facial Project is presented at Figure 1.

*Figure 1*



In addition to the Transaction Parameters, the invoices request payment for other components of each Project such as creative fees, expenses, and model fees. Expenses include, but are not limited to, casting, makeup and/or hair stylist, assistants, travel, and catering. The Alleged Misuse is related to five products, for which Navarro submitted four initial invoices. A summary of the four initial invoices for these Projects:

| Original Transactions | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agreed Terms Analysis** | | | **Project Costs** | | | | |
| **Project** | **Invoice** | Term (Years) | Territory | Scope | Photo / Creative | Media Use (License) | Models Fee | Other Charges | **Total Amount** |
| **ProX** | C1 | 3 | North America | Packaging Only (Narrow) | 5,000 | 18,000 | - | 9,701 | **32,701** |
| **Facial Hair Removal (Teal)** | C4 | 3 | North America | Package, In-Pack Brochure, Internet (Multi-Defined) | 6,000 | 24,000 | - | 5,508 | **35,508** |
| **Facial Hair Removal (Purple)** | C7 | 3 | Global | Package, Internet, PR, Brochure (Multi-Defined) | 6,000 | 30,000 | - | 5,895 | **41,895** |
| **Daily Facials** | C8 | 3 | North America | Package, Internet, Brochure (Multi-Defined) | 3,000 | 9,000 | - | 1,750 | **13,750** |
| | | | | *Totals* | **$20,000** | **$81,000** | **$0** | **$22,853** | **$123,853** |

In addition, Navarro invoiced LPK for additional uses of the Subject Images from these four Projects. A summary of the invoices for these additional uses:

| Additional Usage Transactions | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Agreed Terms Analysis | | | Project Costs | | | | |
| Project | Invoice | Term (Years) | Territory | Scope | Photo / Creative | Media Use (License) | Models Fee | Other Charges | Total Amount |
| ProX | C2 | 1 | North America | In-Store Only (Narrow) | - | 5,000 | - | - | 5,000 |
| Facial Hair Removal (Teal) | C5 | 3 | Western Europe | Package, In-Pack Brochure, Internet, PR (Multi-Defined) | - | 18,000 | - | - | 18,000 |
| Facial Hair Removal (Teal) | C6 | 1MO | North America | Magazine (Narrow) | - | 500 | - | - | 500 |
| | | | | | Totals | $0 | $23,500 | $0 | $0 | $23,500 |

For the additional uses, the same Subject Images are being used and there is not a new photo shoot or additional creative work by Navarro. Therefore, the only additional fee component Navarro requests in the invoice is an additional media use/usage fee for the relevant Subject Image. Including all the components of the invoices each of these transactions, the compensation received by Navarro's for the Seven Transactions:

| Total Cost by Project | | | | | | |
|---|---|---|---|---|---|---|
| | | Total Cost | | | | |
| Project | Invoice | Photo / Creative Fee | Media / Usage | Model Use Fee | Other | Total Amount |
| Pro X | C1, C2 | 5,000 | 23,000 | - | 9,701 | 37,701 |
| Facial Hair Removal (Teal) | C4, C5, C6 | 6,000 | 42,500 | - | 5,508 | 54,008 |
| Facial Hair Removal (Purple) | C7 | 6,000 | 30,000 | - | 5,895 | 41,895 |
| Daily Facials | C8 | 3,000 | 9,000 | - | 1,750 | 13,750 |
| | | $20,000 | $104,500 | $0 | $22,853 | $147,353 |

In total, Navarro invoiced and accepted total payments of $147,353 for her work, reimbursement of expenses and use of the Subject Images. The amount specifically paid for use of the Subject Images totalled $104,500.

Of note, the invoices for the Seven Transactions lack several components of traditional intellectual property (IP) license transactions. IP licenses typically contain provisions clearly defining key components of the transaction to prevent confusion and to protect each party. IP licenses typically include:[15]

- Specific definitions of relevant transaction parameters;

- Grant of rights, including specific definition of the subject asset or assets;

- Term or duration of the agreement, including the IP license start date, date of termination, and provisions to extend the term;

- Compensation provisions, including how to address payment issues, or non-payment;

---

[15] Battersby, Gregory and Danny Simon, Basics of Licensing: How to Extend Brand and Entertainment Properties for Profit, Kent Press 2010, Chapter 8



- Sub-licensing, can the licensee license out to a third party;

- Quality control provisions, including remedies if the subject IP is used in a manner that would devalue the IP;

- Representation and warranties, including representation the subject IP is owned by the licensor and if the licensee is representing or working on the behalf of other parties; and

- Termination provisions, including the ability of either party to terminate the agreement for non-compliance.

Navarro's invoices contain some of these components but typically do not include components such as, definitions for many of the Transaction Parameters, provisions to cure any breach or non-payment, or quality control provisions. However, it appears that the Sedlik Report treats these Invoices as if they are fully functioning IP licenses between Navarro and LPK, that then applied to P&G. For the purpose of rebutting portions of the Sedlik Report, I will likewise treat these Invoices as valid agreements between the parties, although they do not meet IP licensing standards.

## Reasonable Compensation

Assuming P&G is liable for the Alleged Misuses, Navarro would be entitled, and P&G would be expected to pay, an amount of reasonable compensation for the actual use of the relevant Subject Images. As a damages award, the calculation of reasonable compensation is intended to make the harmed party, Navarro, whole and not to provide a financial windfall, an amount greater than the Plaintiff would have achieved had they been paid the fair market value for their work and use of their properties. As the Other Projects indicate the amount P&G has been willing to pay and Navarro has willingly accepted for equivalent work and photo usage, the Other Projects can be used as a guide to establishing reasonable compensation for the Alleged Misuses.

The Sedlik Report reviews several transactions between Navarro and P&G, executed through P&G's agents.[16] Although the Sedlik Report appears to be aware of Navarro's other transactions, the Sedlik Report does not incorporate these transactions as an indication of compensation Navarro would willingly accept in the Sedlik Damages Opinions. The Sedlik Damages Opinions should have incorporated the Other Projects as indications of reasonable compensation and as indications of a fair and reasonable damages award.

**Reasonable Compensation for Alleged Misuse Beyond Established Term[17]**

Ten of the Other Projects include a term of three years or greater. For these 10 transactions, Navarro invoiced, and was paid, usage fees ranging from $10,500 to $60,000 for three-year terms, and $21,000 to $27,000 for five-year terms. The average usage fee on an annual basis is $6,433.

---

[16] Review of other transactions between Navarro and P&G starts at page 44 of the Sedlik Report.
[17] Calculations presented at Schedule 4.



Based on product sales data from P&G,[18] the Alleged Misuse related to the Term alleges use of the Subject Images beyond the Term allegedly established by Navarro. Applying the average annual usage fee to the length of time in which the Subject Images are alleged to have been used beyond the established Term, Navarro's additional compensation is $90,067. The additional compensation would be in addition to the $104,500 Navarro was paid for use of the Subject Images.

**Reasonable Compensation for Alleged Misuse Outside the Established Territories[19]**

Ten of the Other Projects include a permitted territory of use that is "global" or wider than the Territories alleged to be established in the Seven Transactions. For these 10 of the Other Projects, Navarro invoiced, and was paid, usage fees ranging from $500 to $30,000 for global use. The average usage fee for global use is $17,950.

Applying the average global usage fee to the Alleged Misuses where the Subject Images were alleged to be used outside of the established Territories, Navarro's additional compensation is $26,900. The additional compensation would be in addition to the $104,500 Navarro was originally paid for use of the Subject Images.

**Reasonable Compensation for Alleged Misuse Beyond the Established Scope[20]**

Five of the Other Projects include a permitted scope of use that is broader or more inclusive than the Scope alleged to be established in the Seven Transactions. For these five of the Other Projects, Navarro invoiced, and was paid, usage fees ranging from $500 to $67,500 for uses indicated on the Invoices such as "unlimited" or "unlimited print media library" or "total buyout." The average usage fee for such wide or unlimited use is $28,000.

Applying the average broad Scope usage fee to the Alleged Misuses where the Subject Images are alleged to have been used beyond the established Scope, Navarro's additional compensation is $52,000. The additional compensation would be in addition to the $104,500 Navarro was originally paid for use of the Subject Images.

Based on Navarro's actual transactions with P&G, reasonable compensation for the Alleged Misuses totals $168,967. In other words, had Navarro and P&G transacted as they had done previously as willing buyer and willing seller, the parties would have been willing to pay $168,967 for the Alleged Misuses and Navarro would have been willing to accept this amount. In other words, Plaintiff's actual damages as a representation of lost compensation is $168,967.

## Review of the Sedlik Damages Opinions

As stated, the Sedlik Report provides five different damages opinions. The following table presents the Sedlik Damages Opinions, and compares the stated damages amounts to Navarro's actual compensation.

---

[18] P&G's Insight Reports and P&GNavarro-12060, dates are presented at Schedule 5.
[19] Calculations presented at Schedule 4.
[20] Calculations presented at Schedule 4.

| Summary of Sedlik Report Opinions | | | | | | |
|---|---|---|---|---|---|---|
| **Analysis / Opinion** | **Calculation Result** | | **Document Reference** | **Navarro Actual Compensation** | **Ratio** | |
| Market Opinion | 3,091,435 | | *Page 46* | | 2958% | |
| Navarro Fee Opinion | 4,769,350 | | *Page 47* | | 4564% | |
| Fee Differential Opinion | 789,372 | 4,040,670 | *Page 48* | | 755% | 3867% |
| Fraud Opinion | 7,388,000 | | *Page 53* | | 7070% | |
| Additional Uses Opinion | 10,759,320 | | *Page 57* | | 10296% | |
| *Total* | $26,797,477 | $30,048,775 | | **$104,500** | 25644% | 28755% |
| *Average* | $5,359,495 | $6,009,755 | | | 5129% | 5751% |

The Sedlik Damages Opinions indicate Navarro would receive a financial windfall, or an amount of compensation substantially larger than she would have had the parties transacted as willing buyer and willing seller. Stated another way, the calculations in the Sedlik Report indicate Navarro should be awarded amounts that average 5129% to 5751% more than she would have been compensated as a willing seller. Although the Sedlik Damages Opinions are unreasonable, there are other issues with each of the calculations.

The Market Opinion in the amount of $3,091,434 is based on the parties completing 680 additional transactions for the same Subject Images. Based on my licensing expertise, the Alleged Misuses are merely extensions of established transactions between the parties and there would be no need to create a new invoice for each of 680 permutations listed in the Sedlik Report. As this calculation is based on an unreasonable premise that the parties would enter into 680 additional transactions, when the Parties had agreed to extend the transaction parameters in the past, the calculation is unreasonable.

