# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| **ANNETTE NAVARRO MCCALL and** | ) | |
| **NAVARRO PHOTOGRAPHY, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 1:17-cv-00406** |
| | ) | |
| **v.** | ) | **Judge Douglas R. Cole** |
| | ) | |
| **WALMART INC. (f/k/a** | ) | **Magistrate Judge Karen L. Litkovitz** |
| **WAL-MART STORES, INC.) and** | ) | |
| **THE PROCTOR & GAMBLE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL REQUESTED** |
| | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' JURY DEMAND ON THE ISSUE OF DISGORGEMENT OF PROFITS AND THEIR MOTION TO BIFURCATE TRIAL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     Plaintiffs Are Entitled to a Jury Trial on the Recovery of Defendants' Profits ................. 2

     A.     The Statutory Language of the Copyright Act Treats Recovery of Profits
           as a Jury Question ................................................................................................ 3

     B.     Plaintiffs Have a Constitutional Right to a Jury Trial on Defendants'
           Profits under the Seventh Amendment ................................................................. 7

     C.     In the Alternative, the Court Should Submit the Issue of Defendants'
           Profits to the Jury and Treat the Verdict as Advisory .......................................... 17

II.    Defendants' Request for Bifurcation Should Be Denied .................................................. 17

     A.     Defendants Failed to (and cannot) Show that the Issues They Seek to
           Bifurcate Are "Wholly Unrelated" ...................................................................... 18

     B.     Defendants' Claims of Judicial Economy, Jury Confusion, and Prejudice
           Are Without Merit ................................................................................................ 19

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andreas v. Volkswagen of Am., Inc.*,
    336 F.3d 789 (8th Cir. 2003) ...............................................................................10

*Balsley v. LFP, Inc.*,
    691 F.3d 747 (6th Cir. 2012) .............................................................................6, 8

*Bergt v. McDougal Littell*,
    661 F. Supp. 2d (N.D. Ill. 2009) ..........................................................................8

*Black & Decker Corp. v. Positec USA Inc.*,
    118 F. Supp. 3d 1056, 1064 (N.D. Ill. 2015) ...........................................7, 8, 12, 3

*Bonner v. Dawson*,
    404 F.3d 290 (4th Cir. 2005) ................................................................................8

*Bouchat v. Balt. Ravens Football Club, Inc.*,
    346 F.3d 514 (4th Cir. 2003) ................................................................................8

*Cass Cty. Music Co. v. C.H.L.R., Inc.*,
    88 F.3d 635 (8th Cir. 1996) ...........................................................................13, 16

*Cisco Systems Inc. v. Arista Networks, Inc.*,
    No. 14-cv-5344, Dkt. 661 (N.D. Cal. Nov. 16, 2016) .........................................17

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999).........................................................................................7, 16

*Columbia Sportswear N. Am. v. Seirus Innovative Accessories*,
    No. 3:17-cv-01781-HZ, 2018 WL 1805102 (S.D. Cal. Apr. 17, 2018)................15

*Craig v. UMG Recordings*,
    380 F. Supp. 3d 324, 337 (S.D.N.Y. 2019)..........................................................12

*Curtis v. Loether*,
    415 U.S. 189 (1974)..............................................................................................13

*ECIMOS, LLC v. Carrier Corporation*,
    971 F.3d 616 (6th Cir. 2020) .............................................................................6, 8

*Fair Isaac Corp. v. Fed. Ins. Co.*,
    468 F. Supp. 3d 1110 (D. Minn. 2020) ......................................................... *passim*

*FDA v. Brown & Williamson*,
 529 U.S. 120 (2000) ................................................................................3

*Feltner v. Columbia Pictures Television, Inc.*,
 523 U.S. 340 (1998) ..................................................................... *passim*

*Frank Betz Associates, Inc. v. Signature Homes, Inc.*,
 No. 3:06-cv-00911, 2011 WL 13244131 (M.D. Tenn. Oct. 13, 2011) ....................................8

*Goldman v. Healthcare Management Systems, Inc.*,
 559 F. Supp. 2d 853 (W.D. Mich. 2008) ................................................8, 12, 14

*Hardesty v. Kroger Co.*,
 No. 1:16-cv-298, 2020 WL 7047702 (S.D. Ohio Dec. 1, 2020) ............................................19

*Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*,
 No. 1:20-cv-105, 2021 WL 428647 (S.D. Ohio Feb. 8, 2021) ............................................18

*Helminski v. Ayerst Labs., a Div. of Am. Home Prod. Corp.*,
 766 F.2d 208 (6th Cir. 1985) ................................................................18

*Hines v. Joy Mfg. Co.*,
 850 F.2d 1146 (6th Cir. 1988) ................................................................18

*J & J Sports Prods. v. Orellana*,
 No. 08-05468, 2010 WL 1576447 (N.D. Cal. Apr. 19, 2010) ................................................12

*Kokesh v. SEC*,
 137 S. Ct. 1635 (2017) ................................................................13

*Legal Servs. v. Velazquez*,
 531 U.S. 533 (2001) ................................................................8, 10

*Looney Ricks Kiss Architects, Inc. v. Bryan*,
 No. 07-0572, 2014 WL 1092403 (W.D. La. Mar. 18, 2014) ................................................8

*Mary Ellen Enters. V. Camex, Inc.*,
 68 F.3d 1065 (8th Cir. 1995) ................................................................10

*Motorola Sols. v. Hytera Commc'ns Corp.*,
 No. 1:17-CV-1973, 2020 WL 6554645 (N.D. Ill. Oct. 19, 2020) ............................................17

*Mowry v. Whitney*,
 81 U.S. 620 (1871) ................................................................15

*Oster v. Bancshares, Inc.*,
 No. 2:15-cv-2746, 2017 WL 3208620 (S.D. Ohio July 28, 2017) ................................................17, 21

iii

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014)..................................................................................9, 10

*Petrella v. Metro-Goldwyn- Mayer Inc.*,
  695 F.3d 946 (9th Cir. 2012) .............................................................................10

