## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ANNETTE NAVARRO, et al.,**

      **Plaintiffs,**

                **Case No. 1:17-cv-406**
      **v.**               **JUDGE DOUGLAS R. COLE**

**PROCTER & GAMBLE**
**COMPANY, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is currently before the Court on Defendants' Motion to Strike Jury Demand and Bifurcate Trial (Mot. to Strike, Doc. 248). In that motion (the "Motion"), Defendants P&G and Walmart ("Defendants") argue that Plaintiffs ("Navarro") are not entitled to a jury on the question of recovering the infringer's profits under 17 U.S.C. § 504(b). The basic argument is that (1) the statute does not itself create a right to a jury determination on this issue, and (2) because disgorgement of profits is an equitable, rather than a legal, remedy, the Seventh Amendment does not mandate a jury. Defendants then argue that, as Navarro is not entitled to a jury determination on disgorgement, the Court should bifurcate the trial, holding a bench trial on that issue down the road, if the jury finds Defendants liable for infringing Navarro's copyright. They base this request on a desire to narrow the issues, to avoid jury confusion, and to avoid what they perceive as the potential prejudice that may arise if the jury receives evidence as to the revenues P&G generated based on products whose packaging includes the allegedly infringing photographs. For the reasons set

forth more fully below, the Court **GRANTS** the Motion to the extent that it seeks to strike the jury demand on the issue of recovering profits, but **DENIES** the Motion on the issue of bifurcating the trial. Instead, the Court will exercise its authority under Federal Rule of Civil Procedure 39(c)(1) to try the question of profits to an advisory jury.

## BACKGROUND

As already reflected in the Court's previous Opinion and Order on Summary Judgment (Op. & Order on Summ. J., Doc. 247), this case presents a host of thorny and unsettled issues relating to copyright law. The current motion is no exception.

Navarro seeks relief in this copyright infringement action under 17 U.S.C. § 504(b). That statute provides two types of relief, "actual damages" and "any profits of the infringer that are attributable to the infringement":

> The copyright owner is entitled to recover the *actual damages* suffered by him or her as a result of the infringement, and *any profits of the infringer that are attributable to the infringement* and are not taken into account in computing the actual damages.

*Id.* (emphasis added). Navarro seeks both types of relief here, most recently in her Fifth Amended Complaint. (*See* Doc. 133, #4108). She also "demand[s] a trial by jury in this case on all issues so triable." (*Id.*). It is the intersection between those two requests that gives rise to the instant motion.

## A.   Defendants Move To Strike The Jury Demand On Disgorgement, And To Have The Trial Bifurcated.

In their motion, Defendants seek two forms of relief. First, they claim that Navarro does "not have a federal right to a jury trial on the issue of disgorgement of

profits in this case." (Mot. to Strike, Doc. 248, #13742). Any such right, they say, must arise either from statute or from the Seventh Amendment. As to the former, Defendants note that § 504(b) does not mention juries, or otherwise indicate that Congress intended to create a jury right as to the profit-based remedy. The Seventh Amendment, on the other hand, has been interpreted to create a jury right only for "legal," as opposed to "equitable," remedies. And Defendants maintain that the profit-based disgorgement remedy under § 504(b) is inherently equitable in nature.

Second, assuming that the Court agrees with Defendants on the jury trial issue, Defendants also request that the Court bifurcate the trial. Doing so, they say, would "promote judicial economy," "prevent potential confusion to the jury," and "prevent any unfair prejudice to Defendants." (*Id.*, #13743). They claim that the profits-based remedy issue will "involve a host of evidence and expert testimony that is completely unrelated to issues of liability and actual damages." (*Id.*, #13751). This includes voluminous survey evidence that Defendants contend "could overwhelm a jury." (*Id.*). As a result of the confusion surrounding all of this evidence, the jury may end up "consider[ing] improper evidence in its deliberations" on liability and actual damages. (*Id.*, #13753). That is particularly harmful, Defendants claim, in that the evidence as to P&G's profits could include "evidence respecting hundreds of millions of dollars in revenue from the products at issue," creating the risk of grave prejudice to the Defendants. (*Id.*).