The Navarro Fee Opinion in the amount of $4,769,350 is based on the same premise that the parties would complete 680 additional transactions for additional uses of the same Subject Images. In addition, this calculation relies on Navarro's desired fee amounts to calculate the fee for each Alleged Misuse. This calculation is unreasonable for the same reasons the Market Opinion is unreasonable, and also unsupported and speculative as the fees or rates submitted by Navarro are simply her asking price, which Navarro hypothesized about many years after the original transactions and the initiation of litigation. This damages approach is equivalent to asking the claimant what they would want as a damages award. An equally unsupported and unreasonable approach would be to ask P&G what award it would like to pay.

The Fee Differential Opinion in an amount between $789,372 and $4,040,670 is based on the amount P&G paid to the models in a settlement. Comparing the settlement payments to the amount Sedlik claims the models were paid in the Seven Transactions, the Sedlik Report applies the ratio of settlement payments to actual payments to calculate the amount Navarro would receive in a similar settlement.

The Sedlik Report provides no citations for the fees originally paid to the models. The documents available regarding the Seven Transaction do not support the number used in the Sedlik Report. Thus, this calculation lacks support and is speculative. Further, applying numbers from a legal settlement is not indicative of a fair market value price or transaction between willing buyer and willing seller. In a settlement, the buyer is compelled, and the settlement may reflect factors



other than the value of the property(ies) involved. For these reasons this calculation is not useful as a reasonable indication of damages.

The Fraud Opinion in the amount of $7,388,000 rests entirely on Navarro's hypothetical price for a transaction format that she and P&G have never used. The Sedlik Report uses a figure of $624,375 as the price at which Navarro would sell the photo copyrights to P&G. This price is based on Mr. Sedlik's interviews with Ms. Navarro and lacks any further support. The calculation implies Navarro would be a willing seller of the photo copyrights at a price substantially greater than at which she has sold broad usage of her photos per the Other Projects. It is unreasonable to assume she would drastically increase the price for a repeat client to whom she has sold work to for many years. According to the Sedlik report, Navarro has identified usages beyond the parameters stated in her invoices in the past,[21] but never sought or received a "past-due" payment in an amount near $600,000.

Further, $624,375 is an amount greater than the $104,500 Navarro willingly accepted for all of the Seven Transactions, and an amount greater than the amounts Navarro accepted for global or unlimited usage as indicated in many of the Other Projects. Therefore, this calculation is unreasonable and would result in a windfall damages award.

The Additional Uses Opinion in the amount of $10,759,320 is based on a fee of $684 multiplied by over 3,000 alleged misuse instances, as identified by the Plaintiff, multiplied by a five-year Term. I understand, the over 3,000 instances have not been verified as actual misuses of the Subject Images and appears to be based on speculation and unreasonable assumptions. Assuming Plaintiff can establish that this subset of the Alleged Misuses is an actual misuse or breach of agreement, the damages award needs to reflect reasonable compensation for the actual misuse. Based on prior transactions between Navarro and P&G/Agents, the usage fee for a broad or unlimited Scope ranges from $500 to $67,500.[22] This calculation's use of 5 years as a multiplier is neither supported by the typical duration of Term agreed by Navarro and P&G, nor the actual periods of Alleged Misuse.[23] Thus this calculation is both unreasonable and unsupported, and therefore not useful as a reasonable indication of a damages award in this Case.

The Additional Uses Opinion is a theory of damages that claims P&G was specifically restricted from using pictures of the product packages in advertisements for the products. P&G and Navarro negotiated a usage fee for use of the Subject Images on product packaging. For this opinion, Plaintiff claims a picture of the same package is beyond the allowed Transaction Parameters.

In my professional experience I have never encountered a situation where the seller did not allow the buyer to use a picture of the packaging in advertisements. Typically, consumer products are marketed using advertisements that feature pictures of the product and product package. It appears unreasonable for Navarro to claim a picture of the package is beyond the permitted Scope. As a matter of fact, Navarro's own email correspondence indicates: "Everyone is usually agreeable to the box appearing as an unfettered shot in advertising, but the image must be on

---

[21] Sedlik Report, pages 44 - 46
[22] See Schedule 4
[23] See Schedule 5



pack."[24] It seems unreasonable to claim P&G would not be allowed a picture of the package in their advertisements.

Furthermore, it is my understanding Navarro is claiming the profits of other products that did not use the Subject Images in their packaging, but rather, were advertised alongside coupons (including P&G circulars called Brandsavers) for the Olay products that did display the Subject Images (referred to in the Complaint as the "Additional Products"). The Additional Products do not display any of the Subject Images. Likewise, in my professional experience, I have never encountered a situation where a willing buyer would need to negotiate rights to advertise a product next to other product offerings. It is particularly unreasonable that Navarro would demand the profits of the Additional Products, as this type of usage would not require a license in the first instance.

Finally, Navarro has also claimed damages related to third-party use of Olay products displaying the Subject Images. The Sedlik Report cites, for example, third-party retailers displaying the Olay products for sale online and bloggers reviewing the Olay products at issue in this Case. The Sedlik Report does not verify P&G's control or supervision over each of the third-party usages that are included within the damages calculation.

Even if the Sedlik Report could provide verification of P&G's control or supervision over each of these usages, it is my understanding this kind of display and promotion on the Internet would fall within reasonable expectations for advertising the Olay products as one of P&G's marketing outlets.[25] Therefore, per Navarro's own admission that images may appear on the packages in advertising, and P&G's common marketing practices, Navarro should not be entitled to any damages related to these usages.

The Sedlik Report has not provided any evidence or transaction examples that would indicate such advertising was explicitly prohibited. It is the Plaintiff's burden to provide support for their claims and allegations. As the Sedlik Report does not provide this support, the Plaintiff has not provided any evidence indicating this type of advertising was prohibited by Navarro or is prohibited as a common industry practice. Without any proof, this type of promotional activity was prohibited by Navarro, or is prohibited as standard industry practice, this claim for damages remains unsupported and unreasonable.

In summary, none of the Sedlik Damages Opinions can be considered as reasonable indications of a damages award in this Case.

## Conclusions

After reviewing the documentation listed at Exhibit A and performing research and analysis supported by my experience in intangible asset valuation and damages calculations, I arrived at the following opinions in this Case. The bases for these opinions are explained in the body of this report.

---

[24] Exhibit 11, P&GNavarro-000359, Email from Annette Navarro to Bridget Quinn dated February 26, 2014
[25] Deposition Transcript of Eric Gruen: 216:4-13



(1) Damages awards must be reasonable and should not provide a windfall to the Plaintiff;

(2) P&G and Navarro would have been willing to transact in an amount of $168,967 total for the Alleged Misuse;

(3) None of the Sedlik Damages Opinions can be considered as reasonable indications of a damages award in this Case as the Sedlik Damages Opinions elect to ignore the parties actual transactions while proposing windfall damages awards that are speculative and hypothetical and are not sounded in the facts of this Case;

(4) The Invoices inconsistently use undefined terms and do not meet licensing standards;

(5) Navarro is not entitled to any damages related to the Additional Products, as a willing seller and buyer would not negotiate for rights to advertise a product next to other product offerings; and

(6) Navarro is not entitled to any damages related to advertising the Olay products upon which the Subject Images appear (that is, showing the product packaging on which the Subject Images appear in advertising for those products), as a willing seller and buyer would not need to include limitations on advertising of products within an agreement of this type. It would be understood by both the seller and buyer that a license to place the Subject Images on product packaging allowed the buyer, P&G, to display the product packaging bearing the Subject Images in advertising these same products.

I reserve the right to respond to opinions and issues raised by any opposing experts. I also reserve the right to use demonstratives and other exhibits to present the opinions expressed in this report and/or any supplemental, amended and/or rebuttal reports.

Submitted by:

Doug Bania
Principal
Nevium LLC



## Exhibit A

**Documents Relied Upon**

Fifth Amended Complaint dated February 14, 2020

Limited Rebuttal Report to the Preliminary Expert Report of Professor Jeffrey Sedlik, prepared by Ellen Boughn, dated February 18, 2020

P&G's Insight Reports and P&GNavarro-12060:  data indicating usage dates and product level sales for the Projects

Documents related to the Seven Transactions, Exhibits 54 through 61

Documents related to the Other Projects

Business and Intellectual Property Damages, NACVA webinar slides, 2020

The Sedlik Reports

- Preliminary Expert Report of Professor Jeffrey Sedlik dated January 14, 2020
- Preliminary Expert Report of Prof Jeffrey Sedlik (Corrected) dated February 5, 2020
- Rebuttal Expert Report of Professor Jeffrey Sedlik dated March 31, 2020

Deposition Testimony Transcripts

- Annette Navarro McCall, July 9-10, 2019
- Eric Gruen, August 6, 2019



## Exhibit B

**Qualifications for Doug Bania**

Doug Bania is a founding principal of Nevium Intellectual Property Consultants. Nevium is an intellectual property consulting firm specializing in developing IP strategies, IP valuation and monetization of IP as well as providing expert testimony related to IP damages and licensing customs and practices.

Mr. Bania has been the named expert for approximately 70 cases, deposed 15 times and has provided mediation testimony 3 times and trial testimony 5 times.

Mr. Bania is a Certified Licensing Professional (CLP), a Google Analytics Certified Individual (GAIQ) and is a past committee member (2016 - 2019) for the International Trademark Association (INTA) Internet Committee and the ICANN Compliance and Domain Name Industry Subcommittee, a current member of the INTA Right of Publicity committee and the American Bar Association (ABA), Copyright & Social Media Committee.

Mr. Bania specializes in analyses for copyright, trade dress, trade secrets and trademark infringement, publicity rights, social media and Internet infringement, defamation, marketing strategy analyses, royalty rate determinations and other intangible assets. Mr. Bania also provides valuation and monetization strategies for trademarks, trade secrets, publicity rights, domain names, Internet and social media assets, brands, copyrights and other intangible assets for financial reporting, bankruptcy, and transactional due diligence.

## **Expert Witness History**

Atari Interactive, Inc. v. OoShirts, Inc., USDC for the Northern District of California San Francisco Division; Case No. 3:19-cv-00264-JST. **Trademark Damages for apparel**, Expert Report, 2020.