*Petrella v. Metro-Goldwyn-Mayer Inc.*,
  No. CV 09-72-GW(MANx), 2010 WL 11531222 (C.D. Cal. Feb. 3, 2010).........................10

*Phoenix Techs. Ltd. v. VMware, Inc.*,
  No. 15-CV-01414-HSG, 2017 WL 2001981 (N.D. Cal. May 11, 2017)..............................11

*Polar Bear Prods. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ................................................................................8

*Robert Bosch, LLC v. Pylon Mfg. Cor*p.,
  719 F.3d 1305 (Fed. Cir. 2013)...........................................................................15

*Ross v. Plastic Playthings, Inc.*,
  138 F. Supp. 887 (S.D.N.Y. 1956) .......................................................................15

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  309 U.S. 390 (1940)..........................................................................................14

*Sid & Marty Krofft TV Prods. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) .............................................................................11

*Singletary Construction, LLC v. Reda Home Builders, Inc.*,
  815 Fed. Appx. 892 (6th Cir. 2020)...................................................................5, 8

*Smith v. Thomas*,
  911 F.3d 378 (6th Cir. 2018) ..............................................................................14

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)............................................................................................3

*Stehrenberger v. R.J. Reynolds Tobacco Holdings*,
  335 F. Supp. 2d 466 (S.D.N.Y. 2004)...................................................................12

*Swofford v. B & W, Inc.*,
  336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1964)...........................11

*Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*,
  895 F.3d 1304 (Fed. Cir. 2018)............................................................................8

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ...............................................................................8

*Tull v. United States*,
    481 U.S. 412 (1987)..........................................................................................................7, 12

*Universal Furniture Int'l v. Collezione Europa, USA*,
    599 F. Supp. 2d 648 (M.D.N.C. 2009) ......................................................................12

*Wagner v. McDaniels*,
    459 N.E.2d 561 (Ohio 1984)......................................................................................21

*Whatever it Takes Transm. & Parts, Inc. v. Capital Core, Inc.*,
    No. 2:10-CV-72, 2013 WL 12178585 (S.D. Ohio Mar. 22, 2013).........................18

*Williams v. Gay*,
    895 F.3d 1106 (9th Cir. 2018) .....................................................................................8

## Other Authorities

Fed. R. Civ. P. 39.................................................................................................................17

H.R. REP. NO. 94-1476 (1976).............................................................................................12

3 NIMMER ON COPYRIGHT § 12.10 (2020) .......................................................................13

4 NIMMER ON COPYRIGHT § 14.03 (2020) .........................................................................9

## INTRODUCTION

Defendants The Proctor & Gamble Company and Walmart Inc. (collectively, "Defendants") ask the Court to deviate from well-established law to deny Plaintiffs Annette Navarro McCall and Navarro Photography ("Plaintiffs") their statutory and constitutional rights to present their damages case to a jury.  This is a Hail Mary pass by Defendants under the controlling law and as evidenced by the timing of Defendants' motion.

With respect to the statutory basis, the law is clear that Plaintiffs have a jury right to both their claim for "actual damages" and "profits-based damages" under Section 504(b) of the Copyright Act.  Defendants acknowledge Plaintiffs' right to a jury trial on its actual damages claim but claims no jury right exists for its profits-based claim. However, both damages are addressed in the same sentence in Section 504(b), and there is no textual basis to conclude that Congress intended a jury right for one damages claim but not the other under Section 504(b). Further, there are literally scores of reported decisions in which copyright plaintiffs have presented their claims for profits-based damages to a jury. In fact, the reasoning of the Supreme Court in its *Feltner* decision, which addressed the right to a jury trial for statutory damages under Section 504(c), strongly supports a plaintiff's statutory and constitutional right to a jury trial for damages under Section 504(b).  In contrast to this great weight of authority, Defendants cite a grand total of two cases—district court decisions from Minnesota and Illinois—that have concluded no right to a jury trial exists for profits-based damages. To suggest these two decisions are outliers is a gross understatement.

If this Court agrees that Plaintiffs have a statutory right to a jury trial that ends the inquiry and dooms Defendants' motion.  But if the Court disagrees, then it must consider whether a jury right exists under the Seventh Amendment.  As discussed below, applying the historical factors that courts consider in determining whether a Seventh Amendment right exists, it is likewise

clear that a plaintiff is entitled to a jury under the Seventh Amendment in connection with its profits-based damages.

Finally, the timing of Defendants' motion is suspect. Plaintiffs filed their jury demand along with their Original Complaint in June 2017. For three-and-a-half years, Defendants never challenged Plaintiffs' right to a jury on any of its claims, including for its profits-based damages. Then, out of the blue, Defendants filed their motion last month. If Defendants truly believed that no jury right exists, then presumably they would have raised it long ago instead of waiting so close to trial.

## ARGUMENT

**I.      Plaintiffs Are Entitled to a Jury Trial on the Recovery of Defendants' Profits**

Plaintiffs possess both a statutory and constitutional right to a jury trial on the recovery of Defendants' profits under Section 504(b) of the Copyright Act. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." U.S. Const., Amdt. 7. However, "[b]efore inquiring into the applicability of the Seventh Amendment, [courts] must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998) (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)).

Here, Section 504(b) clearly provides for a jury trial on "the actual damages suffered by [plaintiff] as a result of the infringement, *and any profits of the infringer* that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (emphasis added). Unlike other remedies provided in the Copyright Act, Section 504(b) conspicuously omits language indicating this issue is to be determined by the "court." The Supreme Court's decision in *Feltner* confirms this statutory construction. *See Feltner*, 523 U.S.

at 346.  Accordingly, the Court need not determine the applicability of the Seventh Amendment given a clear statutory intent that a plaintiff be afforded a jury trial on its recovery of actual damages and a defendant's profits.

Even if the Court determines that there is no statutory right to a jury trial under Section 504(b), the Seventh Amendment nonetheless guarantees a jury trial on the issue of profits-based damages.