3

**B.**     **Navarro Opposed Defendants' Motion, Arguing That There Is A Constitutional And Statutory Right To A Jury Trial.**

Not surprisingly, Navarro argues that Defendants are wrong, both on the jury issue and the need for bifurcation. As to the former, Navarro claims that she has a right to a jury trial *both* by statute *and* under the Seventh Amendment. In terms of the statute, she notes that in various other copyright remedy provisions, such as statutory damages, *see* 17 U.S.C. § 504(c), Congress specifically included reference to "the court" as the entity responsible for deciding the matter. The lack of such language in § 504(b), she says, means that Congress assigned both actual damages *and* lost profits under that provision to the jury. She also notes that multiple Sixth Circuit decisions have reviewed, apparently approvingly, jury awards of lost profits under § 504(b). And on the Seventh Amendment front, Navarro points to language in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998), a case on which both parties rely extensively, in which the Court noted that "awards of actual damages and profits [under § 504(b)] generally are thought to constitute legal relief."

On the bifurcation issue, Navarro first argues that the issue of Defendants' profits and infringement are not "wholly unrelated," as Defendants claim, because recovery of profits is expressly predicated on showing "some connection between the infringement and the profits." (Mot. to Strike Resp., Doc. 249, #13779). Second, Navarro claims that there is no reason to believe that the profits evidence will confuse the jury, nor that the evidence of the "hundreds of millions of dollars in revenue from the products at issue" will cause unfair prejudice to defendants. (*Id.*, #13781).

The matter is now fully briefed and before the Court.

## LAW AND ANALYSIS

The parties largely agree on the basic framework for deciding whether there is a right to a jury on the question of the infringer's profits. First, the Court must consider whether a statute creates that right. If so, the analysis stops there. But, if not, the Court must separately consider whether the Seventh Amendment creates that right. Here, while the statutory question is admittedly a close call, the Court concludes, as further described below, that neither the statute at issue, 17 U.S.C. § 504(b), nor the Seventh Amendment, creates a jury right here. That being said, the Court declines to grant bifurcation on the profits issue, and instead elects to exercise its power under Fed. R. Civ. P. 39(c) to employ an advisory jury on the question.

### A.     There Is No Statutory Right To A Jury Trial

Congress has the authority to create a right to a jury trial for any cause of action, or any remedy, as to which it so chooses. Generally speaking, though, Congress exercises that power expressly. *See, e.g.*, 31 U.S.C. § 5323(g)(3)(B)(i) ("A party to an action brought under paragraph (2)(B) shall be entitled to a trial by jury."); 28 U.S.C. § 2402 ("any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury"); 42 U.S.C. § 1981a(c) ("If a complaining party seeks compensatory or punitive damages under this section … any party may demand a trial by jury"); 21 U.S.C. § 467b(a)(4) (similar). To be sure, in some circumstances, a statute can give rise to an implied right to a jury. *See, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 583 (1978) (finding an implied right to a jury under the ADEA where that statute incorporated FLSA

procedures). But the Supreme Court has clarified that for that to occur there must be a solid basis for inferring a "congressional intent to grant … the right to a jury trial." *See Feltner*, 523 U.S. at 345 (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)). Merely because a statute authorizes an "action at law," for example, that is not enough to "imply[] a right to a jury trial." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707–08 (1999). In other words, it appears courts should exercise caution in interpreting statutes to find an implied jury trial right.

Here, the statute at issue, 17 U.S.C. § 504(b), provides that a copyright owner is "entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement …." *Id*. While that language clearly identifies the components of the potential award under that section (i.e., "actual damages" and "profits"), it says nothing about who—a judge or a jury—should determine the magnitude of either or both. Nor does 17 U.S.C. § 501, offer any additional guidance. It provides that a copyright owner may "institute an action for infringement," but again says nothing about a right to a jury in such an action. Indeed, no party has pointed the Court to any statutory text in the Copyright Act that refers to a jury, at all. In that regard, the Copyright Act's language stands in sharp contrast to the statutes cited above. When Congress wants to create a right to trial by jury, it knows how to say so, and it has not done so here. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 468 F. Supp. 3d 1110, 1113–14 (D. Minn. 2020) (concluding Copyright Act does not create statutory right to jury trial under 17 U.S.C. § 504(b)).