Jane Doe vs. Walgreen Co., 11th Judicial Circuit in and for Miami Dade County, Florida. **Right of Publicity, Social Media Investigation**, Expert Consulting, 2020

Wiseau Studio, LLC and Tommy Wiseau d.b.a. Wiseau-Films and Richard Harper, Fernando Forero McGrath, Martin Racicot d.b.a. Rockhaven Pictures, Room Full of Spoons Inc., Parktown Studios Inc., Richard Stewart Towns, Ontario Superior Court of Justice, Court File No. CV-17-577020. **Copyright Damages for documentary film**, Expert Report, Trial Testimony, 2020

Nikki Giavasis; Taylor Giavasis and Josephine Robertson v. Star Returns, LLC, Superior Court of the State of California County of Los Angeles; Case No. BC628277. **Social Media and Right of Publicity Damages**, Expert Consulting, 2019

Adam Sandoval and Ashley Watson v. The Parking Spot Irving, LLC, ABM Aviation Incorporated, Derrick Eugene White and Judy Ann Sanders Miles, District Court of Dallas County, Texas, Cause No. DC-17-17314. **Social Media and Right of Publicity Damages**, Expert Consulting, 2019

Zeetogroup, LLC; Tibrio, LLC v. Nicholas Fiorentino; Sabiha Tudesco; Internet Things, LLC; Simply Sweeps, LLC; Crediready, LLC; Two Minute Media Topics, LLC, United States District Court

Southern District of California; Case No. 19CV0458. **Website comparison and html investigation**, Expert Report, 2019

Move Press, LLC v. Peloton Interactive, Inc. USDC Central District of California, Western Division, Case No. 2:18-cv-1686. **Trademark Damages**, Expert Consulting, 2019

Stockdale Investment Group, Inc. v. Stockdale Capital Partners LLC, et. al, Expert report and Deposition Testimony regarding **Google Search Results**; Case 4:18-cv-02949, 2019

Chad Marlow v. Business Financial Services, Inc. and Adquadrant, Inc., Superior Court of the State of California, County of Orange; Case No. 30-2017-00923885-CU-NP-CJC. **Right of Publicity Damages**, Expert Consulting, 2019

Merck & Co., Inc. and Merck Sharp & Dohme Corp. v. Merck KGAA, USDC District of New Jersey; Case No. 16-cv-00266. **Google Ads Investigation**, Expert Report, Deposition, 2019.

Platinum Logistics WY, Inc. vs. Platinum Cargo Logistics, Inc. DBA Platinum Cargo; et al., USDC Southern District of California; Case No. 13-cv-1819. **Trademark Damages**, Expert Report, 2019.

Thelonious Sphere Monk, Jr. as Administrator of and on behalf of the Estate of Thelonious Sphere Monk vs. North Coast Brewing Co., Inc., USDC Northern District of California; Case No. 17-cv-05015. **Trademark and Right of Publicity Damages**, Expert Report, Deposition, 2018.

GOLO, LLC v. Zoco Productions; Mehmet Oz, M.D.; and Keri Glassman, USDC for the Eastern District of Pennsylvania; Case No. 1:17-cv-08461-KBF. **Unfair Competition and False Advertising**, Expert Report, 2018.

Lauren Mountain v. Mehron, Inc.; Martin Melik; Michael Costello and Stephanie Costello, USDC Central District of California Western Division; Case No. 2:18-cv-00080-JAK-MRW. **Copyright Damages**, Expert Consulting, 2018

Big League Analysis, LLC vs. The Office of the Commissioner of Baseball, The United States Baseball Federation, Inc., and Noah Garden; Supreme Court of the State of New York County of New York; Case No. 152702/2017. **Website, SEO Analysis, Internet Impressions, Visits and Damages**, Expert Report, Mediation Testimony, 2018

PS1, Inc., vs. TTL Automotive Enterprises, Inc., American Arbitration Association, Case No.: 01-17-0005-3284. **Trade Dress Investigation**, Expert report, 2018

North Carolina, Craven County, Jones County v. Beer Army, LLC, Dustin J. Canestorp, Beer Army Productions, LLC, and Ribeyes Steak House of New Bern 2, LLC and Bad Boy Foods, LLC. The General Court of Justice Superior Court Division; File No.: 15-CVS-1236. **Trademark Damages**, Expert report, 2018

Leandro Sorice vs. Trendy Butler, Inc. and Ali Najafian; Superior Court for the State of California County of Los Angeles; Case No. BC635770. **Copyright Damages**, Expert report, 2018

Colonel David Randolph Scott vs. Citizen Watch Company of America, Inc. (successor to Bulova Corporation); Sterling Jewelers, Inc., dba Kay Jewelers; USDC Northern District of California San Jose Division; Case No. 17-cv-00436-NC. **Right of Publicity**, Expert report, Deposition, 2018



Ghostbed, Inc.; and Werner Media Partners, LLC d/b/a/ Nature's Sleep, LLC v. Casper Sleep, Inc.; Philip Krim; Red Antler, LLC; and ICS Inc.; Case No. 0:15-cv-62571. **Google Ads, SEO Analysis, Internet Website Traffic Investigation**, Expert Reports, Deposition, 2018

Heron Development Corporation vs. Vacation Tours, Inc. d/b/a Vacation Store of Miami, Media Insight Group, Inc., d/b/a Media Insight Group, Rosanna M. Mendez and George A. Alvarez; USDC Southern District of Florida Miami Division; Case No. 1:16-cv-20683-Moreno/O'Sullivan. **Website, SEO Analysis, Internet Impressions, Visits and Damages**, Expert Report, 2017

Entrepreneur Media, Inc. v. Scott Smith; Domains by Proxy, LLC; GoDaddy.com, LLC and Karen Mix; Case No. CGC 13 530730. **Domain Name Value**, Expert Report, 2017

Jukin Media, Inc. v. QWorldstar, Inc. d/b/a Worldstar, Worldstar Hip Hop, Worldstar Candy; Case No. 2:16-cv-6800-JFW; USDC Central District of California. **Copyright & Trademark Damages**, Expert Report, 2017

Aardwolf Industries, LLC v. Abaco Machines USA, Inc. Ausavina Co. LTD, et. al.; Case No. 2:16-cv-01968-GW-JEM; Central District of California. **Domain Name and SEO Analysis Investigation**, Expert Report & Deposition, 2017

Winston Smith v. Chapter 4 Corp., "Supreme"; Blackrock Creative Management Company and DEAD KENNEDYS; USDC Central District of California, Case No. 2:16-cv-03910-GW-AS. **Copyright Apportionment Damages**, Expert Report & Deposition, 2017.

Andre Khazraei vs. Christopher Brown, CBE Merchandising LLC, CBE Apparel LLC, Konfuzed LLC, Maxima Operating X LLC; USDC Central District of California, Case No. 2:16-cv-02341 SJO (JCx). **Trademark, Licensing & Social Media Analysis**, Expert Report & Mediation Testimony, 2017

IDX System Technology, Inc. vs. Timothy Arasheben dba Cinoflex; TM Camera Solutions, LLC; Superior Court of the State of California for the County of Los Angeles, Case No. BC610537. **Defamation Damages**, Expert Consulting, 2017

Uncommon, LLC vs. Spigen, Inc.; USDC Northern District of Illinois Eastern Division, Case No. 15-cv-10897. **Trademark Damages, Website Analysis**, Expert Report & deposition, 2016

The Julia Child Foundation for Gastronomy and the Culinary Arts v. Airbnb, Inc., Superior Court of the State of California for the County of Santa Barbara, Case No. 16CV02626. **Right of Publicity & SEO Analysis**, Expert Report & Mediation Testimony, 2016

Pines International, Inc. v. Suja Life, LLC, USDC Southern District of California, Case No. 3:16-cv-00985-GPC-WVG. **Trademark Damages**, Settlement Brief Testimony, 2016

Unicolors, Inc. v. Kohl's Department Stores, Inc.; Fashion Life Inc.; Jes Apparel, L.L.C., USDC Central District of California, Case No. 2:16-cv-00393-RGK-SS. **Copyright Damages**, Expert Report, 2016

Timed Out, Inc. vs. Crazy Horse, Inc., Superior Court of the State of California, County of San Francisco – Civic Center Courthouse, Case No. CGC-15-547904. **Right of Publicity & SEO Analysis**, Expert Report, 2016

Adobe Systems Incorporated v. A&S Electronics, Inc., dba Trustprice; Alan Z. Lin; et. al., USDC Northern District of California Oakland Courthouse, Case No. 4:15-cv-02288-SBA. **Trademark & Copyright Damages**, Expert Report, 2016

Ronald Greenspan, D.D.S. v. Mary Polomares, Randolph F. Alexander, D.D.S., M.S. and Leslie Alexander, Superior Court of the State of California County of San Diego – Central Division, Case No. 37-2014-00029393-CU-DF-CTL. **Defamation & SEO Analysis**, Expert Report & Deposition, 2016

Nina Pham v. Texas Health Resources, Inc., District Court of Dallas County, Texas 68th Judicial District, Cause No. DC-15-02252. **Right of Publicity Damages & SEO Analysis**, Expert Report & Deposition, 2016

Christopher Gordon v. Drape Creative, Inc.; Papyrus-Recycled Greetings, Inc. USDC Central District of California, Case No. CV 15-04905 JFW (PLAx). **Trademark Damages,** Expert Report, 2016

Adobe Systems Incorporated v. David Far, aka Davit Far, doing business as AllMacDirect, USDC Central District of California, Case No. CV15-06192 AB AJW. **Trademark & Copyright Damages**, Expert Report, Deposition, 2016

Mark Spitz v. New Vitality LLC, NAC Marketing Company, Superior Court of California County of Los Angeles, Case No. SC121977. **Right of Publicity Damages & SEO Analysis**, Expert Consulting, 2016

Global Tobacco, LLC vs. R.K. Co., dba Cigar Cartel, USDC Central District of California Western Division, Case No. 2:15-CV-05227. **Trade Dress Damages**, Expert Report, 2016

Ryoo Dental, Inc. v. Thomas D. Han DMD, dba Beach Dental Care, USDC Central District of California, Southern Division, Case No. 8:15-cv-00308-JLS-RNB. **Copyright Damages & SEO Analysis**, Expert Report, 2016

Joel Zimmerman p/k/a "deadmau5" and Ronica Holdings Limited vs. Play Records, Inc., Ontario Superior Court of Justice, Court file No. CV-15-539129. **Trademark & Copyright Damages**, Expert consulting, 2016.