### A.      The Statutory Language of the Copyright Act Treats Recovery of Profits as a Jury Question

By its plain language and statutory framework, the Copyright Act entitles a plaintiff to a jury trial on the disgorgement of an infringer's profits.  Notably, numerous remedies under the Copyright Act require the "court" to decide the remedy: injunctions (Section 502), impoundment (Section 503), statutory damages (Section 504(c)), and costs and attorneys' fees (Section 505). In contrast, Section 504(b) does not require the "court" to determine the amount of actual damages or the infringer's profits.  Based on the use of the word "court" in Sections 502, 503, 504(c), and 505—but not in Section 504(b)—Congress is presumed to have intended that the jury decide remedies under Section 504(b), not the judge. *See, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (internal citation omitted); *FDA v. Brown & Williamson*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (internal citation omitted).

Defendant's reliance on the Supreme Court's decision in *Feltner* for the proposition that there is no statutory right to a jury trial for Section 504(b) has it exactly backwards.  Rather, *Feltner* unequivocally *supports* the conclusion that a plaintiff is entitled to a jury trial under

Section 504(b). In *Feltner*, the Court indeed held that Section 504(c) does not confer a statutory right to a jury trial on the issue of statutory damages. *Feltner*, 523 U.S. at 347. However, the lynchpin to the Court's decision was the language in Section 504(c) providing that statutory damages are to be assessed in an amount that "the *court* considers just." *Id.* at 345 (quoting 17 U.S.C. § 504(c)) (emphasis added). The Court noted that "[t]he word 'court' in this context appears to mean judge, not jury." *Id.* at 346. By this reasoning, the Court concluded that Section 504(c) did not confer a statutory right to a jury trial because it contemplated that statutory damages under that section were to be calculated by the "court." But the Court's analysis went even further. Crucially, the Court stated that "[i]n contrast, the Copyright Act does not use the term 'court' in the subsection addressing awards of actual damages and profits, see § 504(b), *which generally are thought to constitute legal relief*." *Id.* (emphasis added). Thus, the Supreme Court's reasoning in *Feltner* strongly supports a statutory right to jury trial under Section 504(b).

In its discussion of *Feltner*, Defendants ignore the critical distinction between statutory damages under Section 504(c) which repeatedly refers to "the court" and actual damages and profits-based damages under Section 504(b) that nowhere mentions "the court." Defendants emphasize that Section 504(b) makes "no mention of 'juries at all'" but this misses the mark for two primary reasons.

First, as the reasoning of *Feltner* makes clear, the relevant point is not that Section 504(b) fails to mention "the jury," but rather Section 504(b)—unlike Section 504(c)—fails to mention "the court." If Congress intended for damages under Section 504(b) to be triable to the court instead of a jury, then it would have included a reference to "the court" in Section 504(b). But it didn't. Thus, it is the absence of any similar language referring to "the court" in Section 504(b)

that, as a matter of statutory construction, reflects a congressional entitlement to a jury trial for both types of damages—actual and profits-based—under Section 504(b).

Second, Defendants fail to reconcile the inherent conflict between their acknowledgement that a party is indisputably entitled to a jury trial for actual damages under Section 504(b) but not entitled to a jury for profits-based damages under Section 504(b).  If Section 504(b)'s failure to mention "juries at all" means that Plaintiffs are not entitled to a jury on their profits-based damages claim, then likewise Plaintiffs should not be entitled to a jury on their actual damages claim.  Defendants offer no explanation for this obvious inconsistency in their argument.  Relatedly, Defendants offer neither logic nor a textual explanation for their contention that Section 504(b) should be interpreted as affording a jury right for actual damages but not for profits-based damages when both types of damages appear in the same sentence.  In effect, Defendants would rewrite Section 504(b) to read "*[the jury shall decide]* the actual damages suffered by [plaintiff] as a result of the infringement, and *[the court shall decide]* any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).  Of course, there is no textual basis for the Court to accept Defendants' invitation to split this single sentence of Section 504(b) into two separate parts and find that a jury right exists for actual damages but not profits-based damages.

Moreover, the right to have a jury determine profits-based damages in the Sixth Circuit is "well-established" and cannot be seriously disputed. *See Singletary Construction, LLC v. Reda Home Builders, Inc.*, 815 Fed. Appx. 892, 896 (6th Cir. 2020) ("Singletary correctly argues that, in the context of damages for copyright infringement, well-established Sixth Circuit case law permits *the jury* to disbelieve a defendant's articulation of deductible expenses and award the plaintiff the full amount of gross revenue that the defendant earned from its infringement.")

(emphasis added); *Balsley v. LFP, Inc.*, 691 F.3d 747, 770 (6th Cir. 2012) (affirming that "the *jury instructions* issued below which contained only the language of the statute [Section 504(b)], were accurate" and "*the jury* was entitled to reject Defendants' ... extreme and unconvincing argument" that the use photographs at issue did not contribute one dollar towards Defendants' profits) (emphasis added)[1]; *ECIMOS, LLC v. Carrier Corporation*, 971 F.3d 616, 634-35 (6th Cir. 2020) ("The district court also permitted [plaintiff] to ask *the jury* to disgorge [defendant] of the entirety of its *profits* from its Collierville plant, which totaled $225,483,000. *The jury* concluded that damages worth $5 million were attributable to [defendant's] infringement of [plaintiff's] database-script source code." In affirming the $5 million jury award of profits under Section 504(b), the Sixth Circuit held that "any relevant *revenue* that could be traced back to the infringement can be submitted to *the jury*, and that it is ultimately for *the jury* to decide how much *profit* ... must be disgorged") ("jury" emphasis added, "revenue" and "profits" emphasis in original).