Finally, the history and development of the Copyright Act, from its earliest incarnation through its current form, also appear to support this understanding. When Congress enacted the first Copyright Act in 1790, the statute did not include a right to a profit-based award. Rather, courts started fashioning such relief *in equity actions*, as an ancillary to the other forms of relief (typically injunctions) that they provided. Congress added the reference to profits-based damages in the 1909 amendment to the Copyright Act. But, the Supreme Court explained that Congress added this remedy as a form of "equitable relief":

> Prior to the Copyright Act of 1909, 17 U.S.C.A. s 1 et seq., there had been no statutory provision for the recovery of profits, *but that recovery had been allowed in equity* both in copyright and patent cases as appropriate equitable relief incident to a decree for an injunction. That relief had been given in accordance with the principles governing equity jurisdiction, not to inflict punishment but to prevent an unjust enrichment by allowing injured complainants to claim that which, ex aequo et bono, is theirs, and nothing beyond this. Statutory provision for the recovery of profits in patent cases was enacted in 1870.
>
> …
>
> In passing the Copyright Act, *the apparent intention of Congress was to assimilate the remedy with respect to the recovery of profits to that already recognized in patent cases*. Not only is there no suggestion that Congress intended that the award of profits should be governed by a different principle in copyright cases but the contrary is clearly indicated by the committee reports on the bill.

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399–401 (1940) (emphasis added, citations and quotations omitted). Given its history as a form of equitable relief, there is little reason to believe that Congress would have intended, by implication, to create a jury trial right when it added this relief to the statute.

Of course, Congress undertook a wholesale amendment to the Copyright Act in 1976, and the effects, if any, of that amendment merit consideration, as well. After

all, the amendment occurred nearly forty years after the merger of law and equity in the federal court system. *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960 (2017) (noting that "the separate systems of law and equity were merged in 1938"). Thus, one could argue that, whatever Congress may have intended when it first added the profits-based remedy to the statute in 1909, when Congress re-enacted roughly that same remedy in 1976, it would have intended a single decisionmaker to address both actual damages and profits under §504(b). After all, the plaintiff is entitled to the infringer's profits only to the extent that those profits were not taken into account in determining the plaintiff's actual losses. *See* 17 U.S.C. § 504(b). And, as a practical matter, it may be difficult for a court to assess the extent to which the jury took the profits "into account" in fashioning the actual damages award.

But that is too thin a reed to support an implied right to a jury trial on the issue. As already noted, the Supreme Court counsels caution in finding implied statutory jury rights. And, beyond that, a version of that same problem existed in the 1909 Act. While that Act did not expressly tell courts to take actual damages into account in ascertaining the profits award, that is inherent in the statutory scheme. If the infringer is ordered to pay a royalty for his use, that naturally discounts the "profits" that he earned on such uses. Thus, the potential interaction between those two components is nothing new, yet when Congress added the remedy in 1909, it did not appear troubled that one remedy was legal, and one equitable. There is no reason to believe Congress would have been any more troubled about that in 1976.

Moreover, to the extent that legislative history is relevant to the interpretive question under the statute, the House Report that accompanied the 1976 amendment to the Copyright Act seems to confirm that same result. There, in discussing the "profits attributable to the infringement" language in § 504(b), the House Report said that "where some of the defendant's profits result from the infringement and other profits are caused by different factors, it will be necessary for *the court* to make an apportionment." *Fair Isaac*, 468 F. Supp.3d at 1114 (quoting H.R. 94–1476, at 161 (1976)) (emphasis added). While the reference to "the court" could perhaps be construed as including the jury, against the historical backdrop here, the House Report's phrasing is hardly a ringing endorsement of a right to a jury trial.

In short, whether viewed purely as a textual matter, or in light of the legislative history of the current incarnation of the Copyright Act, or in light of the historical development behind it, the Court finds that there is no statutory right to a jury under the Copyright Act.

Navarro raises essentially five challenges to that result. First, she claims that the Supreme Court's decision in *Feltner* requires a different outcome. In *Feltner*, the Court addressed § 504(c), which allows a copyright owner to recover statutory damages within a particular range "as the court considers just." The *Feltner* Court interpreted the reference to "the court" as Congress intending that a judge, rather than a jury, should make the determination. 523 U.S. at 346. And the Court then went on to reject Congress's attempt to allocate decision-making power in that

fashion, finding that the Seventh Amendment required a jury to be the arbiter of statutory damages. *Id.* at 352–53.