Reese Witherspoon v. Sears Holdings Management and Sears Brands LLC, et al., Case No. SC120883, Superior Court of the State of California, County of Los Angeles, West District. **Right of Publicity Damages & SEO Analysis**, Expert Report, 2016

Reese Witherspoon v. LNT Acquisition LLC, et al., Case No. SC120883, Superior Court of the State of California, County of Los Angeles, West District. **Right of Publicity Damages**, Expert Report, 2016

Pharrell Williams, et al. v. Bridgeport Music, Inc., et al., Case No. CV13-06004-JAK (AGRx), USDC, Central District of California, Western Division. **Copyright Damages & Social Media Analysis**, Expert Report, Deposition and **Trial Testimony**, 2015



Cynara Busch v. <u>Jakov Dulcich and Sons, LLC, Sunlight International Sales, Inc.</u>, Case No. CIV 1404125, Superior Court of the State of California, County of Marin, **Right of Publicity Damages**, Expert Consulting, 2015

Markwins Beauty Products, Inc. v. <u>Krystal Ball Productions, Inc. and Fergie Duhamel</u>, Arbitration, Pasadena, CA. **Right of Publicity Damages**, Expert Report, 2015

Stone Creek, Inc. vs. <u>Omnia Italian Design, Inc</u>., Case No. CV-13-00688-PHX-DLR, USDC, District of Arizona, **Trademark Damages & SEO Analysis**, Expert Report, Deposition and **Trial Testimony**, 2015

Unicolors, Inc. v<u>. Urban Outfitters, Inc., dba Free People; Century 21 Department Stores,</u> LLC, Case No. CV14-1029 SJO (VBK) USDC, Central District of California, **Copyright Damages**, Expert Report and **Trial Testimony**, 2015

<u>Matthew C. Morin</u> v. Cindy Marabito, Case No. RG14747850, California Superior Court, Alameda County. **Defamation Damages**, Expert Consulting, 2015

Richard Guthrie v. <u>Hobby Lobby Stores, Inc.</u>, Case No. 1:15-cv-00195-WDQ, United States District Court, District of Maryland. **Copyright Damages**, Expert Consulting, 2015

Scott Ehredt vs. <u>Medieval Knights, LLC</u>, Case No. BC530275, Superior Court for the State of California, County of Los Angeles, **Right of Publicity Damages**, Expert Report, 2015

Radix Textile, Inc. v. <u>Anthropologie, Inc</u>., Case No. CV14-04272-BRO (EX), USDC, Central District of California, **Copyright Damages**, Expert Report, 2015

Unicolors, Inc. v. <u>Urban Outfitters, Inc., dba, Free People</u>, Case No. 2:14-cv-03217-R-AGR, USDC, Central District of California, **Copyright Damages**, Expert Report, 2014

<u>The Pond Guy, Inc. et al</u>. v. Aquascape Designs, Inc., et al., Case No. 2:13-cv-13229-NGE-DRG, USDC, Eastern District of Michigan. **Trademark & SEO Analysis Investigation**, Expert Report, Deposition and **Trial Testimony** 2014

<u>Bruce L. Lamb, dba Lamb Productions U-Tile It Videos</u> v. Floor and Decor Outlets of America, Inc., Case No. 3:13-cv-00390-JAH-BLM, USDC, Southern District of California. **Copyright Damages**, Expert Consulting, 2014

Reese Witherspoon v. <u>Marketing Advantages International, Inc</u>., et al., Case No. SC120883, Superior Court of the State of California, County of Los Angeles, West District. **Right of Publicity Damages & SEO Analysis**, Expert Report, 2014

Jason Olive vs. <u>General Nutrition Centers, Inc</u>., Case No. BC482686, Superior Court for the State of California, County of Los Angeles. **Right of Publicity Damages**; Expert Consulting, 2014

Amini Innovation Corporation vs. <u>McFerran Home Furnishings, Inc.</u>, Case No. CV13-06496-RSWL(SSx), USDC, Central District of California. **Trade Dress and Copyright Damages**, Expert Report, 2014

<u>One Beacon Insurance Company</u> v. National Casualty Company, Case No. CV 06342-550-JC, USDC, Central District of California. **Copyright Damages**; Expert Opinion, 2014



Star Fabrics, Inc. vs. Joyce Leslie, Inc., N.Y. Invasion Inc., Myletex International, Inc., Case No. 13-CV-02771-CAS, USDC, Central District of California – Western Division. **Copyright Damages**; Expert Report, 2014

Cengage Learning, Inc., et al., United States Bankruptcy Court Eastern District of New York. **Copyright Damages**; Expert Opinion and Rebuttal Opinion regarding valuation of higher education textbook copyrights on behalf of the Second Lien Indenture Trustee in Chapter 11 bankruptcy cases, 2014

The Julia Child Foundation for Gastronomy and the Culinary Arts v. DGWB Advertising and Communications, Case No. 8:12-CV-1402SJO, USDC, Central District of California. **Right of Publicity Damages & SEO Analysis**; Expert Report and Deposition, 2013

United Fabrics International, Inc. vs. G-III Apparel Group, LTD; dba Wilsons Leather; Mcklein Company, LLC, USDC, Central District of California. **Copyright Damages**; Expert Report, 2013

David Wolfe, v. Sunfood, LLC, et al.; Case No. 37-2011-00066729-CU-CO-CTL, Superior Court of the State of California for the County of San Diego. **Right of Publicity Damages**; Deposition, 2013

Brady Industries, LLC v. Waxie's Enterprises, Inc., 2:12-cv-00777-PMP-VCF, USDC, District of Nevada. **Copyright Damages and SEO Analysis**; Expert Report and Deposition, 2013

Rawlings Sporting Goods Company, Inc., v. Wilson Sporting Goods, 4:12-cv-01204-01204, USDC, Eastern District of Missouri. **Trademark Damages**; Expert Opinion, 2013

Rebel Media, No Good Entertainment v. Jay Vir, No Good Digital; CV12-04602-R-JC, USDC, Central District of California, Western Division. **Trademark Damages & YouTube SEO Analysis Investigation**; Expert Opinion, 2013

Marona Photography, Inc. v. Los Altos Boots, Wild West Boots. 12-CV-00163-WYD-MJW, USDC, District of Colorado. **Copyright Damages**; Expert Report, 2012

Ricky D. Ross v. William Leonard Roberts, II; CV10-4528-PA (RZx), The USDC, Central District of California, Western Division – Los Angeles. **Right of Publicity Damages**; Rebuttal Opinion, 2012

L.A. Printex Industries, Inc. v. Macy's Retail Holdings, Inc., et al.; CV09-3978 DSF (AJWx), USDC, Central District of California. **Copyright Damages;** Expert Report, 2011

John Frederick Dryer, et al. v. National Football League; 0:09-cv-02182-PAM-AJB, USDC, District of Minnesota. **Right of Publicity Damages**; Expert Opinion, 2009

## EDUCATION & CERTIFICATION

**Google Analytics Individual Qualification** (GAIQ); 2017

**Certified Licensing Professional** (CLP); 2011

**San Diego State University**; Masters, Television, Film, New Media Production; 2000

**San Francisco State University**; Bachelor of Arts, Cinema; 1997



## EMPLOYMENT EXPERIENCE

**Nevium Intellectual Property Solutions;** San Diego, CA; 2012 – present
Founding Principal: Provide IP strategy, licensing, valuation and expert services

**CONSOR Intellectual Asset Management;** La Jolla, CA; 2002 – 2012
Principal: Managed client & firm relations and provided expert witness services

**Independent Film Producer;** Los Angeles, CA; 2000 – 2003
Producer for two award winning short films: Boundaries and Passing Through.

## ASSOCIATIONS & MEMBERSHIPS

Licensing Executives Society (LES)

International Trademark Association (INTA)

INTA Right of Publicity Committee (2020 -2021 term)

INTA Internet Committee (2016 -2019 terms)

ICANN Compliance and Domain Name Industry Subcommittee (2016 -2019 terms)

American Bar Association (ABA), Section of Intellectual Property Law

American Bar Association (ABA), Copyright & Social Media Committee

## PUBLICATIONS & PRESENTATIONS

"What to Look for When Valuing a Cannabis Business" Cannabis Business Times, 2019

"Internet Tools for Intellectual Property Analysis" presented as a webinar for the Certified Patent Valuation Analyst certification, 2019

"Investigating Online IP Infringement and Calculating Damages for Internet Related Disputes" presented at the University of San Diego School of Law, 2019

"Nevium: Influencer Marketing Meets Intellectual Property" Forbes, 2019

"Calculating the Value of Influencer Marketing and Impact of Infringement" Attorney at Law Magazine, 2019

"Building Cannabis IP Includes Both Your Brand and Your Technology" Entrepreneur, 2019

"Can Trademark Infringement Be a Victimless Crime? The Stone Creek v. Omnia Case" International Journal of Law and Public Administration, Redfame Publishing Inc., 2018

"Apportionment Models: Valuing the Contribution of Intangible Property and Assets in Disputes" A Special Series Webinar on New Economic Damages Guide. Business Valuation Resources (BVR), 2018

"Using Internet Analytic Tools for Valuation and Damages Calculations in Internet IP Infringement and Defamation Cases" published as a chapter in The Comprehensive Guide to Economic Damages book by Business Valuation Resources (BVR), 2018



"Profit Apportionment in Intellectual Property Infringement Damages Calculations" published as a chapter in The Comprehensive Guide to Economic Damages book by Business Valuation Resources (BVR), 2018

The Florida Bar Business Law Section, 9th Annual Intellectual Property Symposium. Panel on the Blurred Lines trial – Speaking as the copyright damages and apportionment expert. St. Pete Beach, FL, April 2018

"Proving Infringement in Online Trademark Disputes" Luncheon Table Topic at the 140th Annual International Trademark Association (INTA) Meeting, Seattle, WA May 2018

"Building Brands and Maximizing Value" Workshop Session presented at the Licensing Executive Society (LES) 2017 Spring Meeting entitled Stronger Economies Through Licensing, Washington, DC, May 2017

"Blurred Lines – Music Industry Damage Calculations" Panel Session presented at SXSW, Austin, TX, March 2017

"Non-Traditional Marks and the Traditional Practice" Luncheon Table Topic for the International Trademark Association (INTA), San Diego, CA, February 2017

The Use of Analytic Tools for Valuation and Damages Calculations in Internet IP Infringement and Defamation Cases" published as a chapter in Calculating Economic Damages in Intellectual Property Infringement Cases book by Business Valuation Resources (BVR), October 2016

"Misuses of IP Over the Internet: Searching for Value." Business Valuation Resources (BVR) Special Series Webinar: The Comprehensive Guide to Economic Damages, July 2016

"The Use of Analytic Tools for Valuation and Damages Calculations in Internet IP Infringement and Defamation Cases" published as a chapter in The Comprehensive Guide to Lost Profits and Other Commercial Damages book by Business Valuation Resources (BVR), May 2016

"Brand Valuation and Techniques" presented at the Conference on Brand Valuation; University of New Hampshire School of Law and The Franklin Pierce Center for Intellectual Property. Concord, New Hampshire, April 2016

"Valuation and Damages Calculations in Cases Involving Internet IP Infringement and Defamation." NACVA Webinar Series, April 2016

"Brand Due Diligence: Tools and Techniques for Supporting Successful Brand Driven Transactions" Luncheon Table Topic at the International Trademark Association (INTA) Annual Meeting, Orlando, FL, May 2016

"Employing Internet and Social Media Analytical Tools in Valuation and Damages Calculations" Featured Presenter at the NACVA and the CTI's 2016 Annual Conference. San Diego, CA, June 2016