Against this overwhelming case law that entitles Plaintiffs to a jury trial on their profits-based damages, Defendants cite a lone case holding there is no right to a jury for profits-based damages under Section 504(b). *See* Motion, at 8-9 (citing *Fair Isaac Corp. v. Fed. Ins. Co.*, 468 F. Supp. 3d 1110 (D. Minn. 2020)). But in *Fair Isaac*, the plaintiff did not even argue that the Copyright Act provided a right to a jury determination on profits-based damages, but rather rested its jury argument under the Seventh Amendment. *Id.* at 1113 ("Fair Isaac no longer contends that the Copyright Act—or any other federal statute—provides the right to a jury determination on disgorgement of Federal's profits attributable to infringement."). As the issue

---

[1] While *Balsley* involved about $1 million in revenues, the present case involves hundreds of millions of dollars in revenue from product sales on which Plaintiffs' photographs were on the outside of the packaging. Thus, Defendants' argument here that Plaintiffs' photographs did not contribute one dollar to these product sales is far more "extreme and unconvincing" than the comparable argument made by the *Balsley* defendant.

was not joined, the court's discussion of Section 504(b) was limited to a single perfunctory paragraph that failed to cite a single other case holding no statutory jury right to profits-based damages existed under Section 504(b). *Id*. at 1113-14.

In short, just as a jury right indisputably exists for actual damages under Section 504(b), so too does a jury right exist for profits-based damages. As such, Defendants' motion to strike Plaintiffs' jury demand for its profits-based damages claim must fail, and this Court need not proceed to an analysis under the Seventh Amendment given Plaintiffs' statutory right to a jury trial under Section 504(b).

**B.** **Plaintiffs Have a Constitutional Right to a Jury Trial on Defendants' Profits under the Seventh Amendment**

Even if the Court determines that there is not a statutory right to jury trial under Section 504(b), Plaintiffs are guaranteed a jury trial on recovery of Defendants' profits under the Seventh Amendment. Courts apply a two-prong test to determine whether the Seventh Amendment guarantees a plaintiff's right to a jury trial. First, courts must "compare the … action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull v. United States*, 481 U.S. 412, 417-18 (1987). Second, courts "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* The second inquiry is "more important" in the analysis. *Id.* However, "[w]here history does not provide a clear answer, [courts] look to precedent and functional considerations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 718 (1999). Additionally, "to the extent that the law is ambiguous, any doubts should be resolved in favor of finding a constitutional jury right, as the 'federal policy favoring jury trials is of historic and continuing strength,' . . . and the risk of error is greater when denying rather than recognizing a constitutional right." *Black & Decker Corp. v.*

*Positec USA Inc*., 118 F. Supp. 3d 1056, 1064 (N.D. Ill. 2015) (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963) (collecting cases)).

The futility of Defendants' request to strike Plaintiffs' jury demand is evidenced by the sheer number of cases where recovery of profits in copyright cases has been treated as a question for the jury.[2]  Plaintiffs could literally have a string cite that would be pages long for the scores of cases in which juries have decided profits-based damages under the Copyright Act, including many from the Sixth Circuit.  By contrast, Defendants' lone case where the court refused to submit a jury question for profits-based damages was the outlier Minnesota district court decision in *Fair Isaac*.[3]

In concluding no jury right exists for profits-based damages under the Seventh Amendment, *Fair Isaac* ignores mountains of precedent to the contrary.  First and foremost, *Fair Isaac* plainly contradicts the Supreme Court's decision in *Feltner*, which found that "awards of actual damages and *profits* . . . generally are thought to constitute *legal* relief."  *Feltner,* 523 U.S.

---

[2] *See Singletary Construction,* 815 Fed. Appx. at 898; *Balsley*, 691 F.3d at 770; *ECIMOS,* 971 F.3d at 635; *Goldman v. Healthcare Management Systems, Inc.*, 559 F. Supp. 2d 853, 865-66 (W.D. Mich. 2008) ("Plaintiff is correct that the jury may consider evidence of both actual damages and net profits, even if a jury could not award both."); *Frank Betz Associates, Inc. v. Signature Homes, Inc.*, No. 3:06-cv-00911, 2011 WL 13244131 (M.D. Tenn. Oct. 13, 2011) ("[T]he Court believes that Defendants' evidence should be admitted and left to the jury to determine to what extent it proves Defendants' expenses as required by § 504(b)."); *see also Williams v. Gay*, 895 F.3d 1106, 1129-30 (9th Cir. 2018); *Looney Ricks Kiss Architects, Inc. v. Bryan,* No. 07-0572, 2014 WL 1092403, at *2 (W.D. La. Mar. 18, 2014); *Bergt v. McDougal Littell*, 661 F. Supp. 2d at 927 (N.D. Ill. 2009); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 516 (4th Cir. 2003); *Bonner v. Dawson*, 404 F.3d 290, 295 (4th Cir. 2005); *Polar Bear Prods. v. Timex Corp*., 384 F.3d 700 (9th Cir. 2004); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000).

[3] Defendants also cite three decisions from "[o]ther Courts of Appeals [that] have similarly found no Seventh Amendment right to a jury on the issue of profits disgorgement in the context of trademark and trade secret disputes."  Motion, at 8.  These cases are unavailing and wholly unrelated to the issue of jury trials in copyright cases.  First, with regard to the two trademark cases, the express language of the Lanham Act provides that the "*court* shall assess such profits" that are awarded to a plaintiff.  15 U.S.C. 1117(a) (emphasis added).  As noted above, such language is conspicuously absent from Section 504(b) of the Copyright Act.  Moreover, courts have held that recovery of profits constitute a legal remedy under the Lanham Act, thus ensuring a jury trial under the Seventh Amendment.  *See, e.g.*, *Black & Decker Corp. v. Positec USA Inc*., 118 F. Supp. 3d 1056, 1064 (N.D. Ill. 2015) (holding that there is a right to a jury trial under the Lanham Act where "profits may function as a 'proxy for damages'").  Second, Defendants' reliance on the *Texas Advanced* case, which concerned trade secret misappropriation, is similarly misplaced.  Importantly, trade secret actions, unlike copyright infringement actions, "were first recognized in the American and English *equity (or chancery) courts* in the nineteenth century."  *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304, 1323 (Fed. Cir. 2018) (emphasis added).  Accordingly, there is no guarantee of a jury trial for such actions under the Seventh Amendment.