As *Feltner*'s analysis concerned § 504(c), none of that, of course, is much help to Navarro's argument (or the Court's analysis) here. But Navarro points to other language in *Feltner*, in which the Court, in distinguishing § 504(c) from § 504(b) (i.e., the provision at issue here), noted that "actual damages and profits" under the latter "generally are thought to constitute legal relief." *Id.* at 346. She says that this characterization of profits as "legal relief" means that she is entitled to a jury.

That argument has two problems. First, the *Feltner* Court's reference to language in § 504(b), in passing, was dicta at best in that case, and thus this Court hesitates to treat it as a binding pronouncement of the Court's views on that matter. Second, and more importantly, characterizing profits as "legal relief" may help on the Seventh Amendment issue (more on that below), but does not really change the analysis on the statutory issue in any event. *See City of Monterey*, 526 U.S. at 708.

In her second, and related, challenge, Navarro argues that, in the Copyright Act, Congress specifically identified "the court" as the decision-making entity not only under § 504(c) (as discussed in *Feltner*), but also for certain other types of relief, including injunctions, 17 U.S.C. § 502, impoundment and destruction, 17 U.S.C. § 503, and attorneys' fees, 17 U.S.C. § 505. Accordingly, Navarro argues that § 504(b), which lacks that language, should be read as Congress impliedly assigning responsibility to the jury for the analysis under that section.

That argument, though, fails to persuade. To start, as noted above, it is clear that Congress knows how to provide for a jury right when it wants, so the Court is hesitant to take much of a negative implication from Congress's failure to refer to "the court" in § 504(b). But, more importantly, as discussed further below, at least as to "actual damages" under § 504(b), the Seventh Amendment creates a jury right. So, the lack of reference to "the court" in § 504(b) may simply reflect congressional recognition that any such reference would be misplaced there, at least as to part of the relief the section addresses. So the lack of such language perhaps simply reflects that Congress chose not to address the court/jury issue at all, leaving the Seventh Amendment to control which aspects of the relief under § 504(b), if any, required a jury, and which, if any, did not.

Third, Navarro claims that failing to recognize a statutory jury right under § 504(b) creates a "conflict" in that a party "is indisputably entitled to a jury trial for actual damages under" that section. Navarro goes on to say that "if Section 504(b)'s failure to mention 'juries at all' means that Plaintiffs are not entitled to a jury on their profits-based damages claims, then likewise Plaintiffs should not be entitled to a jury on their actual damages claim." (Mot. to Strike Resp., Doc. 249, #13766). But the latter point does not follow from the former. As just noted, Navarro is "indisputably entitled" to a jury on actual damages *under the Seventh Amendment*, so the question of a statutory entitlement to a jury for such damages under § 504(b) is largely irrelevant.

Fourth, Navarro claims that the plaintiff in *Fair Isaac Corp.*—which Navarro characterizes as the "lone case holding there is no right to a jury for profits-based damaged under Section 504(b)"—"did not even argue that the Copyright Act provided a right to a jury determination on profits-based damages, but rather rested its jury argument under the Seventh Amendment." (*Id.*, #13767). That may be true as to the particular *Fair Isaac* decision Navarro cites in that paragraph of her brief, 468 F. Supp. 3d 1110. But in the Magistrate Judge's opinion giving rise to the cited decision by the District Court Judge, the Magistrate Judge extensively considered, and rejected, the plaintiff's argument for a statutory jury-trial right under the Copyright Act. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1023–25 (D. Minn. 2019) (Schultz, M.J.). In appealing that decision to the District Court, the plaintiff apparently chose not to re-assert its argument on that score. But even so, the District Court Judge raised and considered the issue. To be sure, the Magistrate Judge's thorough opinion may have led the District Court Judge to conclude that she did not need to reprise the entire analysis, but the District Court Judge nonetheless reached the same result. At bottom, it strikes the Court as somewhat of a mischaracterization to suggest that *Fair Isaac* did not consider the issue in an adversarial setting.