"Apportioning Copyright Damages: The Case of Blurred Lines" published in the Journal of Intellectual Property Law and Practice, Vol. 10, No. 12, November 2015

"Intellectual Property Valuation: Methodologies and Case Studies" presented at the American Society of Appraisers (ASA), San Diego Chapter monthly meeting, San Diego, 2015



"Blurred Lines or Fuzzy Math: How Did They Come Up with $7.3 Million or was it $5.3 Million? – Damage Calculations in the Music Industry, New York State Bar – Entertainment Business Law Seminar in Association with CMJ Music Marathon, New York, 2015

"Internet Analytic Tools for Brand Valuation, Damages and Defamation" Luncheon Table Topic at the International Trademark Association (INTA) 2015 Annual Meeting, San Diego, CA

"Valuation and Damages Calculations in Cases Involving Internet IP Infringement and Defamation" presented at the NACVA and the CTI's 2015 Annual Conference, June 2015

"How to Calculate Damages for Internet and Social Media Infringement" presented at the 36th Annual BAA/PMA Marketing Law Conference, 2014

"Calculating Damages from Internet IP Infringement and Defamation" presented at the Internet Law Leadership Summit, 2014

"Estimating and Managing the Economic Impact of Brand Disparagement" published in the World Trademark Review, 2014

"SFIA Legal Task Force Series: Intellectual Property Litigation & Valuation" presented to the Sports & Fitness Industry Association members, 2013

"Copyright Valuation and Damages: Different Tools for Different Challenges" presented to The State Bar of California, Intellectual Property Law Section, 2013

"Key Concepts in Intellectual Property Valuation" presented to various law firms, 2012

"Intellectual Property Valuation," presented to various law firms, 2011

"Valuing Your Brand for Sale or Securitization", presented to LIMA members, 2011

"Valuing the Intangible: Where to Start? The Full Family of Intellectual Property and Other Intangibles," CLE presented to various law firms, 2010

"Valuation, Licensing, Damages and Expert Witnesses," CLE presented to various law firms, 2009

"Brand Leverage and Valuation" presented to various corporations, 2008

"Deceptive Product Endorsement: Unauthorized Use of a Celebrity's Name and Likeness," published in Total Licensing Magazine, 2006

Nevium Intellectual Property Consultants

## Complaint Claims

*Schedule 1*

Source: Fifth Amended Complaint

| Claimed Misuse by Project | | |
|---|---|---|
| *Project* | *Claimed Misuse* | *Complaint Page* |
| **Pro X** | Navarro claims P&G: 1) used Image 1 after the invoice terms expired; 2) used Image 1 in Latin America and China when the invoice stated use was North America only; 3) used Image 1 for advertising in several countries when the invoice stated use was for packaging | 8 |
| **Regenerist** | Navarro claims P&G: 1) used Image 1 without a license on the packaging of Regenerist in North America and other countries; 2) customers were using Image 1 after the agreement expired; 3) used Image 1 for advertising | 10-11 |
| **Facial Hair Removal (Teal)** | Navarro claims P&G: 1) used Images 2-6 after the invoice terms expired; 2) customers used Images 2-6 after the invoice terms expired; 3) used Images 2-6 for advertising and audio-visual commercials when the invoices stated use was for packaging, internet, and brochures | 15-17 |
| **Facial Hair Removal (Purple)** | Navarro claims P&G: 1) used Images 7-10 after the invoice terms expired; 2) customers used Images 7-10 after the invoice terms expired; 3) used Images 7-10 for advertising and audio-visual commercials when the invoice stated use was for packaging, internet, and brochures | 19-20 |
| **Daily Facials** | Navarro claims P&G: 1) used Images 11-12 after the invoice terms expired; 2) customers used Images 11-12 after the invoice terms expired; 3) P&G and customers used Images 11-12 in connection with 3 new boxes of Daily Facials; 4) used Images 11-12 for advertising when the invoice stated use was for packaging, internet, and brochures ; 5) used Images 11-12 outside of North America | 25-27 |

Nevium Intellectual Property Consultants
**The Seven Transactions**  *Schedule 2*

**Document Review - The 7 Case Invoices**

| Project | Invoice # | Invoice Date | Photo / Creative Fee | Model Use Fee | Media Usage Fee | Other | Total Amount | Invoice Text: "Description" | Total Includes Charges for: | Invoice does Not mention/include | Other Charges | # of Photos * | Term (years) | Territory / Region | Scope: Media Licensed | Source Doc ID / Bates | Exhibit # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pro X | 2010341 | 21-Apr-10 | 5,000 | - | 18,000 | 9,701 | 32,701 | 3 Years North America Usage for Packaging Only | 1 Day Shoot (Creative), Usage, Expenses, Model Travel, Digital Fee | Model Fees | Creative (1 Day), Make-up, Stylist, photo asst, casting, model, food, digital fee | 1 | 3 | North America | Packaging Only | LPK-000097 | Ex 55 (pdf page 13) |
| Pro X | 991034 | 6-Jan-11 | - | - | 5,000 | - | 5,000 | Usage rights North America Only - Instore usage | Photographer usage fee | Additional creative or Model use | Per P&Gnavarro-000057, $5,000 fee MAY be payment to the Model, Leah Notebaert | 1 | 1 | North America Only (including Canada & Puerto Rico) | In-store display | P&Gnavarro-000058 | Ex 56 (Pdf page 25) |
| Facial Hair Removal (Teal) | 8345 | 20-Oct-10 | 6,000 | - | 24,000 | 5,508 | 35,508 | Photographer & model usage: beauty shoot Olay Packaging shots on package and in box brochure and web usage for 3 years. North America, which includes Canada and Puerto Rico. North America only (includes Canada & Puerto Rico | Photographer creative fee, Usage, Casting ($500x2=$1000), Expenses, Digital Fee, Model airfare and hotel | Model Fees | Creative, Casting, Photo Asst, Makeup, Digital Fee, Catering, Misc., Travel | 4 | 3 | North America Only (including Canada & Puerto Rico) | Package, in-pack brochure, internet | P&Gnavarro-000086 | Ex 57 (Pdf page 17) |
| Facial Hair Removal (Teal) | 4119 | 10-Jun-11 | - | - | 18,000 | - | 18,000 | Model Usage. Project: "Model Shoot. Sophia Additional Usage W.E. Usage | Usage Fee (per Project text appears to be fee to model for additional usage) | Creative, expenses, casting, travel, digital fee | Only charge is usage Fee. P&Gnavarro-000101 is $24k invoice for usage of Anita Alan (the Model) | 4 | 3 | Western Europe (WE) for Packaging, Brochure, Internet. Global for PR | Package, Internet, In-Pack Brochure, PR | P&Gnavarro-000102 | Ex 58, PDF page 21 |
| Facial Hair Removal (Teal) | 1110113 | 14-Nov-11 | - | - | 500 | - | 500 | Sophia Usage 11/9/2011 | Project is "Sophia Usage" (email at NAV00002827 states: "Total Cost = $500 (includes photography usage and no additional model fees)" | No other fees or charges | Only charge is $500 usage, no description text | 2 | 0.08 | Canada | Canadian Elle Magazine ad (1 month from 11/3/11-12/3/11) | P&Gnavarro-00002559-60 | Ex 59, PDF page 25 |
| Facial Hair Removal (Purple) | 4203 | 10-Jun-11 | 6,000 | - | 30,000 | 5,895 | 41,895 | 1 Day Photo Shoot in Cincinnati with 1 model for Global Packaging (on/off pack), Internet, Brochure, Global PR Multiple Shots and multiple angles | Photo Fee, Usage, Casting, Expenses, Flight, Hotel, Equipment Rental | Model Fees | Casting, Makeup, photo asst, PA, catering, hotel, flight, equipment rental | 4 | 3 | Global | Package, Internet, PR, Brochure. Usage breakdown = 3 years Global 3x6 = $18k, 3 years Internet $6k, Brochure $3k, PR $3k | P&Gnavarro-000129 | Ex 60, PDF page 34 |
| Daily Facials | 525123 | 25-May-12 | 3,000 | - | 9,000 | 1,750 | 13,750 | 1 Day Photo Shoot in Cincinnati with 1 local model on 3 products 3 years usages North America only. Includes Canada and Puerto Rico. Packaging and Brochure Insert and Internet | Photo Fee, Usage, Casting, Makeup, Assistant | Model Fees | 1 day photo shoot. Photo usage fee is $3k x 3 QTY = $9k | 1 | 3 | North America, Puerto Rico | Package, Internet, PR, Brochure (Internet and Brochure included gratis). Photo Usage fee = 3 x $3000 | P&Gnavarro-000116 | Ex 61, PDF page 38 |
| 7 | | | $20,000 | $0 | $104,500 | $22,853 | $147,353 | | | | | | | | | | |

Nevium Intellectual Property Consultants

**Description of Invoices for the Seven Transactions**                    *Schedule 2a*

| Transaction Descriptions | | | |
|---|---|---|---|
| **Project** | *Transaction Exhibit* | *Transaction Description* | *Image Exhibit* |
| **Pro X** | C1, C2 | Photos for Pro X product to be used on packaging only for 3 years in North America with separate transaction adding 1 year in-store display in North America | Image 1 Exhibit A1 |
| **Facial Hair Removal (Teal)** | C4, C5, C6 | Photos for FHR Teal product to be used on packaging, in-box brochures, and internet in North America for 3 years. Additional 2 transactions allowed the photos to be used in Western Europe for 3 years for packaging, internet, and brochures and also for a Elle Canada magazine publication for 1 month | Images 2-6 Exhibit A2 |
| **Facial Hair Removal (Purple)** | C7 | Photos for FHR Purple product to be used globally on packaging, in brochures, in press release materials, and to display on Internet for 3 years | Images 7-10 Exhibit A3 |
| **Daily Facials** | C8 | Photos for Daily Facials products to be used on packaging, brochure insert and packing on the Internet in North America for 3 years | Images 11-12 Exhibit A4 |

*Transaction Exhibits and Image Exhibits are exhibits to the Fifth Amended Complaint*

Nevium Intellectual Property Consultants
**Review of the Seven Transactions**

## Original Transactions

| Project | Invoice | Term (Years) | Territory | Scope | Photo / Creative | Media Use | Models Fee | Other Charges | Total Amount |
|---|---|---|---|---|---|---|---|---|---|
| | | Agreed Terms Analysis | | | Invoiced Amounts | | | | |
| **ProX** | C1 | 3 | North America | Packaging Only (Narrow) | 5,000 | 18,000 | - | 9,701 | **32,701** |
| **Facial Hair Removal (Teal)** | C4 | 3 | North America | Package, In-Pack Brochure, Internet (Multi-Defined) | 6,000 | 24,000 | - | 5,508 | **35,508** |
| **Facial Hair Removal (Purple)** | C7 | 3 | Global | Package, Internet, PR, Brochure (Multi-Defined) | 6,000 | 30,000 | - | 5,895 | **41,895** |
| **Daily Facials** | C8 | 3 | North America | Package, Internet, Brochure (Multi-Defined) | 3,000 | 9,000 | - | 1,750 | **13,750** |
| | | | | Totals | $20,000 | $81,000 | $0 | $22,853 | $123,853 |