at 346 (emphasis added). Indeed, the *Feltner* Court undertook an extensive analysis of the historical origins of copyright infringement actions, noting that "[b]efore the adoption of the Seventh Amendment . . . copyright suits for monetary damages were tried in courts of law, and thus before juries." *Id.* at 348-49. In concluding that a constitutional right to a jury trial on statutory copyright damages, the Supreme Court found that "there is clear and direct historical evidence that juries, both as a general matter and in copyright cases, set the amount of damages awarded to a successful plaintiff." *Id.* at 355. Thus, following *Feltner*, "the danger arises that denying trial by jury on this issue [of recovery of profits] to a party who so requests will be deemed constitutionally suspect." 4 NIMMER ON COPYRIGHT § 14.03 (2020). *Fair Isaac*, however, fails to clearly address why this holding in *Feltner* does not operate to create a constitutional right to a jury trial under Section 504(b).

Instead of following the precedent established in *Feltner*, the court in *Fair Isaac* instead focused on the Supreme Court's decision in *Petrella*, which stated in a footnote that the "recovery of profits is not easily characterized as legal or equitable" and ultimately "regard[ed] as appropriate its treatment as 'equitable' *in this case*." *Fair Isaac*, 468 F. Supp. 3d at 1115 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014)) (emphasis added). However, *Fair Isaac*'s reliance on *Petrella* is misplaced. Rather, this footnote—which constitutes nothing more than *dicta*—fails to create a *per se* rule that (i) recovery of profits in a copyright case is equitable in nature or (ii) there is no right to a jury trial on the issue of recovery of profits when laches is not a defense. Indeed, *Petrella* concerned the *equitable* defense of laches, which very well could have shaded the Supreme Court's consideration of the relief sought. Moreover, the *Petrella* Court defined the recovery of profits as "protean"—always

9

changing—and declined to create a bright line rule regarding recovery of profits, expressly limiting its equitable characterization of the remedy to "in this case." 572 U.S. at 668 n.1.

Additionally, a review of prior orders in *Petrella* shows the issue of a right to a jury trial on recovery of profits in a copyright case was not raised or argued by the parties or the lower courts. *See Petrella v. Metro-Goldwyn- Mayer Inc.*, 695 F.3d 946 (9th Cir. 2012); *Petrella v. Metro-Goldwyn-Mayer Inc.*, No. CV 09-72-GW(MANx), 2010 WL 11531222 (C.D. Cal. Feb. 3, 2010). The footnote cannot be read as binding precedent for this additional reason. *See Legal Servs. v. Velazquez*, 531 U.S. 533, 557 (2001) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed."). Accordingly, *Petrella*'s *dicta* footnote regarding whether recovery of profits is legal or equitable is both inconclusive and has no precedential effect on the right to a jury trial on the issue. Thus, *Fair Isaac*'s decision is predicated on faulty precedent.

*Fair Isaac* also fails to address decades-long precedent from numerous federal courts holding that recovery of profits in copyright actions are properly placed before a jury as a matter of law. For instance, the *Fair Isaac* court ignored Eighth Circuit precedent affirming jury awards for recovery of profits under the Copyright Act. *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 800 (8th Cir. 2003); *Mary Ellen Enters. V. Camex, Inc.*, 68 F.3d 1065, 1068 (8th Cir. 1995). Moreover, the Fifth Circuit long ago held that an accounting of profits under the Copyright Act, while a creature of equity, is ultimately a question of law on a money claim for damages:

> "An accounting for profits, although a creature of equity, is a rule of administration and not of jurisdiction. The court of equity awarded compensatory damages incidental to an injunction to avoid multiplicity of suits and not because the jury lacked competence. We do not believe that this practice in patent and copyright infringement cases, which was justified historically to avoid multiplicity of litigation in a divided

10

> procedure, should be continued in a merged system where such multiplicity can be avoided by one civil action. It is a well-settled doctrine that the distinction of jurisdiction, between law and equity, is constitutional, to the extent to which the Seventh Amendment forbids any infringement of the right of trial by jury, as fixed by the common law. To continue the past practice is to convert an administrative rule into a jurisdictional one so as to deprive the parties of a jury on what is basically a money claim for damages based on a charge of . . . infringement."

*Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1964). The Ninth Circuit has also expressly agreed with this reasoning, holding that copyright plaintiffs have "a right to a jury trial" on the issue of recovery of a defendant's profits. *Sid & Marty Krofft TV Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir. 1977); *see also Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-CV-01414-HSG, 2017 WL 2001981, at *7 (N.D. Cal. May 11, 2017) ("[T]he Ninth Circuit has affirmed jury awards of infringer's profits in copyright infringement cases under 17 U.S.C. 504(b). . . . The Court therefore is not persuaded that the award of infringer's profits is an equitable remedy in the copyright context, and will submit this issue to the jury."). Further, the model jury charges of the Seventh Circuit, Ninth Circuit, and Eleventh Circuit each contain jury instructions for an award of profits under Section 504(b).[4]

The authorities above either implicitly or explicitly came to the conclusion that the disgorgement of profits under Section 504(b) is a legal, rather than equitable, remedy. This is for good reason. As detailed further below, disgorgement of profits is properly considered a legal remedy because it is (i) designed to deter and punish copyright infringement, (ii) often a proxy

---

[4] *See* Federal Civil Jury Instructions of the Seventh Circuit, 12.8.3 (2017 rev.) (available at http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf) (last accessed Feb. 17, 2021) ("Plaintiff is entitled to recover the profits that Defendant made because of the infringement."); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 17.34 (2017 ed.) (available at https:// www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2020_12.pdf) (last accessed Feb. 17, 2021) ("You may make an award of the defendant's profits…."); Eleventh Circuit Pattern Jury Instructions, Civil Cases, 9.33 (Feb. 27, 2020 rev.) (available at https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/ FormCivilPatternJuryInstructionsCurrentComplete.pdf?revDate=20200227) (last accessed Feb. 17, 2021) ("In addition to actual damages, [name of plaintiff] is also entitled to [name of defendant]'s profits that are attributable to the infringement you found…."). As this Court is no doubt aware, the Sixth Circuit contains no model jury instructions for civil cases.

for actual damages, (iii) historically linked to profits recoverable in patent infringement actions, and (iv) within the traditional fact-finding function of the jury.