Finally, in the argument that gives this Court the most pause, Navarro notes that there is substantial Sixth Circuit precedent appearing to bless jury determinations on profit-based damages in copyright actions. *See, e.g.*, *Singletary Constr., LLC v. Reda Home Builders, Inc.*, 815 F. App'x 892, 896 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 770 (6th Cir. 2012); and *ECIMOS, LLC v. Carrier*

*Corp.*, 971 F.3d 616 (6th Cir. 2020). In none of these cases, though, does it appear that either party had objected to the use of a jury for determining the magnitude of the profits-based award. Thus, the Sixth Circuit did not have occasion in those cases to address whether a party is in fact *entitled* to a jury, either under the Copyright Act, or the Seventh Amendment. *See* Fed. R. Civ. P. 39(c)(2) (stating that court "may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right …."); *see also, e.g., Whiting v. Jackson State Univ.*, 616 F.2d 116, 123 (5th Cir. 1980) ("By failing to object, the parties agreed that the jury's verdict on the claims for equitable relief was to have the same effect as if a right to a jury trial existed.").

On a related note, the Court also recognizes that many Circuits have adopted pattern jury instructions for Copyright Act matters, and that these pattern instructions sometimes include jury instructions on calculating profit-based damages awards.[1] Again, though, that may merely reflect that parties generally have not raised the jury-right issue. And absent objection, as already noted, any matter can go to the jury. Here, though, P&G is objecting, and thus the Court must consider the question of statutory authorization.

In sum, the Court acknowledges that common practice, in the Sixth Circuit and elsewhere, appears to have included sending profit-based damages in copyright actions to the jury for consideration. Yet, the Court nonetheless concludes that, given

---

[1] *See, e.g.*, http://www.ca7.uscourts.gov/pattern-jury-instructions/ 7th_cir_civil_instructions. pdf (Seventh Circuit); https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/Form CivilPatternJuryInstructionsCurrentComplete.pdf?revDate=20200227 (Eleventh Circuit).

the Copyright Act's abject silence on juries, the Act does not create a statutory right

to a jury trial on the issue of such damages, whether expressly or by implication.

**B.      There Is No Seventh Amendment Right To A Jury Trial On Profits-Based Damages.**

The Seventh Amendment analysis follows a different path, but arrives at the

same location. The Constitution creates a right to a jury for *legal* remedies, but not

for *equitable* remedies. And the history of the Copyright Act, as well as the way in

which a profits-based remedy arose for copyright infringement, confirm that the

disgorgement remedy under § 504(b) is necessarily the latter, and not the former.

The Seventh Amendment to the United States Constitution provides that "[i]n

Suits at common law, where the value in controversy shall exceed twenty dollars, the

right of trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court

"has construed this language to require a jury trial on the merits in those actions that

are analogous to 'Suits at common law.'" *Tull*, 481 U.S. at 417. That phrase in turn

applies to "suits brought in the English *law* courts" at the time of the Amendment's

adoption, but not to cases that, in the 18th century, would have been "tried in courts

of equity or admiralty." *Id.* Moreover, even if "the suit" is legal, and thus gives rise to

a jury trial right in general, the court must also examine "the particular trial decision"

at issue, to see whether there is a jury trial right as to that issue. *City of Monterey*,

526 U.S. at 708. Accordingly, the question here comes down to whether the profits-

based remedy in § 504(b) is a *legal* remedy, in which case there is a constitutional

right to a jury, or an *equitable* remedy, in which case there is not.

Based on the history of the disgorgement award in actions for copyright infringement, there can be little question that such awards are equitable, rather than legal. The first Copyright Act, which Congress adopted in 1790, made no provision for recovery of the infringer's profits. Rather, that relief arose in cases brought *in the equity courts*. As the Supreme Court describes it: "Prior to the Copyright Act of 1909 … there had been no statutory provision for recovery of profits, but that recovery had been allowed *in equity* both in copyright and patent cases as appropriate *equitable relief* incident to a decree for injunction." *Sheldon*, 309 U.S. at 399 (emphasis added). "The theory was that it was unconscionable for an infringer to retain a benefit which he had received by the appropriation and use of the plaintiff's property right; and to prevent unjust enrichment the infringer was treated as a trustee ex maleficio of his ill gotten gains." *Sammons v. Colonial Press*, 126 F.2d 341, 345 (1st Cir. 1942); *see also JL Beverage Co. v. Jim Beam Brands Co.*, 815 F. App'x 110, 115 (9th Cir. 2020) (Friedland, J., concurring) (describing that the disgorgement remedy in intellectual property actions arises from "the equitable remedy of a constructive trust, also called a trust ex maleficio"). Just like any other trust-based claim, though, at the time of the Founding, this would have been cognizable only in equity, as courts of law did not recognize the distinction between the true (or legal) owner and a beneficial owner that lies at the heart of trust-law concepts. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) ("It is true that, at common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust.") (citation omitted); *see also Trust*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The right,

enforceable solely in equity, to the beneficial enjoyment of property to which another person holds the legal title; a property interest held by one person ... for the benefit of a third party....”).