## Additional Usage Transactions

| Project | Invoice | Term (Years) | Territory | Scope | Photo / Creative | Media Use | Models Fee | Other Charges | Total Amount |
|---|---|---|---|---|---|---|---|---|---|
| | | Agreed Terms Analysis | | | Invoiced Amounts | | | | |
| **ProX** | C2 | 1 | North America | In-Store Only (Narrow) | - | 5,000 | - | - | **5,000** |
| **Facial Hair Removal (Teal)** | C5 | 3 | Western Europe | Package, In-Pack Brochure, Internet, PR (Multi-Defined) | - | 18,000 | - | - | **18,000** |
| **Facial Hair Removal (Teal)** | C6 | 1MO | North America | Magazine (Narrow) | - | 500 | - | - | **500** |
| | | | | Totals | $0 | $23,500 | $0 | $0 | $23,500 |

**Scope Terms**

| | |
|---|---|
| **Narrow** | 1-2 uses, narrowly defined.  Ex. "Packaging Only" |
| **Multi-Defined** | Multiple mediums but each medium is defined |
| **Multi - undefined** | Indefinite descriptions of scope |

Nevium Intellectual Property Consultants

## Invoiced Amounts for the Four Projects

*Schedule 2c*

| Invoiced Amount by Project | | | | | | |
|---|---|---|---|---|---|---|
| | | *Total Cost* | | | | |
| | | Photo / Creative | | Model Use | | |
| *Project* | *Invoice* | Fee | Media / Usage | Fee | Other | *Total Amount* |
| **Pro X** | C1, C2 | 5,000 | 23,000 | - | 9,701 | **37,701** |
| **Facial Hair Removal (Teal)** | C4, C5, C6 | 6,000 | 42,500 | - | 5,508 | **54,008** |
| **Facial Hair Removal (Purple)** | C7 | 6,000 | 30,000 | - | 5,895 | **41,895** |
| **Daily Facials** | C8 | 3,000 | 9,000 | - | 1,750 | **13,750** |
| | | **$20,000** | **$104,500** | **$0** | **$22,853** | **$147,353** |

Nevium Intellectual Property Consultants
**The Other Transactions - Description of Documents Reviewed**   *Schedule 3*

**The "Other" Navarro Invoices**

| Project | Party Invoicing | Invoice # (Doc #) | Document Date | Photo / Creative Fee | Models' Fee | Media Use Fee | Other Charges | Total Amount | Charge Components / Descriptions | Media Usage | Photo-graphs | Term (Years) | Territory | Doc ID |
|---------|-----------------|-------------------|---------------|----------------------|-------------|---------------|---------------|--------------|--------------------------------|-------------|--------------|--------------|-----------|--------|
| Always | Annette Navarro Photography | 991049 | 28-Feb-11 | 8,000 | 36,000 | 21,000 | 14,843 | 79,843 | 2 day photo shoot in LA with 10 models. Photo Fee, Usage, Casting, Expenses, Model fee = $3600/Model/day | Unlimited global buyout of all images from shoot for 5 years (Full Buyout) in all print media and internet | NA | 5 | Global | NAV00000664 |
| Always | Annette Navarro Photography | 4216 | 14-Jun-11 | 3,750 | | | 250 | 4,000 | 2 components: Creative Fee; Photo Assistant. Description text: "One day off-figure fashion photo shoot in studio. Rate includes processing of digital files." | Full buyout of usage of all shots | NA | NA | NA | NAV00005207 |
| Always | Annette Navarro Photography | 312124 | 12-Mar-12 | 4,000 | | | | 4,000 | Photo Fee only text states "includes stylist fees and misc. prop costs" (no other invoice components) | 1 day shoot in environment for always usage full buyout | NA | NA | NA | NAV00005100 |
| Biore | Annette Navarro Photography | 51112 | 14-Jun-11 | 16,000 | 3,000 | 24,000 | 12,085 | 55,085 | 2 day shoot in Cincinnati, with 3 models for 3 years global packaging, POP and web | Global POP, Package and web | NA | 3 | Global | NAV00002775 |
| Biore | Annette Navarro Photography | 112201 | 22-Nov-13 | - | - | 20,000 | - | 20,000 | Usage Mask & Cloth $10k x 2 = $20k (no other charge components) | 3 years global packaging on and off pack. Off pack usage for all print material (collateral), internet, advertorial and incidental box on tv and incidental appearance on advertising page and behind the scenes video. Excludes advertising and billboard | NA | 3 | Global | NAV00002819 |
| Crest Other | JM Janice Moses | A20061704 | 2-Jun-06 | | | | 20,006 | 20,006 | Charge labelled "advance against expenses." Digital photography on location of 1 beauty model with 4 family members - winter scene | 1 year instore/POP, FSCI & Internet beginning November 2006-2007 | NA | 1 | NA | NAV00005274 |
| Crest Other | JM Janice Moses | A2005114 | 19-Aug-05 | | | | 11,730 | 11,730 | Charge labelled "Advance against expenses." Crest renewal, 4/c Digital Photography | 12 months North American Internet, In-store display, POP. Usage for Advertising exterior packaging & outdoor signage negotiated separately | NA | 1 | North America | NAV00005275 |
| Crest Other | JM Janice Moses | Est # 2006155 | 15-May-06 | 10,000 | - | 45,000 | 28,450 | 83,450 | Fees includes 2 days photography, 1 year usage. Production charges are all expenses | One year for unlimited print media library: advertising, FSCI, POP, DTC, Internet, Packaging, Billboard for 3 Models. Option for 18 months would change $45k to $67,500 | NA | 1 | NA | NAV00005287 |
| Crest Other | JM Janice Moses | 20061109 | 3-Aug-06 | 10,000 | - | 67,500 | 28,809 | 106,309 | Fees includes 2 days photography, 1 year usage. Production charges are all expenses | 18-month option for unlimited print media library: advertising, FSCI, POP, DTC, Internet, Packaging, Billboard for 3 Models | NA | 1 | NA | NAV00005288 |
| Crest with Scope | Annette Navarro Photography | NA | 14-Apr-08 | | 25,200 | 18,000 | - | 43,200 | Miscellaneous past due usage for shots that were originally taken for Scope and used past usage agreement for in-store and internet | NA | NA | NA | NA | NAV00003512 |
| Crest with Scope | Annette Navarro Photography | NA | 14-Apr-08 | | 25,200 | 18,000 | - | 43,200 | Miscellaneous past due usage for shots that were originally taken for Scope and used past usage agreement for in-store and internet | NA | NA | NA | NA | NAV00000252 |
| Crest with Scope | arc | NA | 22-Apr-08 | | 25,200 | 18,000 | 8,600 | 51,800 | Estimate covers fees associated with purchasing the rights to 4 models from Feb 2007 to Feb 2008. 2 models amended through 3/1/09 | 12 month usage for 1 photo shoot and 24 month usage for another | NA | 1 or 2 | North America | NAV00003525 |
| Crest with Scope | email | NA | 9-May-08 | | 25,200 | 18,000 | 8,600 | 51,800 | Email to generate PO from invoice above | 12 month usage for 1 photo shoot and 24 month usage for another | NA | 1 or 2 | North America | NAV00003533 |

Nevium Intellectual Property Consultants

**The Other Transactions - Description of Documents Reviewed**  *Schedule 3*

| Project | Party Invoicing | Invoice # (Doc #) | Document Date | Photo / Creative Fee | Models' Fee | Media Use Fee | Other Charges | Total Amount | Charge Components / Descriptions | Media Usage | Photo-graphs | Term (Years) | Territory | Doc ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Crest with Scope | arc | NA | 27-Feb-08 | | 20,400 | | 22,800 | **43,200** | Estimate covers fees associated with purchasing the rights to 4 models from Feb 2007 to Feb 2008 | 12 month usage for 2 photo shoot | NA | | North America | NAV00003541 |
| Crest with Scope | email | NA | 25-Mar-08 | | 25,200 | 18,000 | - | **43,200** | Email to generate PO from invoice above | NA | NA | NA | NA | NAV00004235 |
| Crest White Strips | Price Sheet | NA | NA | | | 30,000 | 117,000 | **147,000** | Usage numbers for North America. Photos for unlimited library includes all usage for print media and Internet | 12 months usage with exclusivity bonus for 3 models | NA | 1 | North America | NAV00003157 |
| Crest White Strips | Price Sheet | NA | NA | | | 90,000 | 114,600 | **204,600** | Usage numbers for North America. Photos for unlimited library includes all usage for print media and Internet | 18 months usage with exclusivity bonus for 3 models | NA | 1.5 | North America | NAV00003157 |
| Crest White Strips | Price Sheet | NA | NA | | | 105,000 | 145,600 | **250,600** | Usage numbers for North America. Photos for unlimited library includes all usage for print media and Internet | 24 months usage with exclusivity bonus for 3 models | NA | 2 | North America | NAV00003157 |
| Crest White Strips | arc (Annette McCall dba Annette Navarro Photography LLC) | PO 0470010796 | 14-Mar-08 | | | | 204,600 | **204,600** | Other Miscellaneous, Quantity 1. Project Description: 08 CWS Model Usage Fee | NA | NA | NA | NA | NAV00002739 |
| Crest White Strips | Annette Navarro Photography | 20071247 | 16-Jan-08 | | 42,000 | 30,000 | - | **72,000** | Photographer usage fee: unlimited library includes all usage for print media and Internet | 6 months usage extension for unlimited library North America, includes all print media and Internet. From 3/1/08 to 9/1/08 | 3 | 0.5 | North America | NAV00005266 |
| Crest White Strips | Annette Navarro Photography | 20071248 | 16-Jan-08 | | 72,600 | 60,000 | - | **132,600** | Photographer usage fee: unlimited library includes all usage for print media and Internet | 12 months usage extension for unlimited library North America, includes all print media and internet. From 9/1/08 to 9/1/09 | 3 | 1 | North America | NAV00005267 |
| Crest White Strips | arc | NA - Estimate | 28-Jan-08 | | | | 132,600 | **132,600** | Photographer usage fee: unlimited library includes all usage for print media and Internet | 12 months usage with exclusivity bonus for 3 models | NA | 1 | NA | NA |
| Crest White Strips | arc (Annette McCall dba Annette Navarro Photography LLC) | PO 0470011327 | 20-May-08 | | | | 17,600 | **17,600** | Other Miscellaneous, Quantity 1. Project Description: 08 CWS Model Usage Cost | NA | NA | NA | NA | NAV00002735 |
| Crest White Strips | arc (Annette McCall dba Annette Navarro Photography LLC) | PO 0470011444 | 6-Jun-08 | | | | 25,600 | **25,600** | Other Miscellaneous, Quantity 1. Project Description: 08 CWS Model Usage Cost | NA | NA | NA | NA | NAV00005268 |
| Crest White Strips | Email | NA | 5-Mar-08 | 18,000 | 25,200 | | - | **43,200** | Photographer usage fee | 12 months usage for internet | NA | 1 | NA | NAV00003074 |
| Crest White Strips | Deskey | PO-1121 | 6-Jun-06 | | | | 103,320 | **103,320** | Photographer usage fee | 18 months unlimited print media library: advertising, FSCI, POP, DTC, internet, packaging, billboard for 3 models | NA | 1.5 | NA | NAV00002726 |
| Crest White Strips | Annette Navarro McCall | Inv 8003 / PO 1042 | 17-Mar-06 | | | 30,000 | - | **30,000** | Photographer usage fee | 12 months with 2 models | 2 | 1 | North America | NAV00005284 |
| Crest White Strips | Annette Navarro McCall | Inv 8004 / PO 1045 | 17-Mar-06 | | | 17,500 | - | **17,500** | Photographer usage fee | 6 months for 1st model through February 2017 and 12 months for 2nd 2 model through August 2007 | 2 | 1 | North America | NAV00005285 |
| Definity | PO from LPK to Janice Moses Represents | Job # 32405F | 26-Mar-08 | | | | 62,760 | **62,760** | Job Estimate. Options: each regions usage $7500 per year or 3 years @ 20,000 | 3 years (Jan09-Jan2012) On pack usage only in North America (US & Canada) | NA | 3 | North America | NAV00000250 |