    **1.   Disgorgement of Profits Is a Legal Remedy Designed to Deter and Punish Copyright Infringement**

In enacting Section 504(b), Congress stated: "[P]rofits are awarded to *prevent* the infringer from unfairly benefiting from a wrongful act." H.R. REP. NO. 94-1476, at 161 (1976) (emphasis added).  This legislative underpinning has guided courts to the natural conclusion that disgorgement under Section 504(b) serves as a deterrent against copyright infringement.  *See Goldman v. Healthcare Management Systems, Inc.*, 559 F. Supp. 2d 853, 866 (W.D. Mich. 2008) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 568 (7th Cir. 2003)) ("'Lost profit damages serve to make the copyright owner whole in cases where the infringer's gains exceed the owner's losses. . . . [B]y disgorging any net profits from the infringer, lost profit damages eliminate a major incentive to steal the copyright instead of fairly negotiating for its use with the owner.'")*; see also Craig v. UMG Recordings*, 380 F. Supp. 3d 324, 337 (S.D.N.Y. 2019); *Stehrenberger v. R.J. Reynolds Tobacco Holdings*, 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004). Crucially, remedies intended to deter wrongful conduct are legal in nature. *See Tull*, 481 U.S. at 422; *Black & Decker*, 118 F. Supp. 3d at 1062 n.9 ("[P]rofits premised on damages or deterrence create a right to a jury…."); *J & J Sports Prods. v. Orellana*, No. 08-05468, 2010 WL 1576447, at *3-4 (N.D. Cal. Apr. 19, 2010).

Further, the disgorgement remedy is more than a deterrent—it is punitive.  Indeed, Section 504(b) presumes that the plaintiff is entitled to all "gross revenue" attributable to infringement, absent a defendant's proof of deductible expenses.  Overhead expenses that are not matched to the infringing revenue are excluded.  *See, e.g.*, *Universal Furniture Int'l v. Collezione Europa, USA*, 599 F. Supp. 2d 648, 660-61 (M.D.N.C. 2009).  Accordingly, it is entirely

predictable that disgorgement under Section 504(b) will result in a *punitive* award whereby a defendant is liable for more than its net gains from the infringing activity. *See Kokesh v. SEC*, 137 S. Ct. 1635, 1645 (2017) ("[M]aking the defendant liable in excess of net gains, results in a punitive sanction[.]").

Remedies that serve as punishment are legal in nature. In *Feltner*, for instance, the Supreme Court recognized that "an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and *punishment*." *Feltner*, 523 U.S. at 352 (emphasis added); *see also Curtis v. Loether*, 415 U.S. 189, 196 (1974); *Cass Cty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996) ("Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity."). As with statutory damages, the disgorgement of profits under the Copyright Act is a legal remedy designed to punish those who violated the intellectual property rights of others. A jury trial on this issue of deterrence and punishment is ensured under the Seventh Amendment.

### 2. Disgorgement of Profits Is a Legal Remedy Used as a Proxy for Actual Damages

Recovery of profits under the Copyright Act further constitutes a legal remedy given that they act as an analog for actual damages, which are indisputably legal in nature. *See Feltner*, 523 U.S. at 355 ("We have recognized the 'general rule' that monetary relief is legal."); 3 NIMMER ON COPYRIGHT § 12.10 (2020) ("[I]t is beyond dispute that a plaintiff who seeks to recover actual damages is entitled to a jury trial."). Indeed, Section 504(b) unequivocally ties "actual damages" with recovery of an infringer's profits. The reason for linking the two is clear: "[c]ourts allow parties to pursue an award of profits as a proxy for damages because of the evidentiary barriers to proving damages." *Black & Decker*, 118 F. Supp. 3d at 1061. Indeed, as

the Western District of Michigan has recognized, profit disgorgement under the Copyright act is

an analog for recovery of a plaintiff's lost profits, which constitute actual damages:

> "'Lost profit damages serve to make the copyright owner whole in cases where the infringer's gains exceed the owner's losses. This is true even if the owner never would have realized the profit made by the infringer; by disgorging any net profits from the infringer, lost profit damages eliminate a major incentive to steal the copyright instead of fairly negotiating for its use with the owner.'"

*Goldman*, 559 F. Supp. 2d at 866 (W.D. Mich. 2008) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 568 (7th Cir. 2003)).

Accordingly, disgorgement of profits under the Copyright Act is properly viewed as a subset of actual damages, not another distinct category of relief. This further supports the common statutory construction that "[t]he Copyright Act gives plaintiffs a choice between *actual* and *statutory* damages." *Smith v. Thomas*, 911 F.3d 378, 381 (6th Cir. 2018) (citing 17 U.S.C. § 504(c)(1)) (emphasis added). These "actual" damages necessarily include potential recovery of a defendant's profits given the inherent evidentiary difficulties in proving actual damages or a plaintiff's lost profits in a copyright infringement case. Thus, disgorgement of profits is properly put before a jury in the same manner that actual damages are put before a jury—because both are inextricably linked within the language of Section 504(b).