Of course, in 1909, Congress expressly added the disgorgement remedy to the copyright statute, but that did not change the inherently equitable nature of that remedy. To the contrary, even after the amendment, “[b]oth the Copyright Act and [Supreme Court] decisions leave the matter to the appropriate exercise of the equity jurisdiction upon an accounting to determine the profits ‘which the infringer shall have made from such infringement.’” *Sheldon*, 309 U.S. at 402. To this day, courts continue to recognize the inherently equitable nature of the remedy. *See, e.g.*, *Tex. Advanced Optoelectronics Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1324–25 (Fed. Cir. 2018) (“As for copyright and trademark infringement, we have seen no support for concluding that disgorgement of profits was available at law for those wrongs.”).

The treatment of disgorgement awards in trademark matters lends further support to this result. As the Ninth Circuit put it in one such action, “[t]he Seventh Amendment does not require that a jury calculate those profits, because juries have not traditionally done so, and a claim for profit disgorgement is equitable in nature.” *Fifty-Six Hope Rd. Music, Ltd., v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1065 (9th Cir. 2015). The Eleventh Circuit reached that same result even more recently in holding that a party did not have a right to a jury trial in a trademark action seeking disgorgement. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1359

16

(11th Cir. 2019) ("All of this leads us to the conclusion that an accounting and disgorgement of a defendant's profits in a trademark infringement case is equitable in nature and does not carry with it a right to a jury trial."). Although addressing a slightly different issue, the Federal Circuit recently reached this same conclusion when considering whether a jury right exists as to disgorgement in a misappropriation of trade secrets case. *Tex. Advanced Optoelectronics Sols.,* 895 F.3d at 1323–26. This Court sees no reason to treat disgorgement under the Copyright Act differently from disgorgement in either of those settings for Seventh Amendment purposes.[2] Accordingly, the Court concludes that the Seventh Amendment does not provide Navarro a right to a jury determination on that issue here. *Fair Isaac*, 468 F. Supp. 3d at 1118 ("Fair Isaac presents no sound legal basis to conclude that the courts of law in 1791 would have awarded disgorgement of a defendant's profits as a remedy for copyright infringement.").

Navarro attacks this result on various grounds, but all fail. The first attack rests on the "sheer number of cases" that have treated disgorgement as a jury question. (Mot. to Strike Resp., Doc. 249, #13769). As with the statutory argument, though, that practice matters only if it occurred over an objection to a jury

---

[2] The Court recognizes that the Lanham Act expressly makes recovery of a defendant's profits "subject to the principles of equity," *see* 15 U.S.C. § 1117(a), and that the Copyright Act does not include that language in connection with that form of relief, *see* 17 U.S.C. § 504(b). That does not change the Seventh Amendment analysis, though, as the question for purposes of the Seventh Amendment does not turn on whether Congress expressly labels the relief as equitable or not, but rather on whether the relief is, in fact, a form of equitable relief, or at least would have been recognized solely as such in 1791, when the Amendment was adopted. *See City of Monterey*, 526 U.S. at 708.

determination on the issue, *see* Fed. R. Civ. P. 39(c), and Navarro has failed to show that was the case.

The second attack rests on *Feltner*'s language observing that awards under § 504(b) "generally are thought to constitute legal relief." *Feltner*, 523 U.S. at 346. As already noted, that language is dicta, and is no more convincing on the Seventh Amendment issue than it was on the statutory-right-to-a-jury-trial issue.

Navarro next claims that *Fair Isaac's* finding of no Seventh-Amendment right relied on language in *Petrella v. Metro-Goldwyn-Mayer Inc.*, 572 U.S. 663, 668 n.1 (2014), that referred to recovery of profits as equitable, but only "in that case." According to Navarro, *Petrella* stands more generally for the notion that "recovery of profits is not easily characterized as legal or equitable," but is rather "protean" in nature. *Id.* (*See also* Mot. to Strike Resp., Doc. 249, #13770–71). This Court acknowledges that courts have struggled over the years with exactly how to characterize this relief. It is, after all, a payment of money—not a return of specifically identifiable dollars stolen from the copyright owner, as in the typical sense of restitution, but rather a dollar-based judgment levied on the infringer's property generally, much like any other damages award. And a monetary judgment is "the traditional form of relief offered in the courts of law." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1999) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 (1974)). Be that as it may, though, the history of how the remedy developed leaves this Court convinced that this dollar-denominated award to successful plaintiffs is nonetheless properly viewed as a creature of equity.