Nevium Intellectual Property Consultants

**The Other Transactions - Description of Documents Reviewed**  *Schedule 3*

### The "Other" Navarro Invoices

| Project | Party Invoicing | Invoice # (Doc #) | Document Date | Photo / Creative Fee | Models' Fee | Media Use Fee | Other Charges | Total Amount | Charge Components / Descriptions | Media Usage | Photo-graphs | Term (Years) | Territory | Doc ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Definity | Estimate from Janice Moses Represents | Est # 2008013 | 1-Apr-08 | 26,500 | 34,560 | | 5,300 | 66,360 | 3 Years (Jan09-Jan2012) On Pack Usage only in North America. Options: each regions usage $7500 per year or 3 years @ 20,000 | Usage fee of $20000 is a component of Model fee estimate | NA | 3 | North America | NAV00002948 |
| Definity | Photographer ID'd as Annette Navarro McCall. Not a typical Navarro Invoice | 7987 | 20-Apr-06 | 6,000 | | | 2,855 | 8,855 | Digital photography 1 day 1 model, shot on 4/5/06 | Usage: "undetermined" | NA | NA | NA | NAV00005235 |
| Fashion Fair | Annette Navarro Photography | 991033 | 6-Jul-11 | 4,600 | - | 6,000 | 9,753 | 20,353 | 8 Product Shots unlimited usage total buyout. Two items labelled "photo fee" $3k and $1.6k | Usage = $3k x 2. Usage rights for US, UK, Canada, France and South Africa. 2 years starting November 2010 | NA | 2 | US, UK, Canada, France, South Africa | NAV00002752 |
| Facial Cleansing | Annette Navarro Photography | NA | 3-Apr-09 | 5,000 | 28,800 | 18,000 | 6,200 | 58,000 | 36 months usage in North America. Packaging shot 4 photos used to demonstrate product and possibly 1 photo on front of package. | 36 months for packaging shot | 5 | 3 | North America | NAV00000024 |
| Greentech | Annette Navarro Photography | 6142 | 23-Sep-16 | 3,000 | 1,800 | | 2,500 | 7,300 | 1 Day shoot on location with local talent. Usage is a full buyout | Full buyout. There is no usage fee for unrecognizable models | NA | NA | NA | NAV00005474, NAV00005463, NAV00005477 |
| Jergens | Annette Navarro Photography | 102614 | 30-Oct-13 | 3,000 | | 15,000 | 3,610 | 21,610 | 1 day shoot on set for 3 year global digital media use and internet | 3 years global digital | NA | 3 | Global | NAV00003205 |
| John Frieda | Annette Navarro Photography | 1010247 | 13-Oct-10 | 24,000 | | 500 | 1,200 | 25,700 | Product box shots Cocoon NL/UK | 3 shots global buyout at a flat rate | 3 | NA | Global | NAV00002751 |
| John Frieda | Annette Navarro Photography | 31410 | 14-Mar-14 | 9,000 | | | 11,362 | 20,362 | Complete library raw hi-res selects in 16 bit RGB Tiff format for use on and off-pack | 3 years global | NA | 3 | Global | NAV00002757 |
| John Frieda | Annette Navarro Photography | 311033 | 2-May-11 | 20,000 | | 27,000 | 35,269 | 82,269 | Usage rights for 5 years global packaging 4 models, 9 shots, 2 day shoot, in Cincinnati. Full repair before and after, root awakening before and after, eclipse before and 2 after | 5 years global packaging | NA | 5 | Global | NAV00002769 |
| John Frieda | Annette Navarro Photography | NA | 21-May-10 | 18,000 | | | 3,750 | 2,770 | 24,520 | Beauty product photography on white of 10 group shots and 40 individual shots. Retouching fee will be assessed if needed at no fault of photographer | NA | NA | NA | NA | NAV00002770 |
| John Frieda | Annette Navarro Photography | 10242 | 25-Oct-13 | | | 22,500 | - | 22,500 | 2 day shoot on location 3 models US in store, online, collateral materials for 2 years from first live/in market date | Unlimited library of images 2 years US only | NA | 2 | United States | NAV00002816 |
| Miscellaneous | Annette Navarro Photography | NA | 28-Mar-11 | 6,000 | 72,000 | 60,000 | 8,000 | 146,000 | 1 day shoot in Cincinnati with 2 models for global packaging (on/off pack), internet, brochure, global PR. This is for 2 products | 3 year global. 3 years global = $18K, 3 years internet = $6K, Brochure = $3K, PR = $3K | NA | 3 | Global | NAV00000620 |
| Miscellaneous | Email | NA | 24-Nov-10 | | | 18,000 | 24,000 | 42,000 | 3 year global | 3 year global | NA | 3 | Global | NAV00002402 |
| Olay Regenerist | Annette Navarro McCall | 8006 | 10-Feb-06 | 4,000 | | | 2,000 | 2,024 | 8,024 | Packaging insert for Costco. Nil Marie shoot | Packaging insert for Costco | NA | NA | NA | NAV00005233 |
| Olay Regenerist | JM Janice Moses | 20061257 | 13-Apr-06 | 7,000 | | 18,000 | 12,398 | 37,398 | Digital photography of two models in studio, plus pre light day | 3 years global packaging. 1 year In-store, FSCI, DCI, Internet | NA | 3/1 | Global | NAV00005234 |

Nevium Intellectual Property Consultants

**The Other Transactions - Description of Documents Reviewed**    *Schedule 3*

## The "Other" Navarro Invoices

| Project | Party Invoicing | Invoice # (Doc #) | Document Date | Photo / Creative Fee | Models' Fee | Media Use Fee | Other Charges | Total Amount | Charge Components / Descriptions | Media Usage | Photo-graphs | Term (Years) | Territory | Doc ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Olympics | Arc purchase order | PO 470012225 | 10-Sep-08 | | | | 13,200 | 13,200 | Additional usage of Olay image of model "Viola" | 1 year usage in-store North America (includes Canada) starting 1/1/09 - 1/1/10 | NA | 1 | North America (Including Canada) | NAV00005211 |
| Olympics | Annette Navarro Photography estimate for Landor Associates | NA | 11-Feb-08 | 25,000 | 126,000 | 50,000 | 48,860 | 249,860 | Photography will not directly promote a single/independent P&G brand without the exclusive permission of the photographer | Usage 2 years North America (includes Canada & Puerto Rico) | NA | 2 | North America (includes Canada & Puerto Rico) | NAV00005231 |
| Petra | Janice Moses Represents | 20061727 | 19-Oct-06 | | | 13,000 | - | 13,000 | Usage of photography: 2) shots of Petra from Olay shoot | 1 year from Nov 06 to Nov 07 | NA | 1 | NA | NAV00000251 |
| Petra | Janice Moses Represents | 20077010 | 26-Apr-07 | 6,000 | | | - | 6,000 | Usage of photography: 70X on TV | TV in Poland in May - 10 Days | NA | 0.03 | Poland | NAV00002987 |
| Petra | Janice Moses | 20061258 | 19-Apr-06 | 5,000 | | | - | 5,000 | One year in store materials including posters in 30 stores | 1 year for in store materials | NA | 1.00 | NA | NAV00005292 |
| Shakara | Annette Navarro Photography | 41612 | 16-Apr-12 | | | 10,500 | | 10,500 | Olay terms of use for Shakara Ledard image | 3 years from date of first use | 1 | 3.00 | NA | NAV00000665 |
| Shakara | Email | NA | 16-Apr-12 | | | 10,500 | | 10,500 | 3 years for 1 image (2 backgrounds) | 3 years from date of agreement | 1 | 3.00 | NA | NAV00002764 |
| Shakara | Email | NA | 21-Oct-11 | | | 28,000 | | 28,000 | 3 year from date of agreement for 1 image (2backgrounds) | 3 years from date of agreement | 1 | 3.00 | NA | NAV00003101 |
| Shakara | Email | NA | 16-Apr-12 | | | 10,500 | | 10,500 | 3 years for 1 image (2 backgrounds) | 3 years from date of agreement | 1 | 3.00 | NA | P&Gnavarro-006180 |
| Shakara | Email | NA | 16-Apr-12 | | | 10,500 | | 10,500 | 3 years for 1 image (2 backgrounds) | 3 years from date of agreement | 1 | 3.00 | NA | NAV00002878 |
| Shakara | Email | NA | 26-Mar-12 | | | | | NA | No amount mentioned | 3 Years (Navarro never "signed any licensing agreements for P&G that extend for more than 3 years") | NA | NA | NA | NAV00003079 |
| Shakara | MC2 Model Management | NA | 6-Oct-11 | | | 28,000 | - | 28,000 | 3 years for 1 image (2 backgrounds) | 3 years from date of agreement | 1 | 3.00 | NA | NAV00003080 |
| Shakara | Email | NA | 26-Mar-12 | | 28,000 | | - | 28,000 | Shakara's usage rights total $28k (implies the entire $28k is Model's fee) | Not mentioned | NA | NA | NA | NAV00004130 |