### 3. Disgorgement of Profits under the Copyright Act Is Historically Linked to the Disgorgement of Profits under the Patent Acts

The historical and concrete parallels between the Copyright Act and the Patent Act provide further confirmation that the recovery of profits under the former constitute a legal remedy. "In passing the Copyright Act, the apparent intention of Congress was to assimilate the remedy with respect to the recovery of profits to that already recognized in patent cases." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 400 (1940). "Not only is there no suggestion that Congress intended that the award of profits should be governed by a different

principle in copyright cases but the contrary is clearly indicated by the committee reports on the bill." *Id.* Notably, the pre-1946 Patent Act expressly allowed for recovery of profits. As far back as 1871, the Supreme Court permitted recovery of an infringer's profits under the pre-1946 Patent Act as "a compensation for the injury . . . sustained from the invasion of a right" and therefore held that such profits are a "measure of his damages." *Mowry v. Whitney*, 81 U.S. 620, 653 (1871). Accordingly, it follows that recovery of profits in a copyright case, like in a patent case, is properly considered a legal remedy rooted in recovery of a plaintiff's damages.

Moreover, disgorgement of a patent infringer's profits remains a remedy under Section 289 of the Patent Act. *See* 35 U.S.C. § 289 (providing that the defendant "shall be liable to the owner to the extent of his total profit"). And, like section 504(b) of the Copyright Act, the award of profits under Section 289 of the Patent Act has routinely been held to present a jury question. *See, e.g.*, *Ross v. Plastic Playthings, Inc.*, 138 F. Supp. 887, 888–89 (S.D.N.Y. 1956) (denying motion to strike jury demand and holding that complaint seeking profits for design patent infringement under 35 U.S.C. § 289 was triable to jury as a matter of right); *see also Columbia Sportswear N. Am. v. Seirus Innovative Accessories*, No. 3:17-cv-01781-HZ, 2018 WL 1805102, at *1 (S.D. Cal. Apr. 17, 2018) (upholding jury's award for profits under § 289); *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1315 n.3 (Fed. Cir. 2013) (quoting *Kennedy v. Lakso Co.*, 414 F.2d 1249, 1253 (3d Cir. 1969)) ("[I]t has always been recognized that there may be a suit for accounting at law. . . . There is nothing on the present record to indicate that the accounting between the parties in the determination of profits or damages will be so complicated as to be beyond the power of a jury to determine.").

15

### 4. Functional Considerations Support Submitting the Issue of Profit Disgorgement to a Jury

The history of copyright actions and remedies lies in a sometimes murky intersection of law and equity. "Where history does not provide a clear answer, [courts] look to precedent and functional considerations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 718 (1999). Based on all the authorities cited above, Plaintiffs submit that precedent militates that a jury trial is required on disgorgement of Defendants' profits. However, even if the Court finds the case law unclear, functional considerations support a right to a jury trial on this issue.

Tasking a jury with calculating a disgorgement of profits is precisely the type of fact-finding exercise at which they excel. *See Feltner*, 523 U.S. at 353 ("It has long been recognized that 'by the law the jury are judges of the damages.'"). The calculation provided by the statute is simple and clear:

> "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

17 U.S.C. § 504(b). There is no need to (i) exercise discretion, (ii) weigh equitable factors, or (iii) interpret legal documents. Instead, the instructions are straightforward and easily applied by a jury, which is the traditional fact-finder in our system of justice. *See, e.g.*, *Cass Cty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 644 (8th Cir. 1996) ("The jury is, of course, the traditional fact-finder."). Rather, Section 504(b) provides a scheme for the calculation of *damages*—an exercise that a jury is traditionally suited to perform. Accordingly, functional considerations support a right to a jury trial on the recovery of profits under the Copyright Act.

### C.  In the Alternative, the Court Should Submit the Issue of Defendants' Profits to the Jury and Treat the Verdict as Advisory

If the Court remains unconvinced that there is a right to a jury trial on the issue of Defendants' profits under either the Copyright Act or the Seventh Amendment, the Court still retains the option of submitting the issue to the jury and treating the jury's determinations on the issue as advisory. *See* Fed. R. Civ. P. 39 ("In an action not triable of right by a jury, the court . . . may try any issue with an advisory jury"). Indeed, that is how several other district courts have approached the issue, including one case cited by Defendants, *Motorola Sols. v. Hytera Commc'ns Corp.*, No. 1:17-CV-1973, 2020 WL 6554645 at *12-13 (N.D. Ill. Oct. 19, 2020). *Hytera* was the only other case besides *Fair Isaac* cited by Defendants in which the court found that disgorgement under Section 504(b) was an equitable remedy for the court. However, the *Hytera* court nonetheless submitted the disgorgement damages question to the jury, which returned a verdict of $136.3 million. The court deemed this jury award to be advisory but agreed with the amount awarded and entered a separate order affirming the jury award. *Id*. at 13; *see also*, *Cisco Systems Inc. v. Arista Networks, Inc.*, No. 14-cv-5344, Dkt. 661 at 12-13 n.2 (N.D. Cal. Nov. 16, 2016) ("In light of how other courts have approached the unsettled issue of the right to trial by jury on disgorgement of profits claim, this Court will submit the disgorgement of profits claim to the jury and treat the disgorgement verdict as advisory, if not conclusive.")

## II.  Defendants' Request for Bifurcation Should Be Denied

Defendants' request to bifurcate the trial on liability from the trial on disgorgement of profits is without merit. As Judge Marbley has noted, "[b]ifurcation is reserved for exceptional cases." *Oster v. Bancshares, Inc.*, No. 2:15-cv-2746, 2017 WL 3208620, at *1 (S.D. Ohio July 28, 2017). Defendants have failed to meet their burden of proving this is an exceptional case requiring bifurcation. "When determining if bifurcation is appropriate, courts must consider the

potential prejudice to the parties, the possible confusion for jurors, and the relative convenience and economy that would result." *Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-cv-105, 2021 WL 428647, at *1 (S.D. Ohio Feb. 8, 2021).

> **A.      Defendants Failed to (and cannot) Show that the Issues They Seek to Bifurcate Are "Wholly Unrelated"**

Relevant to the present motion, the Sixth Circuit has explained that "[b]ifurcation of proceedings into separate trials concerning liability and damages is appropriate when 'the evidence pertinent to the two issues is wholly unrelated' and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *Helminski v. Ayerst Labs., a Div. of Am. Home Prod. Corp.*, 766 F.2d 208, 212 (6th Cir. 1985) (quoting 9 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2390 (1971)).  Further, the Sixth Circuit has cautioned that "separation of issues should be resorted to only in the exercise of informed discretion, and in a case and at a juncture which move the court to conclude that such action will really further convenience or avoid prejudice." *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (citations and quotations omitted).