18

Finally, Navarro attempts to avoid this result by pointing to the goals that she claims the remedy is designed to serve, and asserts that these goals show the remedy is legal rather than equitable. In particular, she argues that disgorgement deters and punishes infringement, acts as a proxy for actual damages, is historically linked to disgorgement in patent actions, and lies within the traditional fact-finding function of a jury. None of these change the ultimate result here. First, the availability of injunctive relief also presumably "deters and punishes infringement," but that does not change its character as equitable relief. And, in any event, the Supreme Court has stated that disgorgement is intended "*not* to inflict punishment, but to prevent unjust enrichment." *Sheldon*, 309 U.S. at 399 (emphasis added). That also undercuts Navarro's second alleged goal. Disgorgement does not sound in compensating the plaintiff, but rather in ensuring that the defendant does not unjustly profit, and thus disgorgement is not tied to "actual damages." Third, the historical link to patent damages hurts Navarro's argument, rather than helping. Profit disgorgement in such cases, although no longer available except for design patents, had long been recognized as equitable in nature. *See generally id.* (discussing history of patent damages). And finally, the question is not whether a jury might be *good* at the task, but rather whether in 1791 juries were *assigned* the task. The answer here is clearly no.

On the historical record, there is simply no question that "the ancient remedies of accounting, constructive trust, and restitution have compelled wrongdoers to 'disgorge'—*i.e.*, account for and surrender—their ill-gotten gains for centuries," and

19

have done so through courts of equity. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132 (2d Cir. 2014) (quoting *S.E.C. v. Cavanagh*, 445 F.3d 105, 119 (2d Cir. 2006) (holding that an action for accounting of defendant's profits under the Lanham Act is equitable in nature)). Accordingly, the Seventh Amendment does not provide Navarro a right to a jury trial.

## C. The Court Denies Defendants' Request For Bifurcation, And Instead Elects To Use An Advisory Jury Pursuant To Fed. R. Civ. P. 39.

The final issue the Court must address is bifurcation. More specifically, Defendants argue that, as Navarro does not have a right to a jury determination on profit-based damages, the Court should limit trial to the issue of liability and actual damages, and then return at a later date for another hearing on the profit-disgorgement issue, should that prove necessary. (Mot. to Strike, Doc. 248, #13750). The Court declines to adopt that approach.

The Court agrees with Navarro that bifurcation should generally be reserved for exceptional cases. (*See* Mot. to Strike Resp., Doc. 249, #13778 (quoting *Oster v. Bancshares, Inc.*, No. 2:15-cv-2746, 2017 WL 3208620, at *1 (S.D. Ohio July 28, 2017))). The Court further agrees, with both parties, that the decision should be guided by considerations of prejudice to the parties, judicial economy, and the potential for jury confusion (which itself is an aspect of prejudice to the parties). Here, those considerations do not provide sufficient support for bifurcation.

Defendants claim that prejudice and confusion will arise from failure to bifurcate, as the profit-disgorgement evidence, they claim, is entirely separate from, and unrelated to, the actual damages evidence. The Court is not convinced that is

correct. The actual damages that Navarro seeks will likely come in the form of a "reasonable royalty." This is the amount that a hypothetical willing buyer and willing seller would have negotiated for use of the photographs at issue here. *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 359 (6th Cir. 2007) (quoting *Davis v. Gap, Inc.,* 246 F.3d 152, 167 (2d Cir. 2001) ("[A]ctual damages may include in appropriate cases the reasonable license fee… .").

As the Federal Circuit noted in the potentially analogous situation of a reasonable royalty for patent infringement—"[a]mong the factors to be considered in determining that amount is the infringer's anticipated profit from use of the [intellectual property]." *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984). That makes sense. Presumably, a licensee would not agree to pay more in the form of licensing fees than the incremental profit associated with the intended use. In a sense, that incremental profit marks one end of the potential bargaining range.