Nevium Intellectual Property Consultants
**Reasonable Compensation Calculations** *Schedule 4*

| Alleged Misuse Beyond Established Term | | | | | |
|---|---|---|---|---|---|
| *Comparable Project* | *Comparable Project Parameter* | *Media Use Fee* | *Fee / Year* | *Source* | *Note* |
| Always | 5 year term | 21,000 | 4,200 | NAV00000664 | |
| John Frieda | 5 year term | 27,000 | 5,400 | NAV00002751 | |
| Biore A | 3 year term | 24,000 | 8,000 | NAV00002775 | |
| Biore B | 3 year term | 20,000 | 6,667 | NAV00002819 | |
| Facial Cleansing | 3 year term | 18,000 | 6,000 | NAV00000024 | |
| Jergens | 3 year term | 15,000 | 5,000 | NAV00003205 | |
| Miscellaneous A | 3 year term | 30,000 | 10,000 | NAV00000620 | 1 transaction, 2 products, $30K each |
| Miscellaneous B | 3 year term | 18,000 | 6,000 | NAV00002402 | |
| Olay Regenerist | 3 year term | 18,000 | 6,000 | NAV00005234 | |
| Shakara | 3 year term | 10,500 | 3,500 | NAV00000665 | |
| 10 | | 21,045 | **6,433** | | |
| | *Average* | | **6,433** | | |
| | *Minimum* | | 3,500 | | |
| | *Maximum* | | 10,000 | | |

**Reasonable Compensation for Alleged Misuse**

| Project | Original Usage Fee | Permitted Term | Total Length of Use | Misuse Term (years) | Extension Fee / Year | Additional Compensation |
|---|---|---|---|---|---|---|
| Pro X (Packaging) | 18,000 | 3.00 | 6.75 | 3.75 | 6,433 | **24,125** |
| Pro X (In Store) | 5,000 | 1.00 | | | | **-** |
| FHR Teal (Original) | 24,000 | 3.00 | 7.83 | 4.83 | 6,433 | **31,094** |
| FHR Teal (WE) | 18,000 | 3.00 | | | | **-** |
| FHR Teal (Magazine) | 500 | 0.08 | | | | **-** |
| FHR Purple | 30,000 | 3.00 | 4.83 | 1.83 | 6,433 | **11,794** |
| Daily Facials | 9,000 | 3.00 | 6.58 | 3.58 | 6,433 | **23,053** |
| | $104,500 | | | | *If Average Fee/year* | **$90,067** |
| | | | | | *if Minimum Fee/year* | **$49,000** |
| | | | | | *If Maximum Fee/year* | **$140,000** |

Total length of use as calculated at Schedule 5

As the Pro X In Store invoice indicates a Term within the Term permitted by the Pro X Packaging invoice, any additional compensation for use of this image with Pro X is already accounted for in the Pro X Packaging calculation, and the alleged Territory and Scope misuse calculations below.

Per the P&G Data, there were no sales of the FHR (Teal) product in Western Europe, therefore no additional compensation is required.

As the FHR Teal (Magazine) invoice indicates a Term of one-month within the Term permitted by the FHR (Teal) North America invoice, any additional compensation for use of this image with FHR (Teal) is already accounted for in the FHR (Teal) North America calculation and the alleged Territory and Scope misuse calculations below.

Nevium Intellectual Property Consultants
**Reasonable Compensation Calculations**

*Schedule 4*

| Alleged Misuse Outside Established Territory | | | |
|---|---|---|---|
| *Comparable Project* | *Comparable Project Parameter* | *Media Use Fee* | *Source* |
| Always | Global | 21,000 | NAV00000664 |
| Biore A | Global | 24,000 | NAV00002775 |
| Biore B | Global | 20,000 | NAV00002819 |
| Fashion Fair | US, UK, Canada, France, South Africa | 6,000 | NAV00002752 |
| Jergens | Global | 15,000 | NAV00003205 |
| John Frieda A | Global | 500 | NAV00002751 |
| John Frieda B | Global | 27,000 | NAV00002769 |
| Miscellaneous A | Global | 30,000 | NAV00000620 |
| Miscellaneous B | Global | 18,000 | NAV00002402 |
| Olay Regenerist | Global | 18,000 | NAV00005234 |
| 10 | *Average* | **17,950** | |
| | *Minimum* | 500 | |
| | *Maximum* | 30,000 | |

**Reasonable Compensation for Alleged Misuse**

| *Project* | *Original Usage Fee* | *Permitted Territory* | *Misuse Territory* | *Fee for Global Deals* | *Implied Total Usage Fee* | *Additional Compensation* |
|---|---|---|---|---|---|---|
| Pro X | 23,000 | North America | China & Latin America | 17,950 | 23,000 | - |
| Regenerist | - | | | 17,950 | 17,950 | 17,950 |
| FHR Teal | 24,500 | North America | Latin America | 17,950 | 24,500 | - |
| FHR Teal | 18,000 | Western Europe | Latin America | 17,950 | 18,000 | |
| FHR Purple | 30,000 | Global | None | 17,950 | 30,000 | - |
| Daily Facials | 9,000 | North America, Puerto Rico | Europe and Latin America | 17,950 | 17,950 | 8,950 |
| | $104,500 | | | | *If Average Fee/year* | **$26,900** |
| | | | | | *if Minimum Fee/year* | **$500** |
| | | | | | *If Maximum Fee/year* | **$63,500** |

Per the P&G Data, there were no sales of the FHR (Teal) product in Western Europe, therefore no additional compensation is required.

Nevium Intellectual Property Consultants
**Reasonable Compensation Calculations**                                                                                          *Schedule 4*

## Alleged Misuse Beyond the Established Scope

| Comparable Project | Comparable Project Parameter | Media Use Fee | Source |
|---|---|---|---|
| Always | Unlimited Global Buyout | 21,000 | NAV00000664 |
| Crest Other A | Unlimited print media library | 45,000 | NAV00005287 |
| Crest Other B | Unlimited print media library | 67,500 | NAV00005288 |
| Fashion Fair | Unlimited Usage Total Buyout | 6,000 | NAV00002752 |
| John Frieda | Global Buyout | 500 | NAV00002751 |
| 5 | Average | **28,000** | |

**Reasonable Compensation for Alleged Misuse**

| Project | Original Usage Fee | Permitted Scope | Misuse Scope | Fee for Unlimited | Implied Total Use Fee | Additional Compensation |
|---|---|---|---|---|---|---|
| Pro X | 23,000 | Packaging Only + In-Store | Advertising | 28,000 | 28,000 | 5,000 |
| Regenerist | - | - | Advertising | 28,000 | 28,000 | 28,000 |
| FHR Teal | 42,500 | Package, in-pack brochure, internet + Canadian Magazine | Advertising | 28,000 | 42,500 | - |
| FHR Purple | 30,000 | Package, Internet, PR, Brochure | Advertising | 28,000 | 30,000 | - |
| Daily Facials | 9,000 | Package, Internet, Brochure | Advertising | 28,000 | 28,000 | 19,000 |
| | $104,500 | | Average | $140,000 | $156,500 | **$52,000** |
| | | | Minimum | $2,500 | $105,000 | **$500** |
| | | | Max | $337,500 | $337,500 | **$233,000** |

| | |
|---|---|
| **Grand Total (using Average Fees)** | **$168,967** |
| If using Minimum Fees | $50,000 |
| If using Maximum Fees | $436,500 |

Nevium Intellectual Property Consultants

**Dates Related to the Seven Transactions**                                                                              *Schedule 5*

*Sources: Fifth Complaint and Exhibits; P&G Transaction Data from P&Gnavarro-12060 and P&G's Insight Reports*

| Transaction Description | | Invoice Data | Complaint Data | | | P&G Transaction Data | | | Calculated Use Period (years) | |
|---|---|---|---|---|---|---|---|---|---|---|
| Project | Permitted Term | Invoice Date | Invoice Sent Date | Transaction Start Date | Transaction Expiration Date | | Transaction Start Date | Transaction End Date | | Complaint | P&G Data |
| **Pro X - Packaging** | 3 Years | 21-Apr-10 | 21-Apr-10 | 1-Dec-10 | 30-Nov-13 | *1* | 1-Jul-11 | 1-Apr-18 | | 3.00 | 6.75 |
| **Pro X - In Store** | 1 Year | 6-Jan-11 | 6-Jan-11 | 1-Feb-11 | 31-Jan-12 | *2* | | | *2* | 1.00 | |
| **FHR (Teal) - North America** | 3 Years | 20-Oct-10 | 20-Oct-10 | 1-Aug-11 | 31-Jul-14 | | 1-Aug-11 | 1-Jun-19 | | 3.00 | 7.83 |
| **FHR (Teal) - WE** | 3 Years | 10-Jun-11 | 10-Jun-11 | 1-Feb-12 | 31-Jan-15 | *3* | | | *3* | 3.00 | |
| **FHR (Teal) - Magazine** | 1 Month | 14-Nov-11 | 12-Oct-11 | 3-Nov-11 | 2-Dec-11 | *4* | | | *4* | 0.08 | |
| **FHR (Purple)** | 3 Years | 10-Jun-11 | 10-Jun-11 | 1-Aug-11 | 12-Nov-14 | | 1-Aug-14 | 1-Jun-19 | | 3.28 | 4.83 |
| **Daily Facials** | 3 Years | 16-Apr-12 | 25-May-12 | 1-Jul-12 | 31-Aug-15 | | 1-Jul-12 | 1-Feb-19 | | 3.17 | 6.58 |

| | Notes |
|---|---|
| 1 | Fifth Amended Complaint indicates the Expiration Date is 11-31-13, used 30Nov13 as November has only 30 days. |
| 2 | For Pro X - Instore, the 1-year Term per the Complaint falls within the 3-year Term for Pro X Packaging. The P&G Data indicates P&G did not have "separate revenues for an in-store invoice," and there is not a misuse period or damages for ProX In-Store. As the Alleged Misuse regarding the Pro X - In Store invoice is related to a misuse of the Scope transaction parameter, the Calculated Use Period is not relevant. |
| 3 | The P&G Data indicates "there were no sales of the FHR Teal box in Western Europe." If no sales in Western Europe, there is no misuse of this Image outside the permitted Term. |
| 4 | Invoice for use in Canadian magazine provides permission for 1 month (equivalent to 1 issue of the magazine) and falls within the 3-year Term for FHR (Teal) North America. As the Alleged Misuse regarding the FHR (Teal) Magazine invoice is related to a misuse of the Scope transaction parameter, the Calculated Use Period is not relevant. |