As a threshold matter, Defendants do not even attempt to argue that the liability and disgorgement damages issues are "wholly unrelated" as is required by Sixth Circuit precedent. *Helminski*, 766 F.2d at 212; *see also Helmer*, 2021 WL 428647 at *2 (denying motion to bifurcate damages and liability in a copyright action where defendants failed "as a preliminary matter, [to] demonstrate that the issues of liability and damages are entirely unrelated").  This is because such an argument clearly fails.  Indeed, the recovery of Defendants' profits in this case is *directly* linked to Plaintiffs' ability to "show some connection between the infringement and the profits." *Whatever it Takes Transm. & Parts, Inc. v. Capital Core, Inc.*, No. 2:10-CV-72, 2013 WL 12178585, *15 (S.D. Ohio Mar. 22, 2013).  As this Court itself stated in its summary

judgment opinion, "calculation of profit-based damages is a two-step process," and the first step is that "the copyright owner must identify the part of an infringer's gross revenues that bears a 'reasonable relationship' to the alleged infringement." Dkt. #247, at 76. On this basis alone, the Court should deny Defendants' bifurcation request.

### B. Defendants' Claims of Judicial Economy, Jury Confusion, and Prejudice Are Without Merit

Even if Defendants could demonstrate that the issues it seeks to bifurcate are unrelated, bifurcation is still unwarranted under any of the three factors that courts consider in deciding whether to bifurcate.

*First*, contrary to Defendants' representations, a bifurcation of disgorgement damages from the other issues in the case would not promote judicial economy. Rather, it would create a second, unnecessary proceeding that would require the introduction of duplicative evidence and testimony. *See Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2020 WL 7047702, at *1 (S.D. Ohio Dec. 1, 2020) (denying motion to bifurcate damages and liability because it "would not promote judicial economy" given that "much of the evidence used to support the liability issue will also be relevant in the damages issue," thus creating "a risk of repeating the same evidence in both a liability and damages trial"). Defendants refer to their "detailed and extensive evidence relating to Defendants' records of sales and costs that is relevant to disgorgement alone." Motion, at 11. But Defendants fail to note that Plaintiffs' and Defendants' experts *agreed* upon the amount of revenues at issue. Moreover, evidence regarding what costs should be deducted to arrive at a net profits amount is the type of routine, straightforward evidence that juries routinely hear. Thus, there is no reason to expect that evidence regarding revenues and costs will be time-consuming or difficult for the jury to follow.

Defendants also refer to the testimony of the four survey experts that is relevant to the disgorgement issue and ask that this testimony be bifurcated and heard by the Court. As a threshold matter, Plaintiffs have a pending *Daubert* motion to exclude the testimony of Defendants' survey expert, Professor Zeithammer. If granted, this would dispense with the need for any expert survey testimony, including Plaintiffs' three rebuttal experts. Moreover, even if Professor Zeithammer is not stricken and the survey experts do testify, survey experts routinely testify in jury trials. There is nothing unique about this case that is likely to "overwhelm" the jury as Defendants speculate.

*Second*, Defendants fail to successfully argue why hearing evidence on Defendants' profits will "confuse" a jury that will already be hearing evidence on actual damages and infringement. Indeed, Defendants concede that "[t]he jury will already be tasked with hearing and evaluating extensive fact and expert witness testimony pertaining to actual damages." Motion, at 12. If a jury is already evaluating such evidence, there is no reason why it would not be capable—or even better suited—to also consider evidence of profits derived from infringement. Defendants' speculation that allowing the jury to hear evidence of disgorgement damages "will only serve to confuse it and invite it to consider improper evidence, even if only inadvertently" is just that: speculation.

*Third*, Defendants' claim of unfair prejudice falls flat. Indeed, Defendants' only argument in this respect is that the presentation of "hundreds of millions of dollars in revenue from the products at issue . . . creates a risk that the jury will not be able to compartmentalize the damages evidence." Motion, at 13. But this is yet more speculation piled on speculation. There is no reason to believe that a jury would be incapable of following an instruction to not consider profits as part of an award of actual damages. Moreover, evidence relating to the "hundreds of

millions of dollars in revenue from the products at issue" that Defendants desperately want to keep the jury from hearing in connection with Plaintiffs' profits-based damages claim pales in comparison to the more than $300 billion in P&G's net worth that the jury will hear in connection with Plaintiffs' fraud claim and punitive damages claim. *See Wagner v. McDaniels*, 459 N.E.2d 561 (Ohio 1984); *Oster*, 2017 WL 3208620 at *2-3 (denying request to bifurcate punitive damages from actual damages and allowing evidence of defendant's financial condition to support award of punitive damages.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Strike Plaintiffs' Jury Demand on the Issue of Disgorgement of Profits and Motion to Bifurcate Trial.

February 19, 2021                              Respectfully submitted,

                                               */s/  Gary Cruciani*
                                               Gary Cruciani

                                               John C. Greiner (0005551)
                                               **GRAYDON HEAD & RITCHEY LLP**
                                               312 Walnut St., Suite 1800
                                               Cincinnati, Ohio 45202
                                               Phone: (513) 629-2734
                                               Fax: (513) 333-4316
                                               Email: jgreiner@graydon.law

                                               **MCKOOL SMITH, PC**
                                               Gary Cruciani
                                               Carson D. Young
                                               300 Crescent Court, Suite 1500
                                               Dallas, Texas 75201

                                               *Counsel for Annette Navarro McCall and*
                                               *Navarro Photography LLC*


## CERTIFICATE OF SERVICE

I certify that on February 19, 2021, I electronically filed a copy of this document. The

Court's Electronic Case Filing system will send notice to all parties.


                                               */s/ Gary Cruciani*
                                               Gary Cruciani