Of course, one could argue that "anticipated profits" and "actual profits" are two different things, but "[e]vidence of the infringer's actual profits generally is admissible as probative of his anticipated profits." *Id. See also Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) (referring to post-infringement factual developments in a patent case as "a book of wisdom that courts may not neglect"). "Consideration of evidence of usage after infringement started can, under appropriate circumstances, be helpful to the jury and the court in assessing whether a royalty is reasonable." *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301,

1333–34 (Fed. Cir. 2009) (patent case). To be sure, "[w]hat an infringer's profits actually turned out to have been during the infringement period" is only relevant "in an indirect and limited way—as some evidence bearing on the directly relevant inquiry into anticipated profits." *Aqua Shield v. Inter Pool Cover Team*, 744 F.3d 766, 770 (Fed. Cir. 2014) (determining reasonable royalty in patent case). But the Court's point is merely that the divide between actual damages evidence and profits-based damages evidence is perhaps not so stark as Defendants contend.

When the Court raised this issue in discussing the motion, Defendants contended that Navarro had made no such argument in her claim for damages. But it is not clear that Navarro cannot do so. Presumably, so long as there is evidence in the record as to what Defendants' profits are, counsel could argue to the jury that those profits are "helpful … in assessing whether a royalty is reasonable." *Lucent Tech.*, 580 F.3d at 1333–34, even if only in an "indirect and limited way," *Aqua Shield*, 744 F.3d at 770.

Moreover, even if Navarro has not included reference to *profits* as a basis supporting her royalty analysis, Defendants themselves have included at least *revenues* as one aspect warranting consideration in that analysis. For example, when Defendants' damages expert, Stephen Hazel, produced a report on actual damages, he "computed P&G's revenues within and outside the license periods," and used that to calculate a revenue-based-royalty figure. (Doc. 145–2, #4537–38). The Court acknowledges that revenues and profits are different things, but as profits are less than revenues, presumably the prejudice arising from disclosing the former would in

some ways be less than the prejudice arising from the latter. And, in any event, in describing the potential for prejudice, Defendants pointed to the "evidence of hundreds of millions of dollars *in revenue*," (*see* Doc. 248, #13753 (emphasis added)), as the basis for their concern.

At bottom, given that profits may potentially be relevant to calculating actual damages under § 504(b), and that the parties will likely discuss at least revenues in connection with such damages, then any purported efficiency gains, or potential for avoiding jury confusion or prejudice, from bifurcation are largely illusory. The Court thus concludes those concerns do not warrant the requested remedy.

Moreover, even putting that aside, the Court denies bifurcation for a second reason. Under Federal Rule of Civil Procedure 39(c)(1), "[i]n an action not triable of right by a jury, the court, on motion of on its own … may try any issue with an advisory jury." At least some courts have used advisory juries on the issue of profits-based damages awards in copyright actions. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 1:17-cv-1973, 2020 WL 6554645, at *13 (N.D. Ill. Oct. 19, 2020); *Griffo v. Oculus VR, Inc.*, No. SA CV 15-1228, 2018 WL 6265067, at *15 (C.D. Cal. Sept. 18, 2018) ("[T]his Court is prepared to submit the disgorgement of profits claim to the jury and treat the disgorgement verdict as advisory, if not conclusory."); *see also Tiffany & Co. v. Costco Wholesale Corp.*, 274 F. Supp. 3d 216, 220 (S.D.N.Y. 2017) (treating jury award of infringer's profits in a trademark case as advisory). This Court believes using that approach is prudent here for three reasons. First, adopting that approach will ameliorate any lingering concerns about jury confusion that might

otherwise arise if the jury were to hear evidence that may not be directly (or at least strongly) relevant to its other considerations in this case. Second, the jury's verdict on the matter will likely be helpful to the Court's own deliberations on the issue. And third, there is always a possibility that the Sixth Circuit will determine that this Court erred in concluding that Navarro had neither a statutory, nor a Seventh Amendment, right to a jury trial. If that were to occur, the appeals court would have the benefit of the jury's determination of the correct amount for the disgorgement award, if any.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** P&G's Motion to Strike to the extent that it seeks to strike the jury demand on the issue of recovering profits but **DENIES** the Motion on the issue of bifurcating the trial. (Doc. 248).

      **SO ORDERED.**

March 29, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**